Mark B. Perry (ISB #3345)
Maurice O. Ellsworth (ISB #1842)
Trevor L. Hart (ISB #5805)
**PERRY LAW, P.C.**
2627 West Idaho Street
Post Office Box 637
Boise, Idaho 83701-0637
Telephone:     (208) 338-1001
Facsimile:     (208) 338-8400
E-mail:        mbp@perrylawpc.com
PL File No. 4285.001

David A. Crichlow (New York Bar # 2324101)
Craig A. Barbarosh (California Bar # 160224)
Karen B. Dine (New York Bar # 2625366)
Andrew C. Smith (New York Bar # 4118675)
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY  10036-4039
Telephone:     (212) 858-1640
Facsimile:     (212) 858-1500
E-mail:        david.crichlow@pillsburylaw.com

Attorneys for Defendant TitleOne Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL FIRKINS, RENA FIRKINS, HIGHLAND SERVICES CO., INC. PROFIT SHARING PLAN, DOUGLAS R. CIRCLE as Trustee, DOUGLAS RICHARD CIRCLE and JAN ALISON CIRCLE 1984 FAMILY TRUST,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>TITLEONE CORPORATION,<br><br>　　　　　　Defendant. | Case No. 1:10-cv-00110-BLW |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TITLEONE CORPORATION'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 2

I.   The December 24, 2002 Indenture and Issuance of Bonds ........................... 2

   A.   The Indenture Governs TitleOne's Duties .............................................. 2

   B.   The Bondholders Are Sophisticated Investors Who Acknowledged
and Accepted the Risks of the Investment .............................................. 2

II.   Background on DBSI and the DBSI Bankruptcy ........................................ 4

   A.   DBSI Files for Bankruptcy ...................................................................... 4

   B.   TitleOne Files Proofs of Claim ............................................................... 5

   C.   Examiner's Reports Reveal DBSI's Complex Web of Deceit .................... 5

III.   Plaintiffs' Complaint ...................................................................................... 6

SUMMARY OF ARGUMENT ................................................................................ 7

ARGUMENT ......................................................................................................... 9

I.   Legal Standards ............................................................................................. 9

   A.   Motion to Dismiss .................................................................................... 9

   B.   Motion for Summary Judgment ............................................................... 9

II.   Plaintiffs' Breach Of Fiduciary Duty Claim Should Be Dismissed ............. 10

   A.   Prior to Event of Default, Trustee's Duties Were Limited to
Those Expressly Set Forth in the Indenture ........................................ 10

   B.   TitleOne Complied With Its "Prudent Person" Duties After
Earliest Possible Event of Default ........................................................ 12

     1.   *Events of Default triggering duties did not occur until
October/November 2008* ................................................................... 12

     2.   *TitleOne acted with the requisite degree of care and skill a
prudent person would exercise after the Events of Default* ............ 13

III.   Plaintiffs' Breach of Contract Claim Should Be Dismissed ....................... 13

   A.   TitleOne Had No Duty to Ensure Bond Proceeds Were Properly Used ........ 14

   B.   TitleOne Had No Duty to Ensure That DBSI Properly Documented
Each Transaction ................................................................................... 14

   C.   TitleOne Had No Duty to Ensure That DBSI Obtain Security for Loans
from DBSI Funding ................................................................................. 17

D. TitleOne Had No Duty to "Detect Fraud" Based on Documentation Provided to TitleOne ........................................................................................... 17

E. TitleOne Did Not Breach Its Duty to Notify Bondholders of Any Events of Default Known to It ............................................................................................. 19

IV. Plaintiffs' Negligence and Gross Negligence Claim Should Be Dismissed ............... 20

A. Plaintiffs' Negligence Claim is Barred By The Economic Loss Rule ......................... 20

B. The Limited Exceptions to the Economic Loss Rule Do Not Apply ........................... 21

   1. The "special relationship" exception does not apply. ................................... 21

   2. The "unique circumstances" exception does not apply. ................................ 22

C. TitleOne Was Not Grossly Negligent After Event of Default ..................................... 22

V. Plaintiffs' Purported Class Cannot Be Certified ............................................................. 23

A. Common Questions of Law and Fact Do Not Predominate ......................................... 23

B. The Claims and Defenses of Class Representatives Are Not Typical of the Proposed Class as a Whole ....................................................................... 26

C. Class Action Is Not Superior to Other Forms of Adjudication ................................... 27

CONCLUSION ................................................................................................................................ 28

## TABLE OF AUTHORITIES

Page

### Cases

*Aardema v. U.S. Dairy Systems, Inc.*,
 215 P.3d 505 (Idaho 2009)..................................................................... 21

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988)........................................................................ 24, 25

*Blahd v. Richard B. Smith, Inc.*,
 108 P.2d 996 (Idaho 2005)................................................................... 20

*Bushi v. Sage Health Care PLLC*,
 203 P.3d 694 (Idaho 2009)................................................................... 10

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
 155 F.3d 331 (4th Cir. 1998) ............................................................... 23

*Clegg v. Cult Awareness Network*,
 18 F.3d 752 (9th Cir. 1994) ................................................................... 9

*Gibson v. Office of Attorney Gen., State of Cal.*,
 561 F.3d 920 (9th Cir. 2009) ............................................................... 15

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ............................................................... 10

*Hoak v. Ada Cty.*,
 No. CV08-447-S-CWD, 2009 WL 2044415 (D. Idaho July 10, 2009) ............ 10

*In re Hotel Tel. Charges*,
 500 F.2d 86 (9th Cir. 1974) ................................................................. 24

*Jacobson v. AEG Capital Corp.*,
 50 F.3d 1493 (9th Cir. 1995) ................................................................. 9

*Jensen v. FedEx Freight, Inc.*,
 No. CV 08-483-E-CWD, 2009 WL 5031331 (D. Idaho Dec. 15, 2009) .......... 10

*Leverso v. Southtrust Bank of Ala. Nat'l Ass'n*,
 18 F.3d 1527 (11th Cir. 1994) .............................................................. 11

*Millenkamp v. Davisco Foods Int'l, Inc.*,
 391 F. Supp. 2d 872 (D. Idaho 2005) ............................................... 20, 22

*Mintun v. Blades,*
No. CV-06-139-S-BLW, 2008 WL 711636 (D. Idaho Mar. 14, 2008) ............................ 9

*Paulsen v. CNF Inc.,*
559 F.3d 1061 (9th Cir. 2009) ......................................................................................... 9

*Poulos v. Caesars World, Inc.,*
379 F.3d 654 (9th Cir. 2004) ................................................................................... 23, 24

*Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.,*
2010 N.Y. Slip Op. 02678, 2010 WL 1233516 (N.Y. Apr. 1, 2010)............................... 11

*Shawmut Bank, N.A. v. Kress Assocs.,*
33 F.3d 1477 (9th Cir. 1994) ............................................................................... *passim*

*S. Griffin Constr., Inc. v. City of Lewiston,*
16 P.3d 278 (Idaho 2000), ............................................................................................ 22

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ......................................................................................... 9

*Truckstop.net, L.L.C. v. Sprint Commc'ns Co.,*
537 F. Supp. 2d 872 (D. Idaho 2005) ...................................................................... 20, 21

*Zinser v. Accufix Research Institute, Inc.,*
253 F.3d 1180 (9th Cir. 2001) ..................................................................................... 27

**Statutes and Rules**

Dist. Idaho Loc. Civ. R. 7.1 ............................................................................................ 1

Fed. R. Civ. P. 12 ....................................................................................................... 1, 9

Fed. R. Civ. P. 23 ................................................................................................... 23, 27

Fed. R. Civ. P. 56 ................................................................................................ 1, 9, 10

Defendant TitleOne Corporation ("TitleOne") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' February 26, 2010 complaint ("Complaint") or, alternatively, for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, and Local Civil Rule 7.1 of the United States District Court for the District of Idaho.

## PRELIMINARY STATEMENT[1]

Plaintiffs are sophisticated investors who invested in risky high-yield bonds issued pursuant to an indenture. In doing so, Plaintiffs warranted that they were "accredited investors" who understood and acknowledged that they may lose some or all of their investment, and that the bond proceeds were to be used to make loans that may or may not be secured. The company that issued the bonds is in bankruptcy, and so Plaintiffs are now suing TitleOne, the indenture trustee, in an attempt to recoup their losses. As indenture trustee, however, TitleOne owed no duties to the bondholders outside of those expressly set forth in the indenture, which contractually provides the sole duties and obligations that the indenture trustee (TitleOne) has with respect to the bondholders. Under the indenture, TitleOne's obligations were primarily ministerial, and it was not responsible for ensuring that the bondholders realized their anticipated return, nor was it required to police the issuer of the bonds to ensure that bond proceeds were properly used. For the reasons set forth in greater detail below, Plaintiffs' claims against TitleOne for breach of fiduciary duty, breach of contract, and negligence and gross negligence must be dismissed as a matter of law.

---

[1] References to Exhibits A-N are to those exhibits attached to the April 19, 2010 Affirmation of David A. Crichlow, submitted herewith. Emphasis herein is our own, unless otherwise indicated.

## FACTUAL BACKGROUND

I.    **The December 24, 2002 Indenture and Issuance of Bonds**

A.    **The Indenture Governs TitleOne's Duties**

TitleOne is the Indenture Trustee for an indenture dated effective December 24, 2002 ("Indenture" or "Ind.") with DBSI Real Estate Funding Corporation ("DBSI Funding" or the "Company"). *See* Comp. ¶1; Ex. B (Indenture).  DBSI Inc. ("DBSI"), DBSI Funding's parent company, served as guarantor of the bonds. *See* Ex. B at § 1.13.  Pursuant to the Indenture, DBSI Funding issued bonds ("Bonds") pursuant to a Confidential Offering Circular, dated February 10, 2003 ("Offering Circular" or "Off. Circ."), that DBSI Funding prepared. *See* Ex. C (Offering Circular).  The Indenture is a contract entered into by and between DBSI Funding and TitleOne, which also creates enforceable rights for future bondholders ("Bondholders"). Ind. at 1.  The Offering Circular, on the other hand, contains the terms and conditions under which the Bonds were offered by DBSI Funding to prospective investors. Ind. § 1.26 (Bond offering is governed by the terms and conditions of the Offering Circular).  TitleOne was not responsible in any way for the Bond offering, and the Indenture itself cautioned Bondholders that TitleOne is not bound by the terms and conditions of the Offering Circular. *See* Ind. § 11.4 (providing the "Trustee shall not be responsible for any statement in the Bonds or in any other document prepared, executed, or delivered in connection with the sale and issuance of the Bonds").  Rather, prior to an event of default under the Indenture, TitleOne's duties are ministerial and limited to those expressly set forth therein. *Id.* at § 11.1.1(i).

B.    **The Bondholders Are Sophisticated Investors Who Acknowledged and Accepted the Risks of the Investment**

Under the Offering Circular, prospective Bondholders were required to be "accredited investors." Off. Cir. at 29.  Throughout the Offering Circular, prospective Bondholders are

2

warned of the risk of the investment, noting that investors may lose their entire investment. *Id.* at
2. Bondholders were required to acknowledge this risk, and acknowledge that they had reviewed
and were familiar with the investment documentation, had had an opportunity to request and
review documents and obtain information "concerning the terms and conditions of this
investment," and that they were "completely satisfied with the results of [their] investigation."
*Id.* at 54.

In its prefatory Notice to Prospective Purchasers, the Offering Circular provides broad
disclosures and states:

> AN INVESTMENT IN THE BONDS INVOLVES A HIGH DEGREE OF RISK
> AND IS SUITABLE ONLY FOR **PERSONS WHO ARE ABLE TO
> EVALUATE THE RISKS OF THE INVESTMENT**. AN INVESTMENT IN
> THE BONDS SHOULD BE MADE ONLY BY PERSONS ABLE TO BEAR
> THE RISK OF AND TO WITHSTAND THE TOTAL LOSS OF THEIR
> INVESTMENT. ...

*Id.* at 2-3 (capitalization in original). Later, the Offering Circular reiterates "[i]t should not be
assumed that the summary of the Bond documents is complete. Prospective purchasers and
purchaser representatives *are strongly encouraged* to contact Charles E. Hassard, a beneficial
stockholder of the Company, to obtain any additional information that may be desired." *Id.* at
11.

The Offering Circular also makes clear that "[n]ot all Loans will be secured by assets
and/or ownership interests of the Entities since existing loans may not allow the Entity to
encumber its assets and/or ownership interests with any additional liens." *Id.* at 17. It continues
to disclose that "[t]here may also be other liens, in addition to the first loan, that under some
circumstances could also be filed and could hold a senior position to the Loan. As a result,
SOME OR ALL OF A LOAN MAY BE UNSECURED." *Id.* (emphasis in original).

3

The Offering Circular expressly discloses the risk of the Company's related-party lending and thin capitalization. It notes that the Company is a "finance subsidiary" for its parent DBSI, for the purpose of furthering "the real estate business of its parent" by providing loans to related entities or affiliates controlled by DBSI. "Thus, prospective investors should consider the risks associated with this related-party lending activity with all of the *inherent conflicts of interest* in addition to and/or in conjunction with all of the other risk factors" detailed in the Circular. *Id.* at 15. "Because of the thin capitalization, the Company will not have sufficient assets beyond the Loans to the Entities to make all the interest payments and redeem the Bonds at maturity," and thus "[i]f one or more of the Loans are in default and there is not sufficient collateral from the Entities for repayment, and if the Guarantor cannot provide payment, *the Bondholders could lose part or all of their investment in the Bonds.*" *Id.* That is precisely what happened here: the Plaintiffs were cautioned about these risks prior to investing and yet knowingly purchased the Bonds at issue.

Indeed, the Offering Circular discloses directly to prospective Bondholders that the interests of such management may conflict with the interests of the Bondholders:

> The interests of the Bondholders may be inconsistent in some respects with the interests of the Company. The Company and certain of its affiliates, by reason of their ownership interests in some of the Entities and their receipt of fees from the Entities, have and will have conflicts of interest in connection with their performance of certain activities, *including, particularly, management of the Entities. Id.* at 19.

With these disclosures, the Plaintiffs made their investments in the Bonds.

## II.     Background on DBSI and the DBSI Bankruptcy

### A.     DBSI Files for Bankruptcy

DBSI (f/k/a DBSI Housing Inc.), along with approximately 150 subsidiaries (many of them single-purpose entities, including DBSI Funding), filed a bankruptcy petition under chapter

11 of the Bankruptcy code on November 10, 2008 in the Bankruptcy Court for the District of Delaware. *See* Comp. ¶5; Crichlow Aff. ¶5; *see also* Exs. D-E. Prior to filing for bankruptcy, DBSI and its debtor subsidiaries comprised a network of real estate projects and businesses that engaged in the locating, acquiring, developing, and managing real estate investment. In the 29 years of the Debtors' existence, they have raised approximately $2.65 billion in capital. The petitions reported approximately $100 million to $500 million in assets and liabilities for DBSI (the lead debtor) alone. Crichlow Aff. ¶5; Ex. E.

**B.      TitleOne Files Proofs of Claim**

On November 24, 2008, TitleOne provided the Bondholders with a Notice of Default pursuant to section 11.2 of the Indenture, disclosing DBSI's bankruptcy. *See* Ex. F. In relevant part, the notice communicated that TitleOne was evaluating the financial condition of DBSI and would update the Bondholders as the situation developed. On May 29, 2009, TitleOne provided written notification to the Bondholders that it would file a proof of claim on their behalf. *See* Ex. G. On June 2, 2009, proofs of claim were filed by TitleOne on behalf of the Bondholders with regard to DBSI Funding and DBSI, as guarantor of the bonds. *See* Exs. H and I, respectively. These actions were taken pursuant to section 10.3 of the Indenture to protect the interests of the Bondholders upon the Indenture Trustee's notice of an Event of Default.

**C.      Examiner's Reports Reveal DBSI's Complex Web of Deceit**

The Bankruptcy Court approved an Examiner in the DBSI bankruptcy proceedings to investigate the corporate and financial relationships existing between the debtor entities. The Examiner's findings, conclusions and recommendations are contained in two reports: the First Interim Report of the Examiner, dated August 3, 2009 (the "Interim Report"), and the Final Report of the Examiner, dated October 19, 2009 (the "Final Report") (together with the Interim

Report, the "Examiner's Reports"). *See* Exs. J and K, respectively. These reports are referenced by Plaintiffs in the Complaint. *See* Comp. ¶5.

The Examiner spent over three months investigating the Debtors' operations and business records prior to issuing the Interim Report, after having his work plan approved, by the Bankruptcy Court, on April 29, 2009. By that time, the Examiner had conducted a detailed review of the Debtors' accounting systems, investigated numerous transactions, and conducted 49 witness interviews. *See* Ex. J at 6.

In short, the investigation revealed complex and byzantine accounting systems and a web of commingled funds. The Examiner concluded in his Final Report that the DBSI entities created misleading financial statements to cover their tracks, and that it would be "cost prohibitive and ***virtually impossible*** to fully trace the actual uses of significant portions of the funds derived from TIC [Tenant in Common] and non-TIC investors." Ex. K, Final Report at 9-10. Yet, inexplicably, the Plaintiffs assert that an indenture trustee, charged with ministerial duties only, should have discovered the extremely complex fraudulent financial accounting and the like allegedly committed by DBSI.

## III.    Plaintiffs' Complaint

Plaintiffs filed the Complaint on February 26, 2010, asserting claims for breach of fiduciary duty, breach of contract, and negligence and gross negligence. *See* Ex. A. For the reasons set forth below, Plaintiffs' Complaint is fatally defective and should be dismissed.

## SUMMARY OF ARGUMENT

Each of Plaintiffs' three claims should be dismissed as a matter of law. *First*, Plaintiffs'

breach of fiduciary duty claim should be dismissed:

- TitleOne, as Indenture Trustee, owes no extra-contractual common law fiduciary duties to the Bondholders as a matter of law. *See infra* Point II.A.

- To the extent Plaintiffs' claims can be read to assert a breach of TitleOne's post-default prudent person duties (which is not alleged), Plaintiffs' allegations fail as a matter of law to establish such a breach. *See infra* Point II.B.

*Second*, Plaintiffs' breach of contract claim should be dismissed, as each of Plaintiffs'

specific grounds for its claim fails as a matter of law:

- The Indenture does not require TitleOne to ensure that DBSI used the Bond proceeds properly (Comp. ¶77(a)), and therefore TitleOne cannot be liable for breaching a duty it did not owe. Rather, the Indenture expressly provides that TitleOne "shall not be accountable" for DBSI's application of the Bond proceeds. *See infra* Point III.A.

- Plaintiffs fail to state a claim that TitleOne breached any duty to ensure that DBSI properly document each transaction (Comp. ¶77(b)), as the Indenture does not impose a duty on TitleOne to police all of DBSI's documentation, and Plaintiffs' specific complaints are not inconsistent with what was required to be in the Loan Files maintained by TitleOne. *See infra* Point III.B.

- The Indenture does not require TitleOne to ensure that DBSI obtain security for the loans (Comp. ¶77(c)), and therefore TitleOne cannot be liable for breaching a duty it did not owe. In fact, DBSI itself was not required to obtain any such security. Rather, the Offering Circular expressly disclosed that the loans *may not* be secured *at all*. *See infra* Point III.C.

- The Indenture does not require TitleOne to "detect fraud" on the part of DBSI (Comp. ¶77(d)), and therefore TitleOne cannot be liable for breaching a duty it did not owe. Rather, this is precisely the type of common law *fiduciary* duty that TitleOne, as Indenture Trustee, does not have as a matter of law. Instead, due diligence obligations under the Indenture were allocated to the purchasers of the Bonds, who were accredited investors and many of whom, like several of the named Plaintiffs, had their own fiduciaries who invested on their behalf. *See infra* Point III.D.

- Plaintiffs fail to state a claim that TitleOne breached any duty to notify Bondholders of any known Events of Default (Comp. ¶77(e)), as it cannot be disputed that TitleOne did, in fact, notify Bondholders of DBSI's failure to pay its trustee's fees, the only alleged

default "known" to TitleOne of which Plaintiffs allege TitleOne did not provide notice. *See infra* Point III.E.

*Third*, Plaintiffs' claim for negligence and gross negligence should be dismissed as a matter of law:

- Plaintiffs' negligence claim is barred by the "economic loss rule," which bars negligence claims, such as Plaintiffs', that seek purely economic damages. *See infra* Point IV.A. Nor do any of the limited exceptions to the "economic loss rule" apply. *See infra* Point IV.B.

- To the extent Plaintiffs' negligence claim is based on an alleged breach of TitleOne's prudent person duties (which is <u>not</u> alleged), TitleOne can only be liable for *gross* negligence under the Indenture, and Plaintiffs have failed to allege any conduct that would constitute gross negligence after TitleOne's prudent person duties were triggered. *See infra* Point IV.C.

*Finally*, to the extent any of Plaintiffs' claims are not dismissed, the Court should deny class certification, because: (i) common questions of law and fact do not predominate, as Plaintiffs' claims depend on allegations of individualized reliance and proof of causation (*see infra* Point V.A.); (ii) the claims and defenses of the class representatives are not typical of the class as a whole, as the putative class contains two types of Bondholders, each with separate legal rights and remedies – Bondholders who purchased individually, and Bondholders who purchased through *fiduciaries*, such as some of the named Plaintiffs (*see infra* Point V.B.); and (iii) the amounts in question for each Bondholder, in addition to the individualized issues identified above that need to be resolved, suggest that class certification is not superior to other forms of adjudication. *See infra* Point V.C.

## ARGUMENT

## I.    Legal Standards

### A.    Motion to Dismiss

A motion to dismiss may be granted under Federal Rule of Civil Procedure 12(b)(6)

where "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim

that would entitle him to relief." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.

1994).

While all well-pleaded allegations of material fact are taken as true and construed in a

light most favorable to the non-moving party, allegations contradicted by documents referenced

in the Complaint are due no such deference and may be disregarded. *Paulsen v. CNF Inc.*, 559

F.3d 1061, 1071 (9th Cir. 2009) (noting the court is not required to accept as true "conclusory

allegations that are contradicted by documents referred to in the complaint," or "legal

conclusions merely because they are cast in the form of factual allegations"), *cert. denied*, 130 S.

Ct. 1053 (2010).  Documents referenced in the Complaint, such as the Indenture, Offering

Circular and Examiner's Reports, may be considered on this motion to dismiss. *United States v.

Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  Furthermore, interpretation of unambiguous

contract provisions is a question of law. *See Mintun v. Blades*, No. CV-06-139-S-BLW, 2008

WL 711636, at *16 (D. Idaho Mar. 14, 2008) (under Idaho law, determination of an

unambiguous contract's meaning and legal effect is a question of law) (Winmill, J.).

### B.    Motion for Summary Judgment

To the extent the Court relies upon materials in addition to those referenced in the

Complaint, the Court may treat TitleOne's motion to dismiss as a motion for summary judgment

governed by Federal Rule of Civil Procedure 56. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493,

1496 (9th Cir. 1995).  Plaintiffs' claims may be dismissed as a matter of law on documentary

evidence. *See, e.g., Hoak v. Ada Cty.*, No. CV08-447-S-CWD, 2009 WL 2044415, at *1, **3-4 (D. Idaho July 10, 2009) (converting motion to dismiss to summary judgment, and dismissing complaint based on unambiguous language of agreement).

A motion for summary judgment should be granted if, based on the pleadings and all the evidence considered, "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  As this Court has recently observed, "[t]he Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some *purported* factual dispute, but only when there is a 'genuine issue of material fact.'" *Jensen v. FedEx Freight, Inc.*, No. CV 08-483-E-CWD, 2009 WL 5031331, at *4 (D. Idaho Dec. 15, 2009) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992)).

## II.   Plaintiffs' Breach Of Fiduciary Duty Claim Should Be Dismissed

In order to establish a claim for breach of fiduciary duty, Plaintiffs must establish that TitleOne owed them a fiduciary duty, and that the fiduciary duty was breached. *Bushi v. Sage Health Care PLLC*, 203 P.3d 694, 699 (Idaho 2009).[2]  As discussed below, because TitleOne, as Indenture Trustee, owed Plaintiffs *no* fiduciary duty *as a matter of law*, Plaintiffs' claim for breach of fiduciary duty must be dismissed.

### A.   Prior to Event of Default, Trustee's Duties Were Limited to Those Expressly Set Forth in the Indenture

As the Ninth Circuit has made clear, an indenture trustee's obligations and duties to bondholders are defined exclusively by the terms of the indenture. *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1491 (9th Cir. 1994) (holding that an indenture trustee's duties are confined to the four corners of the Trust Indenture).  Specifically, "[t]he duty which is imposed

---

[2] The Indenture is governed by Idaho law. *See* Ind. § 13.7.

under an indenture of trust *is not a traditional fiduciary duty*" and an "indenture trustee is *not subject to the ordinary trustee's duty of undivided loyalty*." *Id.* (internal citations omitted). Rather, "[u]nlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Id.* (internal citations omitted). *See also Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 2010 N.Y. Slip Op. 02678, 2010 WL 1233516, at *2, **4-5 (N.Y. Apr. 1, 2010) (dismissing noteholders' breach of fiduciary duty claim against indenture trustee premised on failure to review substance of reports submitted by note issuer, noting the court's holding that the indenture "does not imply a duty on the part of the trustee to assure the filing of accurate reports" is "consistent with the limited, 'ministerial' functions of indenture trustees"); *Leverso v. Southtrust Bank of Ala. Nat'l Ass'n*, 18 F.3d 1527, 1531 (11th Cir. 1994) ("[b]ondholders' rights are a matter of *contract*, governed by the trust indenture and general principles of contract law").

Here, the Indenture expressly provides that, prior to an Event of Default, "the duties of the Trustee shall be determined *solely* by the *express* provisions of this Indenture and the Trustee will perform only those duties *and no others*; the Trustee undertakes to perform such duties and only such duties as are *specifically set forth or provided for* in this Indenture, and *no implied covenants or obligations shall be read into this Indenture against the Trustee*." Ind. § 11.1.1(i)). As the Ninth Circuit has held, "[w]hen a limiting clause [such as § 11.1.1(i)] is included in an indenture of trust, the trustee's obligations are confined to the scope of the contract, and *do not extend to common law fiduciary duties*." *Shawmut Bank*, 33 F.3d at 1502 (upholding dismissal of breach of contract claims recast as breach of fiduciary duty claims

asserted against indenture trustee).[3]  Because TitleOne owed no common law fiduciary duty to

Plaintiffs, Plaintiffs' breach of fiduciary duty claim must be dismissed as a matter of law.

**B.      TitleOne Complied With Its "Prudent Person" Duties After Earliest Possible Event of Default**

Only after an Event of Default has occurred and is continuing is TitleOne required to

exercise the care and skill a prudent person would exercise or use under the circumstances in the

conduct of such person's own affairs.  Ind. § 11.1.2.  Even though not alleged, TitleOne cannot

be liable for breach of its "prudent person" duties.

*1.      Events of Default triggering duties did not occur until October/November 2008*

Based on Plaintiffs' allegations, the earliest TitleOne's prudent person duties could have

been triggered was October 31, 2008, ten days after TitleOne notified DBSI that it was in default

of its obligation to pay the Trustee fees (*see* Comp. ¶58), and November 6, 2008, the date of

DBSI's bankruptcy.  Comp. ¶5.  *See* Ind. §§ 9.1.4, 9.1.8.

The Indenture provides that TitleOne is "not deemed to have notice or knowledge" of an

Event of Default without "*actual knowledge*" or express written notice of a default.  Ind. §

11.1.5.  Such knowledge or notice is used for "purposes of determining the Trustee's

responsibility and liability hereunder," *id., e.g.,* whether the Trustee's "prudent person" duties

have been triggered.  Plaintiffs do not allege, nor can they, that TitleOne had actual knowledge

of any earlier Event of Default that would trigger its prudent person duties.

---

[3] In *Shawmut Bank*, the Ninth Circuit also affirmed the dismissal of a breach of implied covenant of good faith and fair dealing claim premised on the indenture trustee's alleged failure to notify the bondholders that bond proceeds were being diverted to other companies. 33 F.3d at 1503.  Consistent with an indenture trustee's limited contractual duties, the Court noted that the implied covenant could not require the indenture trustee to take on "*additional duties*" outside of the indenture – such as a duty "to inform investors of possible disasters which have befallen the project in which they have invested." *Id.*

2.   *TitleOne acted with the requisite degree of care and skill a
prudent person would exercise after the Events of Default*

Furthermore, Plaintiffs do not allege, nor can they, that TitleOne failed to act with the

requisite care and skill of a prudent person following the Events of Default in the Fall of 2008.

Indeed, TitleOne has fulfilled such duties.  Specifically, TitleOne provided the Bondholders with

a Notice of Default (Ex. F), filed Proofs of Claim in the bankruptcy action against DBSI and

DBSI Funding (Exs. H, I), and have taken other such actions in the bankruptcy proceeding to

protect the Bondholders' interests.  *See* Crichlow Aff. ¶¶6-12.

Instead, Plaintiffs generally claim TitleOne breached its alleged "fiduciary duties" from

"at least 2006."  As discussed below, each of the specific allegations of breach of fiduciary duty

are identical to the breach of contract allegations.  *Compare* Comp. ¶72(a)-(e) *with* Comp.

¶77(a)-(e).  Because TitleOne has no common law fiduciary duties, or any other "implied

covenants or obligations" outside of those set forth in the Indenture, each of these claims must be

assessed based on the four corners of the Indenture.  For the reasons set forth below, Plaintiffs'

identical breach of fiduciary duty and breach of contract claims fail as a matter of law.  *See infra*

Point III.A-E.

III.   **Plaintiffs' Breach of Contract Claim Should Be Dismissed**

Conspicuously absent from Plaintiffs' breach of contract claim are any cites to the

specific Indenture provisions that Plaintiffs claim TitleOne breached.  *See* Comp. ¶¶75-78

(Breach of Contract).  Indeed, Plaintiffs' claim principally focuses on *DBSI's* alleged breaches of

the Indenture, and TitleOne's alleged failure to prevent or detect them.  Tellingly, these alleged

breaches by DBSI are also without citation to the violated Indenture provision.  The reason for

the lack of such citation is because for each specific allegation, (i) there is *no* underlying

contractual obligation on the part of DBSI giving rise to TitleOne's alleged breach in the first

place, or (ii) TitleOne has no contractual duty to ensure DBSI has complied with its contractual

obligation.  For the reasons set forth below, each of Plaintiffs' specific grounds allegedly

supporting its breach of contract claim (Comp. ¶77(a)-(e)) are meritless and must be dismissed as

a matter of law.

### A.    TitleOne Had No Duty to Ensure Bond Proceeds Were Properly Used

Contrary to Plaintiffs' assertion, TitleOne had no duty "to ensure that DBSI used [DBSI

Funding] funds in a manner consistent with the Indenture." Comp. ¶77(a).  Rather, the Indenture

expressly provides the "Trustee *shall not be accountable* for the Company's issue of the Bonds

*or application of the proceeds thereof* or for *any money paid to the Company*.... The Trustee is

not responsible for the use or application of any moneys by any agent other than the Trustee."

Ind. §11.4.  Thus, in accepting the Bonds, the Bondholders expressly accepted that TitleOne

would have no responsibility for oversight of the Bond proceeds, and therefore TitleOne cannot

now be liable for any alleged breach on the part of DBSI in this respect.  As a result, this ground

for breach of contract must be dismissed as a matter of law.[4]

### B.    TitleOne Had No Duty to Ensure That DBSI Properly Documented Each Transaction

Plaintiffs' claim that TitleOne breached an alleged duty "to ensure that DBSI documented

each transaction as required by the Indenture" (Comp. ¶77(b)) fails as a matter of law.

Specifically, Plaintiffs' contract claims based on TitleOne's alleged failure to ensure that DBSI

---

[4] Furthermore, Plaintiffs' allegation that "[t]he terms of the *Indenture* required that [DBSI Funding] funds could only be used for real estate investment purposes" (Comp. ¶18) is incorrect.  The Indenture does not include any such limitation.  *See* Ind. § 7.12 ("**Use of Bond Proceeds.  **The Company will use the proceeds of Bonds only in accordance with the provisions of this Indenture.  All Bond proceeds shall be used only to make Loans.").  Thus, as with many of their allegations, Plaintiffs' complaint that Bond proceeds were allegedly loaned for "'business and commercial purposes,' *a use not permitted by the Indenture*" (Comp. ¶54), incorrectly characterizes representations made by DBSI in the Offering Circular as contractual terms of the Indenture that Bondholders accepted at the time of making their investments.

properly documented each transaction must be dismissed since "[n]one of Plaintiffs' complaints are inconsistent with the terms of the [Indenture.]" *Gibson v. Office of Attorney Gen., State of Cal.*, 561 F.3d 920, 928-29 (9th Cir. 2009) (upholding district court's dismissal of plaintiffs' contract claims, noting "[e]ven if Plaintiffs' allegations are true, they are not breaches of any provision in the transfer agreement").

As an initial matter, to the extent that Plaintiffs allege that TitleOne had a duty to police all of *DBSI's* documentation with regard to each loan transaction, no such broad duty exists under the Indenture. Rather, the Indenture provides that the "Trustee shall keep and maintain proper books of record and accounts relating to the Bonds in which full, true and correct entries will be made of all dealings or transactions *of the Trustee* in relation to the Bonds, the Accounts and the Company." Ind. § 11.1.8.[5]

Furthermore, Plaintiffs misconstrue the documentation that DBSI *was* required to provide to TitleOne. First, Plaintiffs complain that some of the Loan Files did not include documentation of a security interest in the loan. As discussed herein, the Indenture does not require a security agreement to be included in the Loan File transmitted to TitleOne, and the Offering Circular expressly discloses that some or all of a Loan may *not* be secured. *See infra* Point III.C.

---

[5] For instance, Plaintiffs complain that documents contained in, or relating to, "loan applications" were incomplete or appear to be inaccurate. *See, e.g.,* Comp. ¶¶38 (discussing accuracy of documents submitted to the "loan committee"); 42 (discussing apparent discrepancies between "loan application" and loan documents); 55 (discussing apparent discrepancies between two "loan applications"); 57 (complaining about apparent deficiencies in "loan application"). Nothing in the Indenture sets forth the requirements of what should be included in a loan application, and more importantly they are not among the documents required to be provided to TitleOne. Rather, the Offering Circular clearly discloses that the loan application is *not* required to be submitted to TitleOne: "In order to qualify for Loans from the Company, each Entity will be required to submit a loan application to the Company (**but not the Trustee**) and satisfy a variety of requirements." Off. Cir. at 22. TitleOne was not on the "loan committee" or otherwise involved in the loan application process, and had no duty under the Indenture to maintain or review documents relating to loan applications.

Second, Plaintiffs' repeated complaint that the security agreements contained in the Loan Files "grant[] a 'security interest' only in 'Borrower's *personal* property'" instead of "real" property (*see, e.g.,* Comp. ¶¶6, 7(d), 28, 29, 30, 39(f), 44, 52, 57(e)) is without moment, as this is consistent with express terms of the Indenture. *See* Ind. §1.30 (defining "security agreement" to mean "the security agreement with respect to a Loan between the related Borrower and the Company providing for the grant by such Borrower of a security interest *in personal property* to secure such Loan.").[6]

Third, Plaintiffs' complaints regarding the absence of "mortgages" in the Loan Files (*see, e.g.,* Comp. ¶¶6, 28) also ignores the fact that assignments of *mortgages* were not required under the Indenture. The Indenture states that a mortgage, or an assignment of a mortgage to the Trustee, is to be included in the Loan File transmitted to TitleOne only "*if applicable.*" Ind. § 1.19(ii), (v). *See also* Ind. §§ 3.4.5 (Company's representations and warranties with respect to each "Mortgage, *if any*"); 3.4.6 (same).

Fourth, Plaintiffs' complaint that certain Loan Files contained valuations of property "with *no appraisal* or any other document supporting the stated amount" (*see, e.g.,* Comp. ¶57(c)) is similarly without moment, as this practice also is consistent with the express terms of the Indenture. In defining how the required Loan to Value Ratio is calculated, the Indenture provides that it is "the sum of the amount of a Loan and any senior debt divided by the appraised value *or, absent an appraisal, the Company's estimated value of the assets and/or ownership interests of a Borrower.*" Ind. § 1.21. This permitted use of DBSI's own estimated value,

---

[6] Plaintiffs state that TitleOne's failure to require DBSI to obtain security interests in "real" property is "especially egregious" since TitleOne is a title insurance company. Comp. ¶28. This criticism rings hollow in light of this express contractual provision, and is an example of Plaintiffs' improper attempts to impose extra-contractual duties on TitleOne contrary to the well-settled law governing the limited duties of an indenture trustee.

instead of an appraisal, is also disclosed in the Offering Circular. *See* Off. Cir. at 31 (providing same definition of Loan to Value Ratio).

Because the unambiguous language of the Indenture does not impose a general duty upon the Trustee to ensure that DBSI properly documented each loan transaction, and the specific complaints made by Plaintiffs with regard to what documentation DBSI *did* provide to TitleOne do not evidence a breach of the Indenture, this ground for breach of contract must be dismissed as a matter of law.

C.     **TitleOne Had No Duty to Ensure That DBSI Obtain Security for Loans from DBSI Funding**

Contrary to Plaintiffs' assertion, TitleOne had no duty "to ensure that DBSI obtain security for loans from [DBSI Funding]." Comp. ¶77(c).  Not only was TitleOne not required to ensure that DBSI obtain security for the loans, the Indenture makes clear that DBSI itself was under no obligation to do so.  The Indenture states that a security agreement, or an assignment of a security agreement to the Trustee, is to be included in the Loan File transmitted to TitleOne only "*if applicable*." Ind. § 1.19(ii), (v).  Indeed, the Offering Circular expressly disclosed to prospective Bondholders that "[n]ot all loans will be secured … SOME OR ALL OF A LOAN MAY BE UNSECURED." Off. Cir. at 17 (emphasis in original).  TitleOne cannot be liable for failing to ensure that DBSI take an action it was under no obligation to do.  As a result, this ground for breach of contract must be dismissed as a matter of law.

D.     **TitleOne Had No Duty to "Detect Fraud" Based on Documentation Provided to TitleOne**

As discussed above, prior to an Event of Default, TitleOne only has such duties as expressly set forth in the Indenture. *See infra* Point II.A.  The Indenture contains no contractual duty to "detect fraud" as alleged in the Complaint (Comp. ¶77(d)), and such a duty is precisely the type of common law duty that indenture trustees do not have. *See Shawmut Bank*, 33 F.3d at

1491; Ind. § 11.1.1(i)) ("*no implied covenants or obligations shall be read into this Indenture against the Trustee*."). DBSI represented and warranted that the information provided to the Trustee pertaining to loans "was true and correct in all material respects." Ind. §3.4.1; *see also id*. §7.9.8 (warranting that no document furnished by DBSI pursuant to the Indenture "contains or will contain when furnished any untrue statement of a material fact or fails or will fail to state a material fact necessary in order to make the statements contained therein not misleading"). TitleOne was entitled to rely on those representations and warranties. *See also* Ind. § 11.3.1 (providing that "in the absence of bad faith the Trustee conclusively may rely on *and shall be protected* in acting or refraining from acting when doing so" any "document conforming to the requirements of this Indenture believed by the Trustee to be genuine and to have been signed or presented by the proper parties, and the Trustee *need not investigate any facts stated therein*").

Ironically, the Indenture and Offering Circular make clear that any due diligence obligations rested with the Bondholders, who certified they were "accredited investors." *See* Off. Cir. at 53. Due diligence was to be conducted before investing (Off. Cir. at 2-3, 11), and an investor was required to certify that he or she (or a Purchaser Representative[7]) had reviewed and were familiar with the investment documentation, had had an opportunity to request and review documents and obtain information "concerning the terms and conditions of this investment," and that he or she was "completely satisfied with the results of my investigation." *Id*. at 54.

Pursuant to the Indenture, Bondholders were then entitled to access to the transaction documents at any time during the course of their investment prior to maturity. *See* Ind. § 11.1.8

---

[7] Certain Bondholders *did* employ Purchaser Representatives in connection with their investment, as is evidenced by the fact that Plaintiffs Russell and Rena Firkins are *trustees* of Plaintiff Bondholder Highland Services Co., Inc. Profit Sharing Plan, and Plaintiff Douglas R. Circle is *trustee* to Plaintiff Bondholder Douglas Richard Circle and Jan Alison Circle 1984 Family Trust. *See* Comp. ¶¶9, 10. Unlike TitleOne, *these* trustees (as well as other Purchaser Representatives) *did* owe fiduciary duties to the Bondholders they represented.

(access to Trustee's documents); 13.10 (access to Company's documents and right to have same audited).  Furthermore, DBSI was obligated under the Offering Circular to provide annual reports to Bondholders that included audited statements for the Entities with Loans at each year-end so they could monitor their own investments.  Off. Cir. at 29.

To the extent TitleOne had any duty to inspect the documents provided by DBSI, Plaintiffs' allegations fail to establish any "fraud" that was "apparent on the face of documents in TitleOne's possession."  Comp. ¶77(d).  Plaintiffs' examples of alleged "fraud" include DBSI's failure to secure the loans, securing them with "personal" instead of "real" property, and providing valuations unsupported by appraisals – however, those actions are not even breaches of the Indenture, let alone evidence of fraud.  *See supra* Point III.B.  Also, the Bankruptcy Examiner's Reports demonstrate that any fraud on the part of DBSI would not be apparent "on its face."  *See* Exs. H, I.  *See also* Comp. ¶5 (noting "extensive reports by the examiner appointed by the bankruptcy court show that DBSI was no more than a Ponzi scheme from at least 2004, if not earlier").[8]

### E.     TitleOne Did Not Breach Its Duty to Notify Bondholders of Any Events of Default Known to It

TitleOne cannot be liable for any alleged breach of its duty to provide Notices of Default to the Bondholders.  Comp. ¶77(e).  TitleOne is only obligated to give notice within 30 days of a *known* Event of Default.  Ind. § 11.2.  TitleOne is not deemed to have notice or knowledge of an Event of Default *"under any document included in the Trust Estate*, unless [i] an authorized

---

[8]  Plaintiffs' reference to the Bankruptcy Examiner's Reports, and the contents of the Reports themselves, illustrate the fact that Plaintiffs' damages were caused by DBSI's wrong-doing, and not that of TitleOne.  The Court need not consider the Reports (nor does TitleOne's motion depend on its consideration of the Reports), however, to grant TitleOne's motion to dismiss the claims because of Plaintiffs' failure to properly state a claim against TitleOne based on TitleOne's limited and ministerial duties under the Indenture.

officer of the Trustee has *actual knowledge* thereof or unless [ii] an authorized officer of the Trustee has received *written notice* thereof...." *Id.* § 11.1.5.

The only specific Event of Default that Plaintiffs allege TitleOne failed to notify the Bondholders of is its October 21, 2008 notification of DBSI's failure to pay its trustee's fees. Comp. ¶¶58, 60. This became an Event of Default on October 31, 2008 (ten days after DBSI received notice, *see* Ind. §9.1.4), with any notice being due by December 1, 2008. TitleOne notified the Bondholders of DBSI's failure to pay its trustee's fees on November 24, 2008. *See* Ex. F. This is the same notice in which TitleOne notified the Bondholders that DBSI had filed for bankruptcy in early November. *Id.*

Because TitleOne is only obligated to give notice of Events of Default of which it has "actual knowledge" or "written notice," and Plaintiffs have not alleged any such Events of Default of which TitleOne failed to provide notice to the Bondholders, this ground for breach of contract must be dismissed as a matter of law.

## IV.   Plaintiffs' Negligence and Gross Negligence Claim Should Be Dismissed

### A.   Plaintiffs' Negligence Claim is Barred By The Economic Loss Rule

Plaintiffs' negligence claim seeks recovery of purely economic damages, and therefore must be dismissed as a matter of law under the "economic loss rule." Under Idaho law, the "economic loss rule" bars claims of negligence seeking recovery of purely economic losses. *See, e.g., Truckstop.net, L.L.C. v. Sprint Commc'ns Co.*, 537 F. Supp. 2d 1126, 1139 (D. Idaho 2008) (Winmill, J.) (granting motion to dismiss negligence claims based on application of the economic loss rule); *Millenkamp v. Davisco Foods Int'l, Inc.*, 391 F. Supp. 2d 872, 878-79 (D. Idaho 2005) (dismissing negligence claims on summary judgment under economic loss rule). The rationale for this rule is that "there is no [common law] duty to prevent economic loss to another." *Truckstop.net*, 537 F. Supp. 2d at 1139; *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996,

1000 (Idaho 2005). Thus, where the only allegation is that a defendant caused the plaintiffs to suffer the loss of an economic advantage at the heart of a contract, the plaintiff's only remedy lies in breach of contract, not negligence. *See Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 510 (Idaho 2009).

Here, the only harm that the Plaintiffs have asserted is the loss of an economic damage arising from a contract. Under a clear application of the economic loss rule, Plaintiffs' negligence claim should be dismissed as a matter of law.

**B.      The Limited Exceptions to the Economic Loss Rule Do Not Apply**

*1.      The "special relationship" exception does not apply.*

Idaho courts recognize an exception to the economic loss rule based on the existence of a "special relationship" between the plaintiff and an alleged tortfeasor. Such a special relationship is found to exist only in certain specific circumstances, none of which exist in this case. A "special relationship" may exist where "[i] a professional or quasi-professional performs personal services for a lay person, or [ii] when an entity holds itself out as having expertise in a specialized function and, by doing so, knowingly induce[s a plaintiff] to rely on that expertise." *Truckstop.net*, 537 F. Supp. 2d at 1139. Under either scenario, however, a special relationship has been applied only to "an extremely limited group" where it would be "equitable to impose such a duty." *Id*. (internal citations omitted).

Plaintiffs have not alleged, nor can they, that TitleOne has performed "personal services" for them as "lay people." Neither have the Plaintiffs alleged (nor can they) that TitleOne held itself out as having expertise in a specialized function and knowingly induced Plaintiffs to rely on that expertise. To the contrary, TitleOne had no role in the marketing of the Bonds themselves. *See* Ind. § 11.4. Moreover, the Indenture made clear that TitleOne had no

responsibility for the use of Bond proceeds (*id.*), and the Bondholders accepted that TitleOne

contracted with them to perform only those duties set forth in the Indenture. *Id.* at §11.1.1(i).

>    2.    *The "unique circumstances" exception does not apply.*

Idaho law recognizes a second, narrow exception to the economic loss rule where

"unique circumstances exist, requiring a different allocation of risk between the parties."

*Millenkamp*, 391 F. Supp. 2d at 879.  However, "[w]hile the Idaho Supreme Court has

recognized this exception to the economic loss rule, *it has never applied the exception.*" *Id.*

Plaintiffs have not, and cannot, allege any set of "unique circumstances" that would justify an

unprecedented reallocation of the risk to an indenture trustee, particularly considering that in the

Indenture TitleOne expressly assumed *no* responsibility for the use of the Bond proceeds, and

Plaintiffs certified that they were aware of, and could withstand, the risk of a total loss of their

investment.

### C.    TitleOne Was Not Grossly Negligent After Event of Default

To the extent that Plaintiffs' negligence cause of action is based on TitleOne's exercise of

its "prudent person" obligations (which is not alleged in the complaint),[9] TitleOne can only be

liable for "*gross* negligence" or willful misconduct following an Event of Default under the

Indenture. *See* Ind. §§ 11.1.2, 11.1.3.  As such, under any circumstances, Plaintiffs' simple

"negligence" claim must be dismissed.

Idaho has not adopted a unitary, standard definition of the term "gross negligence,"

despite having addressed the issue frequently. *See S. Griffin Constr., Inc. v. City of Lewiston*, 16

P.3d 278, 286 (Idaho 2000) (collecting cases).  The standards that have been adopted include the

following: "(1) The want of even a slight care and diligence, (2) the want of that diligence that

---

[9] Plaintiffs' negligence claims are premised on TitleOne's alleged "fiduciary duties." *See* Comp. ¶81 (alleging that TitleOne "was negligent and gross negligent in its discharge of its fiduciary duties").  As discussed above, TitleOne owes no such duties. *See supra* Point II.

even careless men are accustomed to exercise, and (3) the want of that care which every man of common sense, however inattentive he may be, takes of his own property." *Id.* (internal citations omitted).

Regardless of the exact formulation, TitleOne's actions taken to protect the Bondholders following an Event of Default cannot constitute gross negligence. *See supra* Point II.B.

## V.   **Plaintiffs' Purported Class Cannot Be Certified**

In order for this Court to certify the proposed class under the Plaintiffs' theories, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members," and "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Furthermore, the claims and defenses of the class representatives must be "typical" of the class as a whole. Fed. R. Civ. P. 23(a)(3). Plaintiffs' Complaint, however, presents serious schisms between class members that would require individualized proof and disposition by this Court and demonstrate that several representatives – including at least one named Plaintiff – do not typify the class. Moreover, given the size of the claims at issue, a class action is an inefficient method to pursue these claims. These factors speak strongly against certification.

### A.   **Common Questions of Law and Fact Do Not Predominate**

Although there is no bright-line test for measuring predominance of common questions, the Ninth Circuit has directed that class certification is not appropriate where questions relating to proof of causation or reliance would predominate over common questions in the case. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664-67 (9th Cir. 2004) (finding that individualized reliance questions related to proof of causation would predominate over common questions of tort liability); *see also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th

Cir. 1998) (denying class certification where liability issues were "too dependent upon consideration of the unique circumstances pertinent to each class member").

The Plaintiffs' Complaint attempts to circumvent these requirements by artfully cloaking its allegations in the guise of contract and negligence actions. At the heart of the Complaint lie allegations that the Bondholders were misled by and relied on TitleOne to protect them from DBSI's fraud.[10] Behind the captions, then, the Plaintiffs are attempting to recover based on DBSI's fraud, and they attempt to hide this fact by artful and clever pleading because authorities as high as the Supreme Court have described fraud cases as inappropriate for class actions due to the requirement to prove individual reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988) ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones."); *see also Poulos*, 379 F.3d at 664-67 (fraud claim required individual assessments); *In re Hotel Tel. Charges*, 500 F.2d 86, 88-89 (9th Cir. 1974) (state law fraud claims raised individual questions making class action unavailable).

Even accepting the Plaintiffs' characterization of their claims, however, Plaintiffs' theories of liability rely on allegations that they were ignorant of DBSI's wrong-doing because of TitleOne's alleged breaches. Specifically, Plaintiffs allege that, had they known about DBSI's alleged fraud (*e.g.*, had TitleOne "fulfilled" its alleged contract and/or fiduciary duties to detect

---

[10] *See, e.g.*, Comp. ¶¶ 8 (alleging that if TitleOne had fulfilled its duties "the [DBSI Funding] bondholders could have avoided the disaster that has befallen them"); 73 (alleging that, as a result of TitleOne's breaches, Plaintiffs were damaged "by making investments that they would not have made, not redeeming investments, rolling over interest, and otherwise having their investments dissipated," and "by preventing bondholders from protecting their interests in a timely fashion"); 78 (same).

and disclose fraud), Plaintiffs would have prevented or reduced their damages.[11]  In other words,

Plaintiffs essentially claim TitleOne failed to disclose information that purportedly misled them,

and because they detrimentally relied on TitleOne's purported duty to make such disclosure (a

duty that does not exist under law), the Plaintiffs were damaged – evidently as a result of their

*individual reliance* on TitleOne to protect them from DBSI's alleged fraudulent activities.  As a

result of Plaintiffs' own allegations, irrespective of the effort to conceal the fraud and

misrepresentation allegations by not captioning a claim sounding in fraud, this case is not

appropriate for class certification, due to the need of individualized proof regarding each

Plaintiffs' implicit claims of reliance.

 Additionally, because of the due diligence requirements of each new accredited investor

(*see supra* Point III.D.), those Bondholders who invested *after* the creation of documents

allegedly demonstrating DBSI's wrong-doing (a subset of the purported class) (*see* Comp. ¶¶5,

8) cannot recover under Plaintiffs' theory, because those investors would have, or should have,

known of any alleged fraud that was readily apparent "on its face."

 According to Plaintiffs' allegations, DBSI's fraud would have been obvious by *at least*

*2006* (Comp. ¶8), and the Examiner's Reports "show that DBSI was no more than a Ponzi

scheme from *at least 2004*, if not earlier." *Id.* at ¶5.  Thus, if DBSI's fraud would have been

apparent on the face of the documents (as alleged by Plaintiffs), then Bondholders making

purchases after such wrong-doing had occurred would have been privy to that information during

due diligence.  TitleOne cannot be liable to accredited investors who purchased after reviewing

the documents themselves—as each investor was urged to do and warranted that they had

done—once DBSI's fraud was allegedly so readily discoverable. *See, e.g., Basic Inc.*, 485 U.S.

---

[11]*See supra* note 10.

at 248-49 (presumption of reliance based on fraud on market theory rebutted by evidence showing that plaintiff was privy to the truth). That fact alone defeats certification of Plaintiffs' proposed class of all Bondholders, as the interests, claims, and proof requirements will strongly differ among class members who purchased at different times.

**B.      The Claims and Defenses of Class Representatives Are Not Typical of the Proposed Class as a Whole**

The Complaint also reveals on its face that the putative class – "[a]ll persons *and entities* who are current bondholders" (Comp. ¶62) – contains two types of Bondholders, each with separate legal rights and individual remedies: Bondholders who purchased individually, and those who purchased bonds through *fiduciaries*, such as a trustee or financial advisor. *See* Off. Cir. at 29 ("Bonds will be sold only to purchasers, or *fiduciaries* representing purchasers, who represent in writing that they are Accredited Investors."). Bondholders who purchased through intermediaries are owed fiduciary duties by their representatives – not the Indenture Trustee, who owes them no common law fiduciary duties. *See supra* Point II.A. Thus, these Bondholders would have claims against those representatives, while individual Bondholders would not. This conflict is demonstrated by the named Plaintiffs themselves: Plaintiffs Russel and Rena Firkins are Bondholders in their individual capacity *and* are *trustees* of Plaintiff Bondholder Highland Services Co., Inc. Profit Sharing Plan. Comp. ¶9. On the other hand, Plaintiff Douglas R. Circle is asserting claims *solely in his capacity* as *trustee* to the Plaintiff Bondholder Douglas Richard Circle and Jan Alison Circle 1984 Family Trust. Comp. ¶10. However, the Complaint does not address how potential claims or cross-claims between these parties will be resolved. To disregard these distinctions and grant class certification would be improper.

Indeed, the typicality and adequacy of representation components of the class certification inquiry are designed to ensure that class representatives are "part of the class and

possess the same interest and suffer the same injury as the class members" and that no serious conflicts of interest exist between class members and their representatives. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Here, however, the Complaint ignores an important schism between and among class members and the representatives that could potentially swallow the litigation.

### C.      Class Action Is Not Superior to Other Forms of Adjudication

Moreover, the amounts in question for each Bondholder suggest that class certification would be improvident. Where individual claims are sufficiently large, courts have found that class actions are not superior procedural devices. *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001) (class members' individual damages were claimed to be in excess of $50,000, suggesting that claims might economically be pursued individually or permissively joined). Here, unlike in a typical consumer class action, the individual Bondholders' claims would be large. *See* Off. Cir. at 1 (bonds issued in denominations of $1,000, with a minimum purchase of $50,000, subject to the Company's discretion). Thus, it would be appropriate and economical for class members to pursue claims individually, and given the individualized questions of law and fact that must be satisfied, as addressed above, individualized actions would be superior.

Based on the foregoing, the Plaintiffs have not satisfied and cannot satisfy the requirements of Rule 23(b)(3), and class certification should be denied.

## CONCLUSION

For the foregoing reasons, Defendant TitleOne Corporation respectfully requests this

Court enter an order:

(a) dismissing all of Plaintiffs' claims as a matter of law;

(b) if any claims are not dismissed, denying class certification; and

(c) granting TitleOne any and all further relief as this Court deems just and proper.

Dated: New York, New York
April 19, 2010

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: *[signature]*
David A. Crichlow (admitted *pro hac vice*)
Craig A. Barbarosh (admitted *pro hac vice*)
Karen B. Dine (admitted *pro hac vice*)
Andrew C. Smith (admitted *pro hac vice*)
1540 Broadway
New York, New York 10036
Tel: 212.858.1000
Fax: 212.858.1500

Mark B. Perry
Maurice O. Ellsworth
Trevor L. Hart
PERRY LAW, P.C.
2627 West Idaho Street
P.O. Box 637
Boise, Idaho 83701
Tel: 208.338.1001
Fax: 208.338.8400

*Attorneys for Defendant TitleOne Corporation*