# **Exhibit B**

Indenture

DBSI REAL ESTATE FUNDING CORPORATION

AND

TITLEONE CORPORATION

Trustee

RECEIVED

NOV 0 6 2008

Givens Pursley, LLP

INDENTURE

Dated effective as of December 24, 2002

(Not Subject to the Trust Indenture Act of 1939)

Offer of $5,000,000*

9.0% Senior Bonds Due September 30, 2009

*Subject to increase in the sole discretion of the Company.

12/30/2002 9:47 AM
G:\WP\ENTITY\BONDS\Real Estate Funding\Indenture.doc

**EXHIBIT A**

TABLE OF CONTENTS

Page

RECITALS OF THE COMPANY ................................................................................1

ARTICLE I ................................................................................................................1

ARTICLE II ..............................................................................................................5
    2.1    Title and Terms.............................................................................5
    2.2    Execution and Authentication.......................................................6
    2.3    Interest Computations...................................................................6
    2.4    Transfer Exchange and Registry ..................................................6
    2.5    Regulations With Respect to Exchanges and Transfers .................7
    2.6    Mutilated, Destroyed, Stolen, or Lost Bonds................................7
    2.7    Medium of Payment; Payment of Principal and Interest................7
    2.8    Persons Deemed Owners..............................................................8
    2.9    Cancellation................................................................................8
    2.10   Access to List of Bondholders' Names and Addresses ..................8
    2.11   Acts of Bondholders ....................................................................8

ARTICLE III .............................................................................................................9
    3.1    Assignment of Loans ...................................................................9
    3.2    UCC Filing List...........................................................................9
    3.3    Recorded Mortgages ..................................................................10
    3.4    Representations and Warranties ..................................................10

ARTICLE IV ...........................................................................................................11
    4.1    The Company To Act As Servicer ...............................................11
    4.2    Collection of Loan Payments and Remittances............................12
    4.3    Reports to Trustee .....................................................................12
    4.4    Indemnification .........................................................................13
    4.5    Termination ...............................................................................13

ARTICLE V ............................................................................................................13
    5.1    Collection of Money...................................................................13
    5.2    Interest Account.........................................................................14
    5.3    Bond Proceeds/Loan Repayment Account...................................14
    5.4    Redemption Account..................................................................15
    5.5    Investment of Funds ..................................................................15
    5.6    Repayment to the Company from the Accounts ...........................16

ARTICLE VI.............................................................................................................16
    6.1    Bondholder Right of Redemption...................................................16
    6.2    Demand for Redemption.................................................................16
    6.3    Selection of Bonds To Be Redeemed ............................................16
    6.4    Notice of Redemption.....................................................................16
    6.5    Deposit of Redemption Price..........................................................17
    6.6    Bonds Payable on Redemption Date ..............................................17
    6.7    Bonds Redeemed in Part.................................................................17

ARTICLE VII...........................................................................................................17
    7.1    Compliance with Laws....................................................................17
    7.2    Maintenance of Existence ...............................................................17
    7.3    Protection of Trust Estate................................................................17
    7.4    Enforcement of Servicing ...............................................................18
    7.5    Books of Account ............................................................................19
    7.6    Performance of Obligations.............................................................19
    7.7    Negative Covenants ........................................................................19
    7.8    Additional Company Covenants......................................................21
    7.9    Representations, Warranties and Covenants of the Company...........21
    7.10   Maintenance of Offices or Agency.................................................23
    7.11   Further Assurances .........................................................................24
    7.12   Use of Bond Proceeds.....................................................................24
    7.13   Statement as to Compliance ...........................................................24

ARTICLE VIII .........................................................................................................24

ARTICLE IX.............................................................................................................25
    9.1    Events of Default.............................................................................25

ARTICLE X..............................................................................................................27
    10.1   Acceleration of Maturity; Rescission and Annulment....................27
    10.2   Collection of Indebtedness and Suits for Enforcement by Trustee...................28
    10.3   Trustee May File Proofs of Claim...................................................29
    10.4   Trustee May Enforce Claims Without Possession of Bonds ...........29
    10.5   Application of Money Collected......................................................29
    10.6   Limitation on Suits .........................................................................30
    10.7   Unconditional Rights of Bondholders To Receive Principal and Interest.........31
    10.8   Restoration of Rights and Remedies ..............................................31
    10.9   Rights and Remedies Cumulative...................................................31
    10.10  Delay or Omission Not Waiver ......................................................31
    10.11  Control by Bondholders..................................................................31
    10.12  Undertaking for Costs.....................................................................32

10.13   Waiver of Past Defaults.................................................................32

**ARTICLE XI**......................................................................................32
11.1    Certain Duties and Responsibilities....................................32
11.2    Notice of Events of Default...................................................34
11.3    Certain Rights of the Trustee................................................34
11.4    Not Responsible for Issuance of Bonds...............................35
11.5    May Hold Bonds.....................................................................35
11.6    Money Held in Trust...............................................................35
11.7    Compensation and Reimbursement......................................36
11.8    Trustee Eligibility...................................................................37
11.9    Resignation and Removal; Appointment of Successor.......37
11.10   Acceptance of Appointment by Successor...........................38
11.11   Merger, Conversion, Consolidation, or Succession to Business of
        Trustee....................................................................................39
11.12   Co-trustees and Separate Trustees.....................................39
11.13   No Action Except Under Agreement or Upon Instructions.....40
11.14   Representations and Warranties of the Trustee..................40

**ARTICLE XII**....................................................................................41
12.1    Amendments Without Consent of Bondholders..................41
12.2    Amendments With Consent of Bondholders........................42
12.3    Execution of Amendments....................................................43
12.4    Effect of Amendment.............................................................43
12.5    Reference in Bonds to Amendments....................................43

**ARTICLE XIII**..................................................................................43
13.1    Notices, etc. to Parties..........................................................43
13.2    Notices and Information to Bondholders; Waiver...............44
13.3    Effect of Headings and Table of Contents...........................45
13.4    Successors and Assigns........................................................45
13.5    Severability.............................................................................45
13.6    Legal Holidays........................................................................45
13.7    Governing Law.......................................................................45
13.8    Counterparts...........................................................................45
13.9    Recording of Trust Agreement.............................................45
13.10   Inspection...............................................................................45
13.11   Satisfaction and Discharge of Indenture.............................46

THIS INDENTURE, dated effective as of December 24, 2002, between DBSI REAL ESTATE FUNDING CORPORATION, an Idaho corporation, having its principal office at 1550 South Tech Lane, Meridian, Idaho 83642 (the "Company"), TITLEONE CORPORATION, an Idaho corporation, having its principal trust office at 1101 River Street, Attention: Trust Department, Boise, Idaho 83702 (the "Trustee"),

## RECITALS OF THE COMPANY

The Company has duly authorized the creation, execution and delivery of its bonds, to be known as its 9.0% Senior Bonds (the "Bonds"), the amount and terms of which are as hereinafter provided, and to provide the terms and conditions upon which the Bonds are to be authenticated, issued, and delivered, the Company has duly authorized the execution of this Indenture.

All acts and things necessary to make the Bonds, when executed by the Company and authenticated and delivered by the Trustee as in this Indenture provided, the valid, binding, and legal obligations of the Company, and to constitute these presents as a valid indenture and agreement according to its terms, have been done and performed. The execution of this Indenture and the issue hereunder of the Bonds have in all respects been duly authorized. The Company, in the exercise of the legal right and power vested in it, executes this Indenture and proposes to make, execute, and deliver the Bonds. This indenture is not subject to the Trust Indenture Act of 1939.

NOW, THEREFORE, the Company covenants and agrees to grant, bargain, sell, assign, convey, and transfer the Trust Estate, as defined herein, in trust to the Trustee, and the parties agree that the Trust Estate is to be held by the Trustee for the equal and proportionate benefit of all present and future holders of the bonds as follows:

## ARTICLE I

## DEFINITIONS

For all purposes of this Indenture as it may from time to time be amended, supplemented or otherwise modified, except as otherwise expressly provided herein or unless the content otherwise requires, all capitalized terms used herein shall have the following meanings.

1.1    **Back-Up Servicer** shall mean DBSI Realty Corporation until a successor shall have become the Servicer pursuant to the applicable provisions of this Indenture.

1.2    **Bond Guarantee** shall mean the Guarantee executed by the Guarantor unconditionally guaranteeing payment of the principal and interest of the Bonds to the Bondholders, and allowing enforcement directly against the Guarantor without first proceeding against the Company.

1.3    **Bondholder** shall mean the registered owner of a Bond as evidenced by the Bond Register.

1.4    Bond Register and Bond Registrar shall have the respective meanings specified in Section 2.4 hereof.

1.5    Borrower shall mean the person executing a Promissory Note to evidence its obligations with respect to a Loan, and its successors and assigns.  A Borrower must be a real estate asset based entity or project in which DBSI Housing, Inc. or an affiliate is a general partner or otherwise controls the operations of the entity or project and must satisfy all Loan Requirements.

1.6    Business Day shall mean any day that is not a Saturday, Sunday, or a day on which banking institutions located in the city and state where the principal offices of each of the Trustee and the Servicer are located, are authorized or obligated by law or executive order to be closed.

1.7    Closing Date shall mean the date on which the Bonds are first executed, authenticated, and delivered.

1.8    Code shall mean the Internal Revenue Code of 1986, as amended, or any successor statute thereto, including the regulations promulgated thereunder.

1.9    Default shall mean any occurrence which is, or with notice or the lapse of time or both would become, an Event of Default.

1.10    Eligible Investments shall mean any accounts insured by the Federal Deposit Insurance Corporation or direct obligations of or obligations guaranteed by the United States of America, including obligations of any of the federal agencies set forth below of the United States of America, and including certificates evidencing ownership of serially maturing interest payments and principal payments of United States Treasury Notes or Bonds, and money market funds routinely used by the Trustee containing investments in any of the above eligible investments.  The permissible federal agencies are any of the following agencies:  Bank for Cooperatives, Federal Intermediate Credit Bank, Federal Home Loan Bank System, Export-Import Bank of the United States, Federal Land Banks, United States Postal Service, Government National Mortgage Association, Farmers Home Administration, Federal Home Loan Mortgage Association, Federal Financing Bank, or any agency or instrumentality of the United States of America which shall be established for the purposes of acquiring the obligations of any of the foregoing or otherwise providing financing therefor.

1.11    Event of Default shall have the meaning specified in Article IX of this Indenture.

1.12    GAAP shall mean generally accepted accounting principles in the United States.

1.13    Guarantor shall mean DBSI Housing, Inc., an Idaho corporation.

INDENTURE - 2
12/30/02

1.14   Interest Payment Date shall mean the fifteenth day of each month in arrears.

1.15   Loan shall mean each loan evidenced by the Promissory Note therefor and secured by the Loan Collateral to be assigned to the Trustee hereunder.

1.16   Loan Closing Date shall mean the date on which a Loan is funded.

1.17   Loan Collateral shall mean with respect to each Loan, all of the Borrower's right, title, and interest in, to, and under the Loans and Security Agreements and all related security interests the Company receives in connection with the Loans.

1.18   Loan Documents shall mean with respect to a Loan, those instruments, agreements, certificates, or other writings, now or hereafter executed and delivered by the Borrower in respect of such Loan which are required to be included in the Loan File therefor, as the same may be modified, amended, consolidated, continued, or extended from time to time.

1.19   Loan File shall mean the following instruments and documents, as applicable, in connection with each Loan:

(i)   the executed original of the Promissory Notes plus amendments thereto duly endorsed and assigned by the Company to the Trustee;

(ii)   if applicable, the executed original Mortgage and/or Security Agreement;

(iii)   if applicable, the executed original Nonencumbrance Agreement and the executed original Memorandum of Nonencumbrance;

(iv)   insurance certificates identifying the amounts of liability and property insurance and naming the Trustee as loss payee and additional insured; and the Company as mortgagee, loss payee, and additional insured;

(v)   if applicable, an assignment of the Mortgage and/or Security Agreement to the Trustee;

(vi)   a schedule calculating and summarizing the satisfaction of the Loan Requirements; and

(vii)   appraisal summary of Mortgaged Property, if available.

1.20   Loan Requirements shall mean the following:  the aggregate Loan to Value Ratio of the Loans and all underlying senior loans must not exceed 85%.

1.21   Loan to Value Ratio means the sum of the amount of a Loan and any senior debt divided by the appraised value or, absent an appraisal, the Company's estimated value of the assets and/or ownership interests of a Borrower.

1.22    **Maturity Date** shall mean the date stated on the Bond that the principal of a Bond is required to be paid to the Bondholder.

1.23    **Mortgage** shall mean any lien to secure a Loan entered into by a Borrower and/or the asset owner creating a lien on and security interest in the Mortgaged Property securing the obligations of the Borrower under the related Promissory Note.

1.24    **Mortgaged Property** shall mean all economic interests of whatever nature of the Borrower and/or the asset owner in any real estate based assets or ownership interests, subject to the lien of a Mortgage which secures a Loan.

1.25    **Nonencumbrance Agreement** shall mean the agreement executed by each Borrower whereby the Borrower shall agree not to take on any new debt senior to its Loan except for debt, which may include, without limitation, refinancing of existing loans that will not cause the Loan to Value Ratio of all Borrowers in the aggregate to exceed 85%.

1.26    **Offering** shall mean the offering of the Bonds by the Company pursuant to the terms and conditions described in the Offering Circular dated December 23, 2002.

1.27    **Promissory Note** shall mean the promissory note executed by a Borrower as evidence of the obligation of the Borrower to repay funds borrowed by the Borrower from the Company in respect of a Loan, as such Promissory Note may be amended, extended, modified, or renewed from time to time.

1.28    **Redemption Date** shall mean each anniversary date of the completion of the Offering, except for any Bond for which redemption is requested because of death of a Bondholder the Redemption Date shall be 90 days after receipt of the request.

1.29    **Related Property** shall mean, with respect to any Loan (a) all right, title, and interest in such Loan, (b) all other liens and assets subject thereto from time to time purporting to secure payment of such Loan whether pursuant to the Loan Documents related to such Loan or otherwise, (c) the assignment of all UCC financing statements or similar instruments covering any collateral securing payment of such Loan, (d) all insurance and other agreements supporting or securing payment of such Loan whether pursuant to the Loan Documents related to such Loan or otherwise, and (e) all other instruments and all rights under the Loan Documents relating to such Loan and all rights (but not obligations) relating to such Loan.

1.30    **Security Agreement** shall mean the security agreement with respect to a Loan between the related Borrower and the Company providing for the grant by such Borrower of a security interest in personal property to secure such Loan.

1.31    **Senior Bonds** shall mean the bonds issued by the Company pursuant to this Indenture.

1.32    Servicer shall mean "the Company" until a successor shall have become the Servicer pursuant to the applicable provisions of the Indenture.

1.33    Trust Estate shall mean, collectively, all right, title, interest, and estate, assigned hereunder to the trustee for the benefit of the Bondholders, whether now or hereafter acquired, in (i) the Loans and the Loan Collateral, including the present and continuing exclusive right, power, and authority to exercise each and every right, remedy, power, and authority of the Company under or in respect of the Loans and the Loan Collateral; (ii) the present and continuing exclusive right, power, and authority to make claim for, collect, receive, and receipt for any of the sums, amounts, income, revenues, issues, profits, and proceeds under, on account of or with respect to, the Loans and the Loan Collateral, including, without limitation, voluntary or involuntary, whether upon maturity, prepayment, acceleration, conversion, liquidation, casualty, or otherwise and paid from any source (including both timely and delinquent payments), (iii) all moneys and securities from time to time held by the Trustee in any account created under the terms of this Indenture and all interest, profits, proceeds, or other income derived from such moneys and securities; (iv) any and all property of every name and nature, now or hereafter transferred, mortgaged, pledged, or assigned as security or additional security for payment or performance of any obligation of the Borrowers under the Loans or any of the Loan Collateral or otherwise, and the liabilities, obligations, and indebtedness evidenced thereby or reflected therein; and (v) all income, revenues, issues, products, revisions, substitutions, replacements, profit, and proceeds of and from all of the foregoing.

1.34    Trustee shall mean TitleOne Corporation, until a successor Person shall have become the Trustee pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean such successor Person.

1.35    Trustee's Fee shall mean such fee as agreed to from time to time between the Company and the Trustee.

1.36    Trust Office shall mean the office of the Trustee located at 1101 River Street, Boise, Idaho 83702.

## ARTICLE II

## THE BONDS

2.1    Title and Terms. The aggregate principal amount of Bonds which may be authenticated and delivered under this Indenture is limited to $5,000,000 unless increased in the sole discretion of the Company, except for Bonds authenticated and delivered upon transfer of, or in exchange for, or in lieu of other Bonds pursuant to Section 2.4. The Bonds shall be known and designated as the 9.0% Senior Bonds due September 30, 2009. The Bonds shall be issuable in denominations of $1,000 with a minimum purchase of $50,000, unless otherwise approved at the sole discretion of the Company. The Bonds shall be in substantially the form attached as Exhibit 2.1. The Bonds may not be redeemed at the option of the Company prior to January 1, 2006, but may be redeemed at par at the option of a Bondholder in the manner specified in Article VI. On and after January 1, 2006, the Bonds are fully callable at par by the Company, in whole or in part, at the Company's option and demand upon thirty (30) days written

notice to the Bondholder and the Trustee in substantially the form attached as Exhibit 2.1.1. Any partial call of the Bonds will be done by the Company by random selection.

The 9.0% Senior Bonds shall bear interest at the rate of 9.0% per annum or such other rate allowed under the Offering Circular, payable monthly on the Interest Payment Dates commencing on the first Interest Payment Date.

2.2    **Execution and Authentication.** The Bonds, upon issuance pursuant hereto, shall be executed and delivered by the Company to the Trustee for authentication. Each Bond shall be executed by manual or facsimile signature on behalf of the Company by two officers of the Company. Bonds bearing the manual or facsimile signature of the individual who was, at the time when such signature was affixed, authorized to sign on behalf of the Company or the Trustee shall not be rendered invalid, notwithstanding that such individual has ceased to be so authorized prior to the authentication and delivery of such Bonds or does not hold such office at the date of such Bonds. Except for payment of interest commencing upon the date of receipt of a Bondholder's Subscription (excluding interest paid for the Bond offerings escrow period), no Bond shall be entitled to any benefit under this Indenture, or be valid for any purpose, unless there appears on such Bond a certificate of authentication executed by or on behalf of the Trustee by the manual signature of a duly authorized signatory, and such certificate upon any Bond shall be conclusive evidence, and the only evidence, that such Bond has been duly authenticated and delivered hereunder.

2.3    **Interest Computations.** All computations of interest shall be made on the basis of a 365-day year.

2.4    **Transfer Exchange and Registry.**

2.4.1    Each Bond shall be transferable only upon a register (the "Bond Register"), which shall be kept for that purpose at the office of the Person acting as registrar (the "Bond Registrar"). The Company is hereby designated as the initial Bond Registrar. Subject to the provisions of paragraph 2.4.2, the transfer of any Bond may be effected on the Bond Register by the Bondholder thereof in person or by his attorney duly authorized in writing, upon surrender thereof together with a written instrument of transfer in the form approved by the Bond Registrar duly executed by the Bondholder or his duly authorized attorney. Upon the transfer of any such Bond, the Company shall execute and the Trustee shall authenticate in the name of the transferee a new Bond or Bonds in the same amount and for the same class of Bond as the surrendered Bond.

2.4.2    At the option of the Bondholder, Bonds may be exchanged for other Bonds of any authorized denominations, and of a like aggregate amount and class, upon surrender of the Bonds to be exchanged at such office or agency of the Company designated for such purpose. Whenever any Bonds are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Bonds which the Bondholder making the exchange is entitled to receive.

2.4.3    Every Bond presented or surrendered for registration of transfer or exchange shall be accompanied by a written instrument of transfer or exchange in form

satisfactory to the Company and the Bond Registrar, duly executed by the Bondholder thereof or his attorney duly authorized in writing.

2.4.4    If requested by the Company, no sale or other transfer of any Bond (other than the initial sale of the Bonds upon the issuance thereof) shall be made to any Person unless such Person delivers to the Bond Registrar and the Company an opinion in form and substance satisfactory to the Company of counsel satisfactory to the Company and the Bond Registrar to the effect that such sale or other transfer will not violate any applicable federal or state securities laws.

2.5    **Regulations With Respect to Exchanges and Transfers.**    In all cases in which the privilege of exchanging or transferring Bonds is exercised, the Company shall notify the Trustee of such exchange or transfer, execute and the Trustee shall authenticate and deliver Bonds in accordance with the provisions of this Indenture.    The Company and/or its affiliates may purchase Bonds from any Bondholder.    For every such exchange or registration of transfer of Bonds, whether temporary or definitive, the Bond Registrar may require the payment of a sum sufficient to cover any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.    The Bond Registrar may also require the payment of up to $50 to cover the Bond Registrar's expenses arising out of the exchange or transfer.

2.6    **Mutilated, Destroyed, Stolen, or Lost Bonds.**

2.6.1    In case any Bond shall become mutilated or be destroyed, stolen or lost, the Company shall execute, and thereupon the Trustee shall authenticate and deliver, a new Bond of like amount and class, as the Bond so mutilated, destroyed, stolen or lost, in exchange and substitution for such mutilated Bond, upon surrender and cancellation of such mutilated Bond or in lieu of and substitution for the Bond destroyed, stolen or lost, upon filing with the Bond Registrar evidence satisfactory to the Company and the Trustee that such Bond has been destroyed, stolen or lost and proof of ownership thereof, and upon furnishing the Company and Trustee with such security or indemnity as may be required by them to save each of them harmless and upon payment of any tax or governmental charge the Company and Trustee may incur.    All Bonds so surrendered to the Bond Registrar shall be canceled by it and destroyed in accordance with its usual practice.    Any such new Bonds issued pursuant to this Section in substitution for Bonds alleged to be destroyed, stolen or lost shall constitute original additional interests in the Trust, whether or not the Bonds so alleged to be destroyed, stolen or lost shall be found at any time, or be enforceable by anyone, and shall be equally secured by, and entitled to equal and proportionate benefits with all other Bonds issued under this Indenture.    The Bond Registrar may also require the payment of up to $50 to cover the Bond Registrar's expenses arising out of the issuance of a substitute Bond.

2.6.2    The provisions of this Section are exclusive and shall preclude (to the extent lawful) all of the rights and remedies with respect to the payment of mutilated, lost, stolen or destroyed Bonds, including those granted by any law or statute now existing or hereafter enacted.

2.7    **Medium of Payment; Payment of Principal and Interest.**    The Bonds shall be payable, in lawful currency of the United States of America and shall be payable by check mailed by first class mail to the Person entitled thereto at such Person's address as it appears on the Bond Register on the applicable Interest Payment Date.

2.8    **Persons Deemed Owners.** The Company, the Trustee and the Bond Registrar may deem and treat the Person in whose name any Bond shall be registered upon the Bond Register as the absolute owner of such Bond, for the purposes of receiving distributions thereon, and for all other purposes, and all such distributions so made to any such Bondholder or upon his order shall be valid and effective to satisfy and discharge the liability upon such Bond to the extent of the sum or sums so paid, and neither the Company, the Trustee nor the Bond Registrar shall be affected by any notice to the contrary.

2.9    **Cancellation.** All Bonds surrendered upon payment of the principal or otherwise surrendered for registration of transfer or exchange shall be delivered to the Trustee and shall be promptly canceled by it and destroyed in accordance with the Trustee's usual practice. No Bonds shall be authenticated in lieu of or in exchange for any Bonds canceled as provided in this Section, except as expressly permitted by this Indenture. All canceled Bonds shall be delivered to the Trustee and shall be held by the Trustee in accordance with any standard retention policy adopted by the Trustee.

2.10    **Access to List of Bondholders' Names and Addresses.** The Trustee will cause the Bond Registrar to furnish or cause to be furnished to the Trustee, the Company, or any Bondholder promptly after receipt by the Bond Registrar of a request therefor from the Trustee, the Company, or such Bondholder in writing, a list, in such form as the Trustee, the Company, or such Bondholder may reasonably require, of the names and addresses of the Bondholders. Every Bondholder by receiving and holding a Bond, agrees with the Company, the Bond Registrar and the Trustee that neither the Company, the Bond Registrar nor the Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Bondholders hereunder, regardless of the source from which such information was derived.

2.11    Acts of Bondholders.

2.11.1    Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Bondholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Bondholders in person or by an agent duly appointed in writing, and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where required, to the Company. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and conclusive in favor of the Trustee and the Company if made in the manner provided in this Section.

2.11.2    The fact and date of the execution by any Bondholder of any such instrument or writing may be proven in the manner provided on the Assignment form approved by the Bond Registrar, a copy of which is attached as Exhibit 2.11.2.

2.11.3    The ownership of Bonds shall be proven by the Bond Register.

2.11.4    Any request, demand, authorization, direction, notice, consent, waiver or other act by a holder of a particular Bond shall bind every subsequent holder of such Bond issued upon the registration of transfer of such Bond or in exchange therefor or in lieu

thereof, in respect of anything done, or omitted, to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Bond.

        2.11.5    The Trustee may require such additional proof of any matter referred to in this Section as it shall deem necessary.

## ARTICLE III

## ASSIGNMENT OF THE LOANS

    3.1    **Assignment of Loans.**

        3.1.1    The Company, by execution of this Indenture, agrees to and shall on each Loan Closing Date assign, transfer and otherwise convey to the trust created by the Indenture from time to time all right, title and interest in, to and under (i) all Loans and all Related Property appurtenant thereto, (ii) all monies due or to become due with respect thereto, and (iii) all proceeds of any of the foregoing. Such transfer, assignment, set-over and conveyance will not constitute and will not be intended to result in the creation, or an assumption by the Trust, the Trustee, or any Bondholder, of any obligation of the Company, or any recourse obligation of the Company or any other person in connection with the origination or acquisition of the Promissory Notes or under any agreement or instrument relating thereto, including, without limitation, any obligation to any Borrowers or any affiliate of or other person to whom the Servicer may delegate servicing duties hereunder or insurers.

        3.1.2    On each Loan Closing Date, the Trustee shall receive (i) the original Promissory Notes, (ii) each of the other original documents contained in the Loan File relating to each Loan, (iii) a list identifying the documents contained in such Loan File, (iv) if available, a copy of an appraisal summary for the assets related to the Loan, (v) a certificate signed by an authorized officer of the Company stating that the aggregate Loan to Value Ratio of the Loans and all underlying senior loans do not exceed 85%, (vi) a certificate of an authorized officer of the Company dated as of the Loan Closing Date certifying that all right, title, and interest in each Loan has been assigned, transferred or otherwise conveyed to the trust created by this Indenture, and such assignment complies with all requirements of this Indenture. The Trustee shall within a reasonable time deliver any such documents to the Servicer upon the Servicer's written demand anytime possession of such original documents by the Servicer is necessary for the Servicer to perform its duties as Servicer; and (vii) a certificate of an authorized officer of the Company dated as of the Loan Closing Date, certifying that the Loan file related to and delivered to the Trustee with respect to such Loan contains all documents listed in and required by the definition of the "Loan File."

    3.2    **UCC Filing List.** Within 30 days of each Loan Closing Date, the Company will deliver to the Trustee a list of the Uniform Commercial Code financing statement filings (or similar instruments covering any collateral securing payment on a Loan) made by the Company pursuant to this Indenture, which list shall indicate with respect to each Loan, the name of the Borrower, the file number assigned to the Loan File, the jurisdiction where filed, and the original filing number and date.

3.3     Recorded Mortgages. Promptly upon receipt thereof but in no event later than 90 days after the Loan Closing Date, the Company will deliver to the Trustee the receipted and stamped copy of each recorded Mortgage relating to a Loan secured by a Mortgage.

3.4     Representations and Warranties. With respect to each Loan, the Company represents and warrants to the Trustee and the Bondholders, effective as of the Closing Date (other than representations and warranties which are stated as of a certain date which shall be as of such date), as follows, subject to such exceptions as the Bondholders of a majority in principal amount of the Bonds outstanding shall consent to:

3.4.1     The information pertaining to such Loan delivered to the Trustee by the Company was true and correct in all material respects at the date or dates respecting which such information was furnished.

3.4.2     All federal, state, and local laws, rules, and regulations, including, without limitation, those relating to usury, land sales, the offer and sale of securities and equal credit opportunity or disclosure, applicable to the Servicer with respect to such Loan have been complied with in all material respects.

3.4.3     For each Loan secured by a Mortgage, the Mortgage has been duly filed and recorded with all appropriate governmental authorities in all jurisdictions in which such Mortgage is required to be filed and recorded to create a valid, binding, and enforceable lien on the related Mortgaged Property and such Mortgage creates a valid, binding, and enforceable lien on the related Mortgaged Property.

3.4.4     Upon the Trustee's receipt of the Loans, the Trust shall have full legal and equitable title to each Loan, free and clear of any lien or participation or ownership interest in favor of any other Person.

3.4.5     Each Promissory Note and related Security Agreement, and Mortgage, if any, is genuine and is the legal, valid, and binding obligation of the maker thereof enforceable in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting the enforcement of creditors' rights in general and by general principles of equity, regardless of whether such enforceability shall be considered in a proceeding in equity or at law), and is not subject to any dispute, right at setoff, counterclaim or defense of any kind.

3.4.6     All parties to each Promissory Note and the related Security Agreement, and Mortgage, if any, had legal capacity to enter into such Loan and to execute and deliver such Promissory Note and related Security Agreement, and Mortgage, if any, and such Promissory Note and related Security Agreement, and Mortgage, if any, have been duly and properly executed by such parties.

3.4.7     At the time each Loan was made, the related Borrower or its vendee owned the related Loan Collateral, including good and marketable title to any Mortgaged Property (subject to exceptions contained in the title insurance policy, if any, relating to such

Mortgaged Property), free and clear of all liens other than Permitted Liens (as defined in the Security Agreement for such Loan).

      3.4.8   Each Mortgage and Security Agreement contains customary and enforceable provisions. There is no exemption under existing law available to the related Borrower or its vendee which would interfere with the mortgagee's or secured party's right to foreclose under such related Mortgage or Security Agreement, as applicable, other than which may be available under applicable bankruptcy, debt relief or homestead statutes.

      3.4.9   All applicable taxes and documentary stamp taxes were paid as to each Promissory Note and each related Mortgage and Security Agreement.

      3.4.10   Each Mortgage and Security Agreement gives the mortgagee or the secured party the right to receive and direct the application of insurance proceeds and condemnation proceeds received in respect of the related Loan, subject to the rights of any senior mortgagee or secured party.

      3.4.11   The Loan Collateral for each Loan is free of material damage and waste for which no insurance is maintained and there is no proceeding pending or, to the best knowledge of the Servicer, threatened for the total or partial condemnation or taking of any of the Loan Collateral by eminent domain.

      3.4.12   To the best knowledge of the Company, the Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state, or federal environmental law, rule, or regulation.

## ARTICLE IV

## ADMINISTRATION AND SERVICING OF LOANS

      4.1   **The Company To Act As Servicer.** The Company shall service and administer the Loans in accordance with the terms of this Indenture and shall have full power and authority, acting alone and subject only to the specific requirements and prohibitions of this Indenture, to do any and all things in connection with such servicing and administration which it may deem necessary or desirable, including without limitation, the commencement of foreclosure efforts by the Company in respect of any defaulted loan to the extent legally possible. The Company may be referred to in this Indenture as the "Servicer" in its capacity as the servicer and administrator of the Loans.

      4.1.1   Without limiting the generality of the foregoing, but subject to the provisions of this Indenture, the Servicer is hereby authorized and empowered by the Trust to execute and deliver, in the Servicer's own name, on behalf of the Trust, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Loans and with respect to the Loan Collateral. The Servicer agrees that its servicing of the Loans shall be carried out in accordance with customary and usual procedures of financial institutions which service loans similar to the Loans; provided, however,

that the Servicer shall not release or waive the right to collect the stated rate of interest on, or the unpaid balance of, any Loan.

4.1.2   The Servicer shall take all actions that are necessary or desirable to maintain continuous perfection and priority of the mortgages and security interests granted by the Borrowers or their vendees in the Loan Collateral, including, but not limited to, obtaining the execution by the Borrowers or their vendees and the recording, registering, filing, re-recording, re-registering and refiling of all mortgages, assignments, security agreements, financing statements, continuation statements or other instruments as are necessary to maintain the mortgages and security interests granted by the Borrowers or their vendees under the respective Loans.

4.2   **Collection of Loan Payments and Remittances.**

4.2.1   With all practical dispatch and in a sound and economical manner consistent in all respects with this Indenture and sound banking practices and principles, the Servicer shall use its best efforts to do all things necessary to cause the collection of all payments called for under the terms and provisions of each Loan.

4.2.2   In addition to any other customary services which the Servicer may perform and to any other express obligations of the Servicer herein, the Servicer shall perform the following servicing and collection activities:

(a)   perform standard accounting services and general record keeping services with respect to the Loans;

(b)   respond to any telephone and written inquiries of Borrowers concerning the Loans;

(c)   keep Borrowers informed of the proper place and method for making payments with respect to the Loans;

(d)   contact Borrowers to effect collection and to discourage delinquencies in the payment of Loans, doing so by any lawful means.

(e)   report tax information to Borrowers as required by law; and

(f)   take such other action as may be necessary or appropriate to carry out the duties and obligations imposed upon the Servicer pursuant to the terms of this Section.

4.3   **Reports to Trustee.**

4.3.1   Within thirty (30) days after the end of each calendar month, the Servicer shall deliver to the Trustee a certificate setting forth the following information for the prior month:

(a)   The amount and source of funds which have been deposited in the Interest Account, the Bond Proceeds/Loan Repayment Account, and the Redemption Account.

(b)     An itemization of the payment of all funds from the Interest Account, the Bond Proceeds/Loan Repayment Account, and the Redemption Account.

(c)     A report of each Loan that is or has been in default.

(d)     Any other information reasonably requested by the Trustee.

4.3.2     Within one hundred twenty (120) days after the end of each calendar year, the Servicer shall deliver to the Trustee financial statements, certified by an independent CPA for the Company and each Borrower having a Loan outstanding at year end.

4.3.3     Upon written demand by the Trustee, the Servicer shall also deliver to the Trustee any and all of the Servicer's records that the Trustee needs to perform any of the Trustee's duties under this Indenture.

4.4     **Indemnification.** The Servicer agrees to indemnify and hold the Trustee and the Bondholders harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that any of them may sustain because of the failure of the Servicer to perform its duties and service the Loans in compliance with the terms of this Indenture or the Loan Documents.

4.5     **Termination.** Upon the occurrence and continuance of an Event of Default specified in paragraphs 9.1.7, 9.1.8, or 9.1.9, all of the rights and powers of the Servicer under this Indenture shall automatically terminate. Upon the occurrence and continuance of any other Event of Default, the Trustee or the Holders of Bonds representing not less than 10% of the principal amount of the Bonds outstanding may, by notice given to the Servicer, terminate all of the rights and powers of the Servicer under this Indenture. Upon any automatic termination or the giving of such notice, all rights, powers, duties, and responsibilities of the Servicer under this Indenture shall vest in and be assumed by the Trustee or a new servicer as provided in paragraph 7.4.2. The Trustee is hereby irrevocably authorized and empowered to execute and deliver, on behalf of the Servicer, as attorney-in-fact or otherwise, all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect such vesting and assumption.

## ARTICLE V

## ACCOUNTS

5.1     **Collection of Money.** Except as otherwise expressly provided herein, the Trustee may demand payment or delivery of, and, if such demand is made, shall receive and collect, directly and without intervention or assistance from any fiscal agent or other intermediary, pursuant to the terms hereof, all money and other property payable to or receivable by the Company pursuant to this Indenture, including, without limitation, all payments due on the Loans, in accordance with the respective terms and conditions of such Loans and the Loan

Collateral. The Trustee shall hold all such money and property received by it as part of the Trust Estate and shall apply it as provided in this Indenture.

### 5.2    Interest Account.

5.2.1    On or prior to the Closing Date, the Trustee shall establish and thereafter maintain a separate trust account entitled "TitleOne Corporation, in trust for the Benefit of the holders of the DBSI Real Estate Funding Corporation Bonds--Interest Account." The Trustee and the Company shall make withdrawals from the Interest Account only as provided in this Indenture.

5.2.2    The Interest Account shall be subject to the control of the Trustee, but the Trustee shall authorize the Company to control the Interest Account so long as no Event of Default known to the Trustee has occurred and is continuing. The Company shall be authorized to withdraw monies from the Interest Account only for the purpose of making interest payments on the Bonds. As long as no Event of Default has occurred, the Company shall transmit to the Bondholders all interest payments.

5.2.3    Not later than one Business Day immediately prior to each Interest Payment Date, the Company shall deposit or cause to be deposited into the Interest Account the amount of the payments to be made on the Interest Payment Date.

5.2.4    On each Interest Payment Date, the Company shall pay from the Interest Account the interest payments on the Bonds required to be paid on such date.

5.2.5    If the Trustee assumes control of the Interest Account due to the occurrence of an Event of Default, the Trustee shall apply the monies in the account pursuant to Section 10.5.

### 5.3    Bond Proceeds/Loan Repayment Account.

5.3.1    On or prior to the Closing Date, the Trustee shall establish and thereafter maintain a separate trust account under the control and supervision of the Trustee entitled "TitleOne Corporation, in trust for the Benefit of the holders of the DBSI Real Estate Funding Corporation Bonds--Bond Proceeds/Loan Repayment Account." The Trustee and the Company shall make withdrawals from the Bond Proceeds/Loan Repayment Account only as provided in this Indenture and only for the purposes for which the bonds were issued. Moneys on deposit in the Bond Proceeds/Loan Repayment Account shall be invested in accordance with Section 5.6 hereof.

5.3.2    The Trustee shall deposit, on behalf of the Bondholders, in the Bond Proceeds/Loan Repayment Account the proceeds of the sale of the Bonds. Proceeds may include, in addition to cash, bonds of DBSI Funding Corporation endorsed (assigned) to the Company in payment or exchange for issuance of Company Bonds of the same denomination. The Trustee is authorized to accept and hold such bonds in lieu of cash proceeds and to release them to, or at the direction of, the Company on Loan Closing Dates as if they were cash equal to their denominated principal amounts. The Company shall deposit in the Bond Proceeds/Loan

INDENTURE - 14
12/30/02

Repayment Account the proceeds from the repayment of any principal on the Loans within one (1) Business Day of receipt thereof.

   5.3.3   The Trustee shall withdraw and distribute or cause to be distributed the following moneys held in the Bond Proceeds/Loan Repayment Account at the times specified, based on information provided by the Company as indicated:

      (i)   On each Loan Closing Date and upon the Trustee's receipt of the items identified in Section 3.1.2 and a Requisition Certificate in substantially the form attached as Exhibit 5.3.3, the Trustee shall withdraw from the Bond Proceeds/Loan Repayment Account an amount equal to the aggregate Loan Amounts of all Loans to be conveyed to the trust created by this Indenture on such Loan Closing Date and pay such amount to, or at the direction of, the Company.

      (ii)   If all or any portion of the proceeds of the sale of the Bonds remains in the Bond Proceeds/Loan Repayment Account six months after completion of the Offering, the Trustee shall withdraw the remaining amount from the Bond Proceeds/Loan Repayment Account upon Trustee's receipt of a requisition certificate from the Company and shall deposit such amount in the Interest Account.

   5.4   **Redemption Account.**

   5.4.1   Prior to the first Redemption Date, the Trustee shall establish and thereafter maintain a separate trust account entitled "TitleOne Corporation, in trust for the benefit of the holders of the DBSI Real Estate Funding Corporation Bonds--Redemption Account." The Trustee and the Company shall make withdrawals from the Redemption Account only as provided in this Indenture.

   5.4.2   The Redemption Account shall be subject to the control of the Trustee, but the Trustee shall authorize the Company to control the Redemption Account so long as no Event of Default known to the Trustee has occurred and is continuing. The Company shall be authorized to withdraw monies from the Redemption Account only for the purpose of making redemption payments on the Bonds.

   5.4.3   Not later than one Business Day immediately prior to each Redemption Date, the Company shall deposit or cause to be deposited into the Redemption Account the amount of the redemption payments to be made on such Redemption Date.

   5.4.4   On each Redemption Date the Company shall pay from the Redemption Account the redemption payments required to be paid on such date.

   5.4.5   If the Trustee assumes control of the Redemption Account due to the occurrence of an Event of Default, the Trustee shall apply the monies in the account pursuant to Section 10.5.

   5.5   **Investment of Funds.** Amounts on deposit in the Bond Proceeds/Loan Repayment Account and all other accounts shall, if and to the extent then permitted by law, be

invested by the Trustee at the written direction of the Company in Eligible Investments. The Trustee shall not be liable for any investment losses from investments in Eligible Investments.

   5.6 **Repayment to the Company from the Accounts.** After final payment in full of all amounts required to be distributed on all Bonds and the payment of all fees, reimbursable charges and expenses of or other amounts owed to the Company, the Servicer, the Trustee, the Bond Registrar, the Borrowers and all other amounts required to be paid hereunder, all amounts remaining in the Interest Account, the Bond Proceeds/Loan Repayment Account, and the Redemption Account shall be paid to the Company on its written demand.

## ARTICLE VI

## REDEMPTION OF BONDS

   6.1 **Bondholder Right of Redemption.** One-tenth of the original value of the Bonds shall be subject to redemption at the option and demand of a Bondholder on each Redemption Date at a redemption price of 100 percent of the principal amount of the Bonds, together with interest accrued to the date of redemption (the "Redemption Price").

   6.2 **Demand for Redemption.** For a Bond to be eligible for redemption, a Bondholder must submit written demand for redemption to the Company with a copy to the Trustee. The written demand for redemption shall be given by first-class mail, postage prepaid, and mailed so that the Company receives the demand at least 120 days (90 days in case of death of a Bondholder) prior to each Redemption Date. Each demand for redemption shall state the registered name of the Bondholder and the principal amount of the Bond to be redeemed.

   6.3 **Selection of Bonds To Be Redeemed.** If the Company receives demand for redemption on a Redemption Date of more than one-tenth of the original value of the Bonds, the Company shall honor the demands in the order of their receipt by the Company until one-tenth of the original value of the Bonds is redeemed, except that redemption of Bonds on account of death of a Bondholder shall have priority. The Company may, but shall not be obligated, to honor any or all additional demands for redemption. Such additional demands may be honored by the Company only in the order of their receipt by the Company. Demands for redemption in excess of one-tenth of the original value of the Bonds that are not honored by the Company terminate upon the Company's notice to the Bondholder that the demand was not honored. Such notice shall be given within 30 days after the Redemption Date.

   6.4 **Notice of Redemption.** Notice of redemption shall be given by first-class mail, postage prepaid, mailed not less than 120 days (90 days in case of death of a Bondholder) prior to each Redemption Date, to each Bondholder of a Bond to be redeemed at the Bondholder's address appearing in the Bond Register. Each notice of redemption shall state that on the Redemption Date the Redemption Price will become due and payable upon each redeemed Bond and that interest thereon shall cease to accrue from and after the Redemption Date. The notice shall also identify the place where the redeemed Bonds are to be surrendered for payment of the Redemption Price. A copy of each notice shall be delivered to the Trustee.

6.5     **Deposit of Redemption Price.** Prior to each Redemption Date, the Company shall deposit in the Redemption Account an amount of money sufficient to pay the Redemption Price of all the Bonds which are to be redeemed on that Redemption Date.

6.6     **Bonds Payable on Redemption Date.** The Bonds to be redeemed on the Redemption Date become due and payable at the Redemption Price, and from and after such date, unless the Company shall default in the payment of the Redemption Price, such Bonds shall cease to bear interest. The Bonds to be redeemed shall be paid by the Company at the Redemption Price upon surrender of the Bonds to the Company for redemption.

6.7     **Bonds Redeemed in Part.** Any Bond which is to be redeemed only in part shall be surrendered to the Bond Registrar and accompanied by a written instrument of transfer in form satisfactory to the Company and the Trustee duly executed by the Bondholder or his or her attorney duly authorized in writing, and the Company shall execute and the Trustee shall authenticate and deliver to the Holder of the Bond a new Bond of any authorized denominations as requested by the Bondholder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Bond so surrendered.

## ARTICLE VII

### COVENANTS OF THE COMPANY

7.1     **Compliance with Laws.** The Company shall duly satisfy all obligations to be fulfilled on its part under or in connection with the Trust Estate, will maintain in effect all qualifications required under requirements of law in order to properly acquire and convey the Loans and the Related Property appurtenant thereto, and will comply in all material respects with all requirements of law in connection with acquiring and conveying the Loans and the Related Property appurtenant thereto, the failure to comply with which would have a material adverse effect on the Trust or its interests in the Trust Estate.

7.2     **Maintenance of Existence.** Except as permitted by Section 7.7.4, the Company will keep in full effect its existence, rights and franchises as a corporation under the laws of the State of its organization and the Company or any permitted successor hereunder will obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Bonds, or any of the Loan Documents.

7.3     **Protection of Trust Estate.**

7.3.1     The Company will from time to time execute and deliver or cause to be delivered all amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)     Grant more effectively or maintain or preserve all or any portion of the Trust Estate;

(ii)   perfect, publish notice of, or protect the validity of any transfer to the Trustee of all or any portion of the Trust Estate made or to be made by this Indenture;

(iii)   preserve and defend title to the Trust Estate and the rights of the Trustee, and of the Bondholders therein, in such Trust Estate against the claims of all Persons and parties; and

(iv)   pay any and all taxes levied or assessed upon all or any part of the Trust Estate.

7.3.2   The Trustee is authorized in its own name and in behalf of the Company to execute, upon the Company's failure to do so in a timely manner, any financing statement, continuation statement or other instrument required pursuant to this Section. The Company hereby ratifies and confirms all that the Trustee may do by virtue of such authority. Such authority shall not be deemed to create a duty in the Trustee to monitor the compliance by the Company with the foregoing covenants, and the duty of the Trustee to execute any instrument required pursuant to this Section shall arise only if the Trustee has knowledge of the type described in Paragraph 11.1.5 hereof of any Default by the Company in complying with the provisions of this Section.

7.4   Enforcement of Servicing.

7.4.1   The Bondholders agree that the Trustee shall be entitled to rely on the services of the Servicer for purposes of servicing the Loans. Notwithstanding the foregoing, if an authorized officer of Trustee is notified by any of the Bondholders that action is necessary (x) for the enforcement of the Loans and the Loan Collateral, including, without limitation, the prompt payment of all principal and interest and all other amounts due thereunder, or (y) to defend, enforce, preserve and protect the rights and privileges of the Bondholders under or with respect to the Loans and the related Loan Collateral, or (z) to preserve the liens of the Loans and the Loan Collateral, the Trustee shall notify the Servicer and request that the Servicer take such action. If the Servicer fails to take such action, the Trustee is authorized to take such action in behalf of the Servicer.

7.4.2   Upon any termination of the Servicer's rights and powers, all rights, powers, duties, obligations and responsibilities of the Servicer with respect to the Loans shall vest in and be assumed by the Back-Up Servicer, and the Back-Up Servicer shall be the successor in all respects to the Servicer in its capacity as servicer with respect to the Loans. In the event the Back-Up Servicer, assumes the role of the Servicer, the Loans shall be serviced in accordance with the Back-Up Servicer's standard servicing procedures and policies, and the Back-Up Servicer shall be compensated for its services as Back-Up Servicer in accordance with the Back-Up Servicer's standard fees. The Back-Up Servicer may resign as the Back-Up Servicer by giving written notice of such resignation to the Bondholders and in such event will be released from such duties and obligations, such release not to be effective until the date a new servicer enters into a servicing agreement with the Trustee as provided below. Upon delivery of any such notice to the Bondholders or upon any failure by or inability of the Back-Up Servicer to properly perform its duties, the Trustee may appoint, or may petition a court of competent jurisdiction to appoint, a successor servicer to service the Loans. In connection with any such

appointment, the Trustee may make such arrangements for the compensation of such successor as it and such successor shall agree, and the Trustee shall enter into an agreement with such successor in behalf of the Bondholders for the servicing of such Loans, such agreement to be in form and substance satisfactory to the Trustee. If the Trustee shall ever succeed to the Servicer's duties as Servicer of the Loans as provided herein, it shall do so in its individual capacity and not in its capacity as Trustee and, accordingly, the provisions of Article XI shall be inapplicable to the Trustee in its duties as the Servicer and the servicing of the Loans. Prior to the termination of the Servicer's rights and powers pursuant to Section 5.01 of the Servicing Agreement, the Trustee and the Back-Up Servicer shall have no liability with respect to any obligation which is required to be performed by the Servicer and after succeeding to the role as Servicer, the Back-Up Servicer shall have no liability with respect to any obligation which was required to be performed by the prior Servicer or to any claim of a third party based on any alleged action or inaction of the prior Servicer.

7.5     **Books of Account.**  The Company covenants that the books of record and account of the Company shall at all times be subject to the inspection and use of the Trustee and any Bondholders and of their respective agents and attorneys.

7.6     **Performance of Obligations.**  The Company will punctually perform and observe all of its obligations and agreements under the terms of this Indenture and the Bonds. The Company shall do and perform or cause to be done and performed all acts and things required to be done or performed by or on behalf of the Company under the provisions of this Indenture and shall refrain from taking any action which would cause a default hereunder. Upon the date of delivery of any of the Bonds, all conditions, acts and things required by law and this Indenture to exist, to have happened and to have been performed precedent to and in the issuance of such Bonds shall exist, have happened and have been performed.

7.7     **Negative Covenants.**  The Company will not:

7.7.1     sell, transfer, exchange or otherwise dispose of any of the Trust Estate, except as expressly set forth in this Indenture;

7.7.2     claim any credit on, make any deduction from the principal or interest payable in respect of the Bonds (other than amounts required to be withheld from such payments under the Code or any other applicable state or federal law) or assert any claim against any present or former Bondholder by reason of the payment of any taxes levied or assessed upon any of the Trust Estate;

7.7.3     dissolve or liquidate in whole or in part except as permitted by this Indenture;

7.7.4     consolidate with or merge into any other person or convey, transfer or lease substantially all of its assets as an entirety to any Person unless the Person formed by such consolidation or into which the Company has been merged or the Person which acquires substantially all of the assets of the Company as an entirety is an organization organized under the laws of a state in the United States, can lawfully perform the obligations of the Company hereunder and executes and delivers to the Trustee an agreement, in form and substance reasonably satisfactory to the Trustee, which contains an assumption by such successor entity of

the due and punctual performance and observance of representations, warranties, covenants and obligations to be made, performed or observed by the Company under this Indenture;

7.7.5    (i) permit the validity or effectiveness of this Indenture to be impaired or permit the lien of this Indenture with respect to the Trust Estate to be subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations under this Indenture, except as may be expressly permitted hereby, (ii) permit any lien, pledge, charge, adverse claim, security interest, mortgage or other encumbrance (other than liens created under or pursuant to this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof except as permitted hereby, or (iii) permit the lien of this Indenture not to constitute a perfected security interest in the Trust Estate except as permitted hereby;

7.7.6.    change its name, identity or structure in any manner which might make any financing or continuation statement filed hereunder misleading within the meaning of Section 9-402(7) of the UCC (or any other then applicable provision of the UCC) unless the Company shall have given the Trustee at least 90 days' prior written notice thereof and shall have taken all action 60 days prior to making such change (or made arrangements to take such action substantially simultaneously with such change if it is impossible to take such action in advance) necessary or advisable to amend such financing statement or continuation statement so that it is not misleading;

7.7.7    change its chief executive office or change the location of its principal records concerning the Loans and the Loan Collateral from the locations specified in Section 13.1, unless it has given the Trustee at least 60 days' prior written notice of its intention to do so and has taken such action as is necessary or advisable to cause the interest of the Trustee in the Loans and the Loan Collateral to continue to be perfected with the priority required by this Indenture;

7.7.8    change its principal executive office and any other office at which it maintains records relating to the Loans and the Loan Collateral within the United States of America;

7.7.9    extend, amend or otherwise modify the terms of any Promissory Note, or amend, modify or waive any term or condition of any Loan Documents related thereto in any manner which would have a material adverse effect on the interests of the Bondholders; or

7.7.10    create, incur, assume or suffer to exist any indebtedness (including, without limitation, any guaranty) or expense (whether or not accounted for as a liability) except (i) indebtedness hereunder, or any agreements, contracts or instruments which directly relate thereto, (ii) indebtedness or other expense to its professional advisors and its counsel, (iii) where that Person to whom such indebtedness or expense will be owing has delivered to the Company an undertaking that it will not institute against, or join any other Person in instituting against, the Company any bankruptcy, reorganization, arrangement, insolvency or liquidation proceeding, or other proceeding under any federal or state bankruptcy or similar law, for one year and a day after the final distribution has been made on the Bonds; and (iv) other indebtedness and expenses, not

exceeding $10,000 at any one time outstanding, on account of incidentals or services supplied or furnished to the Company.

### 7.8    Additional Company Covenants.

7.8.1    The Company shall hold for the account of the Trust (to the extent of its interest therein) any document evidencing or securing a Loan or the Loan Collateral, other than instruments (as such term is used in the UCC), if any, that shall have been delivered to the Trustee with the conveyance of the Loan to the Trust.  Such holding by the Company shall be deemed to be the holding thereof by the Trustee for purposes of perfecting the Trust's rights therein as provided in the UCC.

7.8.2    The Company will promptly pay and discharge all taxes, assessments, levies and other governmental charges imposed on it which may adversely affect any of the Loans or the Loan Collateral or the Trust's rights with respect thereto, unless such tax, assessment, levy or other government charge is being contested in good faith and for which appropriate reserves are being maintained.

7.8.3    The Company shall, from time to time, execute and deliver to the Trustee any instruments, financing or continuation statements or other writings reasonably necessary or desirable to maintain the perfection or priority of the Trustee's ownership or security interest in the Trust Estate under the UCC or other applicable law.  The Company shall, from time to time, execute and deliver or cause to be delivered to the Borrowers any bills, statements and letters or other writing necessary to carry out the terms and provisions of this Indenture and to facilitate the collection of the amounts due under the Promissory Notes.

7.8.4    The Company shall duly and punctually pay or cause to be paid, but in strict conformity with the terms of the Bonds and this Indenture, the principal of every Bond and the interest thereon at the dates and places and in the manner mentioned in the Bonds according to the true intent and meaning thereof.

### 7.9    Representations, Warranties and Covenants of the Company.  The Company warrants and covenants that:

7.9.1    The Company is, and at all times during the term of this Indenture will be, a corporation duly organized and validly existing in good standing under the laws of the State of Idaho, and the Company is, and at all times during the term of this Indenture will be, duly qualified to do business as a foreign corporation and in good standing under the laws of each jurisdiction where the character of its property, the nature of its business or the performance of its obligations under this Indenture makes such qualification necessary except where the failure to be so qualified will not have a material adverse effect on the business of the Company or its ability to perform its obligations under this Indenture or any other documents or transactions contemplated hereunder or the validity or enforceability of the Loans.

7.9.2    The Company holds, and at all times during the term of this Indenture will hold, all  licenses, certificates, franchises and permits from all governmental authorities necessary for the conduct of its business and has received no notice of proceedings relating to the revocation of any such license, certificate, franchise or permit, which singly or in

the aggregate, if the subject of an unfavorable decision, ruling or finding, would materially and adversely affect its ability to perform its obligations under this Indenture or any other documents or transactions contemplated hereunder or the validity or enforceability of the Loans.

7.9.3    The Company has, and at all times during the term of this Indenture will have, all requisite power and authority to own its properties, to conduct its business, to execute and deliver this Indenture and all documents and transactions contemplated hereunder, to perform all of its obligations under this Indenture and any other documents or transactions contemplated hereunder, and to cause the Bonds to be issued. The Company has all requisite power and authority to acquire, own, sell and convey to the Trustee the Trust Estate.

7.9.4    This Indenture, the Bonds and all other documents and instruments required or contemplated hereby to be executed and delivered by the Company have been duly authorized, executed and delivered by the Company and, assuming the due execution and delivery by the other party or parties hereto and thereto, if any, constitute legal, valid and binding agreements enforceable against the Company in accordance with their respective terms subject, as to the enforcement of remedies, to bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforceability of creditors' rights generally applicable in the event of the bankruptcy, insolvency or reorganization of the Company and to general principles of equity.

7.9.5    The execution, delivery and performance by the Company of this Indenture, the Bonds and any other documents and transactions in connection herewith to which the Company is a party do not and will not (i) violate any of the provisions of the organizational documents or by-laws of the Company; (ii) violate any provision of any law, governmental rule or regulation currently in effect applicable to the Company or its properties or by which the Company or its properties may be bound or affected, (iii) violate any judgment, decree, writ, injunction, award, determination or order currently in effect applicable to the Company or its properties or by which the Company or its properties are bound or affected, (iv) conflict with, or result in a breach of, or constitute a default under, any of the provisions of any indenture, mortgage, deed of trust, contract or other instrument to which the Company is a party or by which it is bound or (v) result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, mortgage, deed of trust, contract or other instrument.

7.9.6    The Company is not in default under any agreement, contract, instrument or indenture to which the Company is a party or by which it or its properties is or are bound, or with respect to any order of any court, administrative agency, arbitrator or governmental body which would have a material adverse effect on the transactions contemplated hereunder; and no event has occurred which with notice or lapse of time or both would constitute such a default with respect to any such agreement, contract, instrument or indenture, or with respect to any such order of any court, administrative agency, arbitrator or governmental body.

7.9.7    There is no pending or, to the best of the Company's knowledge, threatened action, suit, proceeding or investigation before any court, administrative agency, arbitrator or governmental body against or affecting the Company which, if decided adversely, would (a) materially and adversely affect (i) the condition (financial or otherwise), business or operations of the Company, (ii) the ability of the Company to perform its obligations under, or the validity or enforceability of, this Indenture or any other documents or transactions

contemplated under this Indenture, (iii) any Loan Collateral or title of any Borrower to any Loan Collateral or (iv) the Servicer's ability to foreclose or otherwise enforce the Loans.

7.9.8   No document, certificate or report furnished or required to be furnished by the Company pursuant to this Indenture contains or will contain when furnished any untrue statement of a material fact or fails or will fail to state a material fact necessary in order to make the statements contained therein not misleading.

7.9.9   Other than liens created under or pursuant to this Indenture, the Trust Estate is and will be free and clear of any pledge, charge or encumbrance thereon or with respect thereto created by or through the Company, and all action on the part of the Company to that end has been duly and validly taken.

7.9.10   The Company shall at all times, to the extent permitted by law, defend, preserve and protect the Trust Estate and all the rights of Bondholders under this Indenture against all claims and demands of all Persons whomsoever claiming by, through, or under the Company.

7.9.11   The Company is not and shall not become an "investment company" or under the "control" of an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended (or any successor statute) and is and shall be exempt from the requirements of the Investment Company Act of 1940, as amended, and the rules and regulations thereunder (taking into account not only the general definition of the term "investment company," but also any available exceptions to such general definition).

7.9.12   The Company shall make its books and records and the Bond Register available to the Bondholders and the Trustee, at their own expense, for purposes of inspection and copying and shall, at the Company's expense, furnish, or cause to be furnished, to the Trustee or any Bondholder, promptly after receipt by the Company of a request therefor from the Trustee or such Bondholder in writing, a list of the primary contacts, names and addresses of the Bondholders as of the Record Date immediately preceding such request. Within ninety (90) days after the end of each of the Company's fiscal years, the Company shall furnish to the Trustee a copy of the Company's financial statements for the previous fiscal year.

7.10   **Maintenance of Offices or Agency.** The Company will maintain an office or agency, which may be changed in the discretion of the Company, within the United States of America at which Bonds may be presented or surrendered for payment, Bonds may be surrendered for registration of transfer or exchange and notices and demands to or upon the Company in respect of the Bonds and this Indenture may be served. The Company hereby initially appoints the Trustee at its corporate trust office such office or agency. The Company will give prompt written notice to the Trustee of the location, and of any change in the location, of any such office or agency. If at any time the Company shall fail to maintain any such office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the corporate trust office, and the Company hereby appoints the Trustee at its corporate trust office its agent to receive all such presentations, surrenders, notices and demands.

7.11   **Further Assurances.** The Company will execute and deliver, or cause to be executed and delivered, all such additional instruments and do, or cause to be done, all such additional actions as (i) may be necessary, proper or consistent herewith, to carry out the purposes of this Indenture and to make subject to the lien hereof any property intended so to be subject, (ii) may be necessary or proper to transfer to any successor trustee the estate, powers, instruments and funds held in trust hereunder and to confirm the lien of this Indenture for the benefit of the Bondholders, or (iii) the Trustee may reasonably request for any of the foregoing purposes. The Company hereby authorizes the Trustee to execute and file all such financing statements, continuation statements and other documents as the Trustee may deem necessary or advisable to perfect or maintain the perfection of the assignment of the Trust Estate hereunder. However, it is the Company's responsibility to execute and file all such statements.

7.12   **Use of Bond Proceeds.** The Company will use the proceeds of Bonds only in accordance with the provisions of this Indenture. All Bond proceeds shall be used only to make Loans.

7.13   **Statement as to Compliance.** The Company will deliver to the Trustee, within 45 days after the end of each quarter fiscal year, a written statement signed by the President or a Vice President and by the Treasurer, an Assistant Treasurer, the Controller or an Assistant Controller of the Company, stating, as to each signer thereof, that

(1)   a review of the activities of the Company during such quarter and of performance under this Indenture has been made under his supervision; and

(2)   to the best of his knowledge, based on such review, the Company has fulfilled all its obligations under this Indenture throughout such quarter, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to him and the nature and status thereof.

## ARTICLE VIII

## PRECONDITIONS

On the Closing Date and prior to the Trustee's authentication of the Bonds, the Trustee shall receive the following:

8.1   A copy of an officially certified document, dated not more than 30 days prior to the Closing Date, evidencing the due organization and good standing of the Company and the Guarantor;

8.2   A certificate of an authorized officer of the Company dated as of the Closing Date, certifying that (a) the issuance of the Bonds will not result in any breach of any of the terms, conditions or provisions of, or constitute a default under any indenture, mortgage, deed of trust or other agreement or instrument to which the Company is a party or by which it or its property is bound or any order of any court or administrative agency entered in any proceeding to which the Company is a party or by which it or its property may be bound or may be subject; (b) other than liens created under or pursuant to this Indenture, the Trust Estate is free and clear of

INDENTURE - 24
12/30/02

any pledge, charge or encumbrance thereon or with respect thereto created by or through the Company, and all action on the part of the Company to that end has been duly and validly taken; and (c) all conditions precedent provided in this Indenture relating to the issuance, authentication and delivery of the Bonds applied for have been complied with;

8.3   A fully executed copy of this Indenture and the Bond Guarantee;

8.4   A certificate of an authorized officer of the Company, dated as of the Closing Date, that the Company has filed or caused to be filed UCC-1 financing statements in the appropriate recording offices executed by the Company, as debtor, and naming the Trustee, as secured party, and the Trust Estate as collateral, and UCC financing statements in each jurisdiction where the Company is named as a secured party with respect to the Trust Estate and the Trustee is named as assignee;

8.5   The Articles of Incorporation of the Company;

8.6   A copy of the By-Laws of the Company, certified by a Secretary or an Assistant Secretary of the Company; and

8.7   Resolutions of the Board of Directors of the Company and the Guarantor authorizing the execution, delivery and performance of the Indenture and the Bond Guarantee, respectively, and the issuance of the Bonds, duly certified by the Secretary or an Assistant Secretary of the Company or the Guarantor, as the case may be.

## ARTICLE IX

## DEFAULT

9.1   **Events of Default.** Any of the following acts or occurrences shall constitute an Event of Default by the Company under this Indenture:

9.1.1   Default in the payment of the principal of any Bond when due at its maturity or upon mandatory redemption at the option of the Bondholder, or

9.1.2   Default in the payment of any interest upon any Bond when it becomes due and payable, and continuance of such default for a period of 10 days.

9.1.3   Any failure by the Company to remit payments in respect of the Loans to the Trustee in accordance with any provision hereof; or

9.1.4   The Company or the Guarantor shall default in the due performance and observance of any provision of this Indenture or the Bond Guarantee and such default shall have continued for a period of 10 days after it has obtained knowledge of, or has been notified by the Trustee or any Bondholder of, such default; or

9.1.5   Any representation, warranty, or statement of the Company made in this Indenture or the Bond Guarantee or any certificate, report, or other writing delivered pursuant

hereto shall prove to be incorrect in any material respect as of the time when the same shall have been made; or

9.1.6   The Company makes an assignment for the benefit of creditors or is generally not paying its debts as such debts become due; or

9.1.7   Any decree or order for relief in respect of the Company is entered under any bankruptcy, reorganization, compromise, arrangement, insolvency, readjustment of debt, dissolution, liquidation, or similar law, whether now or hereafter in effect (herein called the "Bankruptcy Law"), of any jurisdiction; or

9.1.8   The Company petitions or applies to any tribunal for, or consents to, the appointment of, or taking possession by, a trustee, receiver, custodian, liquidator, or similar official of the Company, or of any substantial part of the assets of the Company, or commences a voluntary case under the Bankruptcy Law of the United States or any proceedings relating to the Servicer, under the Bankruptcy Law of any other jurisdiction; or

9.1.9   Any such petition or application is filed, or any such proceedings are commenced, against the Company and the Company by any act indicates its approval thereof, consent thereto, or acquiescence therein, or any order, judgment, or decree is entered appointing any such trustee, receiver, custodian, liquidator, or similar official, or approving the petition in any such proceedings and such order, judgment, or decree remains unstayed and in effect for more than 30 days; or

9.1.10   Any order, judgment, or decree is entered in any proceedings against the Company decreeing the dissolution of the Company and such order, judgment, or decree remains unstayed and in effect for more than 30 days; or

9.1.11   A final judgment in an amount in excess of $100,000 is rendered against the Company, and within 30 days after entry thereof, such judgment is not discharged or execution thereof stayed pending appeal, or within 30 days after the expiration of any such stay, such judgment is not discharged; or

9.1.12   The Company's or the Guarantor's dissolution, liquidation, winding up of its affairs or sale, conveyance, or other disposition of all or substantially all of its assets; or

## ARTICLE X

## RIGHTS AND REMEDIES

10.1    Acceleration of Maturity; Rescission and Annulment.

10.1.1    If an Event of Default occurs and is continuing, then, and in every such case, the Trustee or the Holders of not less than 10 percent in principal amount of the Bonds outstanding may declare the principal and accrued interest of all the Bonds to be due and payable immediately, by a notice to the Company, and to the Trustee if given by Bondholders, and upon any such declaration such principal and all accrued interest shall become immediately due and payable.

10.1.2    At any time after such a declaration of acceleration has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of a majority in principal amount of the Bonds outstanding, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if

(1)    the Company has paid or deposited with the Trustee a sum sufficient to pay

(A)    all overdue installments of interest on all Bonds,

(B)    the principal of any Bonds which have become due otherwise than by such declaration of acceleration and interest thereon at the rate borne by the Bonds,

(C)    to the extent that payment of such interest is lawful, interest upon overdue installments of interest at the rate borne by the Bonds, and

(D)    all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements, and advances of the Trustee, its agents and counsel; and

(2)    all Events of Default, other than a non-payment of the principal of Bonds which have become due solely by such acceleration, have been cured or waived.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

10.2    Collection of Indebtedness and Suits for Enforcement by Trustee.

10.2.1    The Company covenants that if

(1)    default is made in the payment of the principal of any Bond at the Maturity thereof, or

(2)    default is made in the payment of any installment of interest on any Bond when such interest becomes due and payable and such default continues for a period of 10 days, the Company will, upon demand of the Trustee, pay to it, for the benefit of the Holders of such Bonds, the whole amount then due and payable on such Bonds for principal and interest, with interest upon the overdue principal and, to the extent that payment of such interest on interest shall be legally enforceable, upon overdue installments of interest, at the rate borne by the Bonds; and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements, and advances of the Trustee, its agents and counsel.

10.2.2    If the Company fails to pay such amount forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, may institute a judicial proceeding for the collection of the sums so due and unpaid, and may prosecute such proceeding to judgment or final decree, and may enforce the same against the Company or any other obligor upon the Bonds and collect the moneys adjudged or decreed to be payable in the manner provided by law out of the property of the Company or any other obligor upon the Bonds, wherever situated.

10.2.3    If an Event of Default occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Bondholders by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

10.2.4    If an Event of Default occurs and is continuing, the Trustee may in its discretion make demand pursuant to Section 5.1 for payment and delivery of all money and other property payable to or receivable by the Company, terminate all rights and powers of the Servicer pursuant to Section 4.5 and assume the rights and powers of the Servicer pursuant to Section 7.4, or proceed directly and at once, without notice, against the Guarantor to collect and recover the whole amount then due and payable on the Bonds.

10.2.5    If an Event of Default occurs and is continuing, the Trustee may exercise and enforce all rights and remedies of the Company under and pursuant to all Loan Documents, including, without limitation, the right to enforce and collect loan payments due thereunder, enforce any assignment of leases and rents, and foreclose any of the Mortgages which are in default. In such event, the Trustee shall also have the right to exercise and enforce such other rights and remedies available to a secured party under and pursuant to applicable law, including, without limitation, the Uniform Commercial Code in effect in the State of Idaho. If any notice of the Trustee's intended disposition of any of the Loans or other collateral securing the Bonds is required, such notice shall be deemed reasonable if given at least ten days prior to such disposition.

### 10.3    Trustee May File Proofs of Claim.

10.3.1    In case of the pendency of any receivership, conservatorship, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition, or other judicial proceeding relative to the Company or relative to any other obligor upon the Bonds or the property of the Company or of such other obligor or their creditors, irrespective of whether the principal of the Bonds shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand on the Company for the payment of overdue principal or interest, the Trustee shall be entitled and empowered, by intervention in such proceeding or otherwise,

(1)    to file and prove a claim for the whole amount of principal and interest owing and unpaid in respect of the Bonds and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee, including any claim for the reasonable compensation, expenses, disbursements, and advances of the Trustee, its agents and counsel, and of the Bondholders allowed in such judicial proceeding, and

(2)    to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any receiver, assignee, trustee, liquidator, sequestrator, or other similar official, in any such judicial proceeding is hereby authorized by each Bondholder to make such payments to the Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the Bondholders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements, and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee.

10.3.2    Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Bondholder any plan of reorganization, arrangement, adjustment, or composition affecting the Bonds or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Bondholder in any such proceeding.

### 10.4    Trustee May Enforce Claims Without Possession of Bonds.    All rights of action and claims under this Indenture or the Bonds may be prosecuted and enforced by the Trustee without the possession of any of the Bonds or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of any express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements, and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Bonds in respect of which such judgment has been recovered.

### 10.5    Application of Money Collected.    Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such money on account of principal or interest, upon presentation of the Bonds and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

10.5.1     FIRST:  To the payment of all amounts due the Trustee under this Indenture;

10.5.2     SECOND:  If the principal of the Bonds shall not have become due, to the payment of interest on the Bonds, in the order of the maturity of the installments of such interest, with interest, to the extent that such interest has been collected by the Trustee, upon the overdue installments of interest at the rate borne by the Bonds, such payments to be made ratably to the Persons entitled thereto, without discrimination or preference;

10.5.3     THIRD:  In case the principal of the Bonds shall have become due, by declaration or otherwise, to the payment of the whole amount then owing and unpaid upon the Bonds for principal and interest, with interest on the overdue principal and, to the extent that such interest has been collected by the Trustee, upon overdue installments of interest at the rate borne by the Bonds; and in case such moneys shall be insufficient to pay in full the whole amount so due and unpaid upon the Bonds, then to the payment of such principal and interest, without preference of priority of principal over interest, or of interest over principal, or of any installment of interest over any other installment of interest, or of any Bond over any other Bond, ratably to the aggregate of such principal and accrued and unpaid interest; and

10.5.4  FOURTH:  The remainder, if any, shall be paid to the Company, its successors or assigns, or to whomsoever may be lawfully entitled to receive the same, or as a court of competent jurisdiction may direct.

10.6     **Limitation on Suits.**  No Holder of any Bond shall have any right to institute any proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless

10.6.1     Such Holder has previously given written notice to the Trustee of a continuing Event of Default;

10.6.2     The Holders of not less than 10 percent in aggregate principal amount of the Outstanding Bonds shall have made a written request to the Trustee to institute proceedings in respect of such Event of Default in its own name as Trustee hereunder;

10.6.3     Such Holder or Holders have offered to the Trustee reasonable indemnity against the costs, expenses, and liabilities to be incurred in compliance with such request;

10.6.4     The Trustee for 30 days after its receipt of such notice, request, and offer of indemnity has failed to institute any such proceeding; and

10.6.5     No direction inconsistent with such written request has been given to the Trustee during such 30-day period by the Holders of a majority in principal amount of the Outstanding Bonds;

it being understood and intended that no one or more Holders of Bonds shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb, or prejudice the rights of any other Holders of Bonds, or to obtain or to seek to obtain

priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all the Holders of Bonds.

**10.7    Unconditional Rights of Bondholders To Receive Principal and Interest.** Notwithstanding any other provision in this Indenture, the holder of any Bond (other than a Bond which has been canceled) shall have an absolute and unconditional right to receive payment of the principal of and interest on such Bond on or after the respective payment dates expressed in such Bond, and such right shall not be impaired without the consent of such holder.

**10.8    Restoration of Rights and Remedies.** If the Trustee or any Bondholder has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Bondholder, then and in every such case the Company, the Trustee and the Bondholders shall, subject to any determination in such proceedings, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Trustee and the Bondholders shall continue as though no such proceeding had been instituted.

**10.9    Rights and Remedies Cumulative.** No right or remedy herein conferred upon or reserved to the Trustee or to the Bondholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise; the assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

**10.10    Delay or Omission Not Waiver.** No delay or omission of the Trustee or any holder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every such right and remedy given by this Article VII or by law to the Trustee or to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Bondholders, as the case may be.

**10.11    Control by Bondholders.** The holders of at least a majority of the principal amount of the Bonds outstanding shall have the right to cause the institution of and direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or to direct the Trustee in writing with respect to its exercise of any right, remedy, trust, or power conferred on the Trustee hereunder; provided that:

10.11.1    such direction shall not be in conflict with any rule of law or with this Indenture;

10.11.2    the Trustee shall have been provided with indemnity reasonably satisfactory to it;

10.11.3    subject to 10.11.4 below, any direction to the Trustee to undertake a sale of the Trust Estate shall be by the holders of Bonds representing not less than a majority of

the principal amount of the Bonds outstanding; and

10.11.4    the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction; provided, however, that, subject to Section 11.1 hereof, the Trustee need not take any action which it determines is reasonably likely to involve it in liability.

10.12    **Undertaking for Costs.** The Company and the Trustee agree, and each Bondholder by such Bondholder's acceptance of a Bond shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture undertaken by the Trustee at the direction of the Bondholders, or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 10.12 shall not apply to any suit instituted by the Trustee, to any suit instituted by any Bondholder, or group of Bondholders, holding in the aggregate at least a majority of the principal amount of the Bonds outstanding, or to any suit instituted by any Bondholder for the enforcement of the payment of principal or interest on any Bond, which principal or interest is due and payable.

10.13    **Waiver of Past Defaults.** The holders of not less than a majority in principal amount of the outstanding Bonds may on behalf of the holders of all the Bonds waive any past default hereunder and its consequences, except a default

(1)    in the payment of the principal of or interest on any Bond, or

(2)    in respect of a covenant or provision hereof which under Article XII cannot be modified or amended without the consent of the holder of each outstanding Bond affected.

Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

## ARTICLE XI

## THE TRUSTEE

11.1    **Certain Duties and Responsibilities.**

11.1.1    Except during the continuance of an Event of Default:

(i)    the duties of the Trustee shall be determined solely by the express provisions of this Indenture and the Trustee will perform only those duties and no

others; the Trustee undertakes to perform such duties and only such duties as are specifically set forth or provided for in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)    in the absence of bad faith on its part, the Trustee may conclusively rely upon certificates or opinions furnished to the Trustee provided such opinions and certificates conform to the requirements of this Indenture, including investment instructions received pursuant to Section 5.6 hereof, as to the truth of the statements and the correctness of the opinions expressed therein.

11.1.2    If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it or provided for by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs, but the Trustee shall be liable only for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct.

11.1.3    No provision of this Indenture, including, without limitation, Section 11.7, shall be construed to relieve the Trustee from liability for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct, except that:

(i)    the Trustee shall not be liable for any error of judgment made in good faith by an Authorized Officer of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(ii)    the Trustee shall not be personally liable with respect to any action taken or omitted to be taken by it in good faith in accordance with any direction received by the Trustee, in accordance with the terms of this Indenture from the holders of Bonds representing at least a majority (or such other percentage as may be required by the terms hereof) of the principal amount of the Bonds outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

11.1.4    Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to the Trustee shall be subject to the provisions of this Section.

11.1.5    For all purposes under this Indenture, except for Default in payment of principal and interest under Section 9.1.1 and 9.1.2, the Trustee shall not be deemed to have notice or knowledge of any Default or Event of Default or a default or event of default under any document included in the Trust Estate, unless an authorized officer of the Trustee has actual knowledge thereof or unless an authorized officer of the Trustee has received written notice thereof at the Trust Office and such notice references the Bonds generally, the Company, the Trust Estate or this Indenture. For purposes of determining the Trustee's responsibility and liability hereunder, whenever reference is made in this Indenture to a Default or an Event of Default, such reference shall be construed to refer only to the Default or the Event of Default of which the Trustee is deemed to have notice pursuant to this paragraph.

INDENTURE - 33
12/30/02

11.1.6    No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there shall be reasonable ground for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it, the Trustee having the right to require an indemnity pursuant to Paragraph 11.1.7 below.

11.1.7    The Trustee shall not be under any obligation to institute any suit, or to take any remedial proceeding under this Indenture, or to enter any appearance in or in any way defend any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created, the performance of any of its duties hereunder or in the enforcement of any rights and powers hereunder until it shall be indemnified to its reasonable satisfaction against any and all costs and expenses, outlays and counsel fees and other reasonable disbursements and against all liability, except liability which is adjudicated to have resulted from its own negligence or willful misconduct, in connection with any action so taken.

11.1.8    The Trustee shall keep and maintain proper books of record and accounts relating to the Bonds in which full, true and correct entries will be made of all dealings or transactions of the Trustee in relation to the Bonds, the Accounts and the Company. The Trustee shall keep such books of record and account available for inspection by the Company or by any Holder of Bonds during reasonable business hours and under reasonable circumstances. For purposes of preparing such books and records, the Trustee is authorized to retain outside accountants at the expense of the Company.

11.2    Notice of Events of Default.  Within 30 days after the occurrence of any Default or Event of Default known to the Trustee, the Trustee shall transmit by mail to all Bondholders notice of such Event of Default known to the Trustee. Notwithstanding the foregoing provision of this Section, for Events of Default other than a default in the payment of principal or interest on any Bond, the Trustee may withhold notice to the Bondholders if the Trustee in good faith determines that the withholding of such notice is in the interests of the Bondholders.

11.3    Certain Rights of the Trustee.  Except as otherwise expressly provided in Section 11.1 hereof:

11.3.1    in the absence of bad faith the Trustee conclusively may rely on and shall be protected in acting or refraining from acting when doing so, in each case in accordance with any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, note or other paper or document conforming to the requirements of this Indenture believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties, and the Trustee need not investigate any facts stated therein;

11.3.2    before the Trustee acts or refrains from acting, it may require an officer's bond or opinion of counsel, or both, and the Trustee shall not be liable for any action it takes, suffers or omits in reliance on either thereof; the Trustee may consult with counsel, and the

written advice of such counsel or any opinion of counsel shall be full and complete authorization and protection in respect of the legality of any action taken, suffered or omitted by the Trustee hereunder in good faith and in reliance thereon;

    11.3.3  the Trustee shall not be under any obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any of the Bondholders pursuant to this Indenture, unless such Bondholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

    11.3.4  the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder;

    11.3.5  the Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within the rights or powers conferred upon it by this Indenture; and

    11.3.6  to the extent a person other than the Trustee is appointed by the Company to act as Bond Registrar, such person shall be an agent of the Company, and the Trustee shall not be liable or responsible by reason of any act or omission of any such person.

    11.4  **Not Responsible for Issuance of Bonds.** The Trustee shall not be responsible for and makes no representation as to the validity or sufficiency of this Indenture, the Bonds or the Trust Estate. The Trustee shall not be accountable for the Company's issue of the Bonds or application of the proceeds thereof or for any money paid to the Company or upon the Company's direction under any of the provisions of this Indenture. The Trustee is not responsible for the use or application of any moneys by any agent other than the Trustee, including, without limitation, the Servicer. The Trustee shall not be responsible for any statement in the Bonds or in any other document prepared, executed or delivered in connection with the sale and issuance of the Bonds or the execution and delivery of this Indenture except its certificate of authentication.

    11.5  **May Hold Bonds.** The Trustee, in its individual or any other capacity, may become the owner or pledgee of Bonds and may otherwise deal with the Company with the same rights it would have if it were not Trustee.

    11.6  **Money Held in Trust.** Money held by the Trustee in trust hereunder will be held by the Trustee in its trust capacity and not in any other capacity, in a segregated account in accordance with this Indenture. The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed in writing with the Company and except to the extent of income or other gain on Eligible Investments which are obligations of the Trustee and income or other gain actually received by the Trustee on Eligible Investments which are obligations of a third party.

**11.7    Compensation and Reimbursement.**

11.7.1    The Company agrees:

(1)    subject to any separate written agreement with the Trustee, to pay the Trustee such fees as agreed to from time to time between the Company and the Trustee;

(2)    to reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee or Back-up Servicer (but only in connection with its assumption of its role as Servicer) in accordance with any provision of this Indenture (including the reasonable compensation and the reasonable expenses and disbursements of its agents and counsel); and

(3)    to indemnify the Trustee and the agents and counsel of the Trustee for, and to hold them harmless against, any loss, liability or expense incurred without negligence or bad faith on their part, arising out of or in connection with (a) the acceptance or administration of this trust (other than taxes, penalties or other liabilities arising in connection with the Trustee's failure to withhold from payments with respect to the Bonds amounts required to be withheld under the Internal Revenue Code, or the Trustee's withholding from such payments amounts not required or permitted to be withheld under the Internal Revenue Code); or (b) loss of life, injury to persons, property, or business or damage to natural resources in connection with the activities of a Borrower, its predecessors in interest, third parties who have trespassed on a Borrower's property, or parties in a contractual relationship with a Borrower, or any of them, whether or not occasioned wholly or in part by any condition, accident, or event caused by any act or omission of the Company or the Trustee, which: (i) arises out of the actual, alleged, or threatened discharge, dispersal, release, storage, treatment, generation, disposal or escape of pollutants or other toxic or hazardous substances, including any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste (including materials to be recycled, reconditioned or reclaimed); or (ii) actually or allegedly arises out of the use, specification, or inclusion of any product, material or process containing chemicals, the failure to detect the existence or proportion of chemicals in the soil, air, surface water or groundwater, or the performance or failure to perform the abatement of any pollution source or the replacement or removal of any soil, water, surface water, or groundwater containing chemicals, including the reasonable costs and expenses, including reasonable attorneys' fees, of defending themselves against any claim or liability in connection with the exercise or performance of any of their powers or duties hereunder, or any alleged securities law violation provided that:

(i)    with respect to any such claim, the Trustee shall have given the Company written notice thereof promptly after the Trustee shall have knowledge thereof; Provided, however, that the failure of the Trustee to so notify the Company shall not relieve the Company of its obligations pursuant to this subparagraph;

(ii)    the Company shall assume the defense of any such claim, provided that if the Company shall not have employed counsel reasonably satisfactory to the Trustee to direct the defense of such claim within a reasonable time after such notice of the

claim pursuant to paragraph (i) above, the Trustee shall have the right to direct the defense of such claim;

(iii)   the Trustee shall have the right to employ separate counsel with respect to any claim and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Trustee unless the payment of such counsel has been specifically authorized by the Company; provided further, however, that if the Trustee shall assume the defense of any claim as a result of the Company's failure to assume the defense of such claim as described in paragraph (ii) above, the Company shall pay the reasonable fees and expenses of Trustee's counsel in connection with the defense of such claim; and

(iv)   notwithstanding anything to the contrary in this paragraph, the Company shall not be liable for settlement of any such claim by the Trustee entered into without the prior consent of the Company.

Nothing in this Section shall be construed to limit the exercise by the Trustee of any right or remedy permitted under this Indenture or otherwise in the event of the Company's failure to pay any sums due the Trustee pursuant to this Section.

11.7.2   The provisions of this Section shall govern all other provisions of this Indenture regarding the payment of the fees and expenses of the Trustee.

11.7.3   To secure the Company's payment obligations under this Section, the Trustee shall have a lien prior to the Bondholders on the Trust Estate, except with respect to such moneys as are held in trust to make distributions on particular Bonds. Such lien shall survive the satisfaction and discharge of this Indenture.

11.7.4   The payment obligations of the Company under this Section shall survive the satisfaction and discharge of this Indenture.

11.8   **Trustee Eligibility.** The Trustee shall be such independent entity as reasonably determined by DBSI Real Estate Funding Corporation.

11.9   **Resignation and Removal; Appointment of Successor.**

11.9.1   No resignation or removal of the Trustee and no appointment of a successor trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor trustee under Section 11.10 hereof.

11.9.2   The Trustee or any trustee hereafter appointed may resign at any time by giving written notice of resignation to the Company, and by mailing notice of resignation by first-class mail, postage prepaid, to all of the Bondholders, at their addresses appearing on the Bond Register. Upon receiving notice of resignation of the Trustee, the Company shall promptly appoint a successor trustee, by written instrument, in duplicate, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee or trustees. The Trustee shall serve as trustee hereunder until a successor trustee shall have been appointed and shall have accepted such appointment; provided, however, that if no successor trustee shall have been appointed and have accepted appointment within 30 days after the giving of such notice of

resignation, the resigning Trustee may, or any Bondholder may on behalf of himself or herself and all others similarly situated, petition any such court of competent jurisdiction for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

11.9.3    If at any time:

(1)    the Trustee shall cease to be eligible under Section 11.8 hereof and shall fail to resign; or

(2)    (A) the Trustee shall become incapable of acting, (B) a court having jurisdiction in the premises in respect of the Trustee in an involuntary case under the federal bankruptcy laws, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, shall have entered a decree or order granting relief or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) for the Trustee or for any substantial part of the Trustee's property, or ordering the winding-up or liquidation of the Trustee's affairs, provided any such decree or order shall have continued unstayed and in effect for a period of 60 consecutive days or (C) the Trustee commences a voluntary case under the federal bankruptcy laws, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, or consents to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) for the Trustee or for any substantial part of the Trustee's property, or makes any assignment for the benefit of creditors or fails generally to pay its debts as such debts become due or takes any corporate action in furtherance of any of the foregoing;

then, in any such case the Company hereby agrees with the Bondholders that it shall remove the Trustee by written order and appoint a successor trustee in the manner set forth in Section 11.9.2.

11.9.4    The Company shall give notice of the resignation or removal of the Trustee to the Bondholders in accordance with Section 13.2 hereof. Each notice shall include the name of the successor trustee and the address of its trust division or department. The notice required by this paragraph may be given at the same time as the notice required by Section 11.10.

11.9.5    The Trustee, upon its resignation or removal, shall be entitled to all fees and reimbursement for all expenses incurred by the Trustee until the day of resignation or removal.

11.10    **Acceptance of Appointment by Successor.**  Every successor trustee appointed hereunder shall execute, acknowledge and deliver to the Company and its predecessor trustee an instrument accepting such appointment hereunder. Upon the delivery and execution of the required instruments, the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, need or conveyance, shall become vested with all the rights, powers, trusts, duties and obligations of its predecessor hereunder. Notwithstanding the foregoing, on request of the Company or the successor trustee, such predecessor trustee shall, upon payment of its then unpaid charges due and payable under Section 11.7 hereof, execute and deliver an instrument transferring to such successor trustee all of the rights, powers and trusts of the predecessor trustee and shall duly assign, transfer and deliver to such successor trustee all property and money held by such predecessor trustee

INDENTURE - 38
12/30/02

hereunder. Upon request of any such successor trustee, the Company shall execute any and all instruments providing for more full and certain vesting in and confirming to such successor trustee all such rights, powers and trusts of this Indenture.

11.10.1    Upon acceptance of appointment by a successor trustee as provided in this Section the Company shall notify the Holders in accordance with Section 13.2 hereof. If the Company fails to so notify the Holders, the successor trustee shall cause such notice to be mailed at the expense of the Company.

11.10.2    Any successor trustee must, at the time of such successor's acceptance of its appointment, meet the eligibility requirements set forth in this Article, and otherwise exercise the rights, remedies, powers and authority of the predecessor trustee with respect to the Trust Estate.

11.10.3    Notwithstanding the replacement of the Trustee or any successor trustee pursuant to the provisions of this Indenture, the Company's obligations set forth in Section 11.7 hereof shall survive such replacement and continue for the benefit of the resigning or replaced trustee.

11.11    **Merger, Conversion, Consolidation, or Succession to Business of Trustee.** Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all of the corporate trust business of the Trustee shall be the successor of the Trustee hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto; provided such corporation shall be otherwise qualified and eligible under this Article. In case any Bonds have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may deliver the Bonds so authenticated with the same effect as if such successor trustee had itself authenticated such Bonds.

11.12    **Co-trustees and Separate Trustees.** At any time or times, for the purpose of meeting the legal requirements of any jurisdiction in which any of a Trust Estate may at any time be located, the Company and the Trustee shall have power to appoint, and, upon the written request of the Trustee or of the Holders of Bonds representing at least 25% of the principal amount of the Bonds outstanding, the Company shall for such purpose join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint, one or more persons approved by the Trustee either to act as co-trustee, jointly with the Trustee, of all or any part of such Trust Estate, or to act as separate trustee of any such property, in either case with such powers as may be provided in the instrument of appointment, and to vest in such person or persons in the capacity aforesaid, any property, title, right or power deemed necessary or desirable, subject to the other provisions of this Section. If the Company does not join in such appointment within 15 days after the receipt by it of a request so to do, or in case an Event of Default has occurred and is continuing, the Trustee alone shall have power to make such appointment.

11.12.1    Should any written instrument from the Company be required by any co-trustee or separate trustee so appointed for more fully confirming to such co-trustee or

separate trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Company.

11.12.2   Every co-trustee or separate trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following terms, namely:

(1)   The Bonds shall be authenticated and delivered and all rights, powers, duties and obligations hereunder in respect of the custody of securities, cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised, solely by the Trustee.

(2)   The rights, powers, duties and obligations conferred or imposed upon the Trustee shall be conferred or imposed upon and exercised or performed by the Trustee hereby or by the Trustee and such co-trustee or separate trustee jointly, as shall be provided in the instrument appointing such co-trustee or separate trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by such co-trustee or separate trustee.

(3)   The Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Company evidenced by a resolution of the Board of Directors of the Company, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section. Upon the written request of the Trustee, the Company shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to effectuate such resignation or removal. A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this Section.

(4)   No co-trustee or separate trustee hereunder shall be personally liable by reason of any act or omission of the Trustee, or any other such trustee hereunder nor shall the Trustee be liable by reason of any act or omission of a co-trustee if such co-trustee was appointed with due care.

(5)   Any act of Bondholders delivered to the Trustee shall be deemed to have been delivered to each such co-trustee and separate trustee.

11.13   **No Action Except Under Agreement or Upon Instructions.** The Trustee agrees that it will not manage, control, use, sell, dispose of or otherwise deal with the Trust Estate except (a) in accordance with the powers granted to, or the authority conferred upon, it in or pursuant to this Indenture, or (b) in accordance with the express terms of this Indenture or instructions received from the Holders of Bonds representing at least a majority of the principal amount of the Bonds outstanding at the time such instructions are given.

11.14   **Representations and Warranties of the Trustee.** The Trustee hereby represents, warrants and covenants to the Company and the Bondholders that as of the date of execution of this Indenture:

INDENTURE - 40
12/30/02

11.14.1    It is an independent third party entity duly formed and validly existing under the laws of the jurisdiction of its organization,

11.14.2    The execution and delivery of this Indenture by it and its performance and compliance with the terms hereof will not violate its articles of association or by-laws or constitute a default (or an event which, with notice or lapse of time, or both, would constitute default) under, or result in the breach of, any material contract, agreement or other instrument to which it is a party or which may be applicable to it or any of its assets;

11.14.3    This Indenture has been duly authorized, executed and delivered by it and, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid, legal and binding obligation of such party, enforceable against it in accordance with the term hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

11.14.4    It is not in default with respect to any order or decree of any court or any order, regulation, or demand of any federal, state, municipal, or governmental agency, which default might have consequences that would materially and adversely affect its condition (financial or other) or operations or its properties or might have consequences that would affect its performance hereunder; and

11.14.5    No litigation is pending or, to the best of its knowledge, threatened against it which would prohibit its entering into this Indenture or performing its obligations under this Indenture.

11.14.6    No consent, approval, authorization, or order of, registration or filing with, or notice to, any governmental authority or court or any other Person is required under the laws of the United States of America or the laws of the state of Idaho for the execution, delivery, and Performance by it of, or compliance by it with, this Indenture, or the Bonds, or the consummation by the Company of any other transaction contemplated hereby or by the Bonds.

## ARTICLE XII

## AMENDMENTS

12.1    **Amendments Without Consent of Bondholders.** Without the consent of, or notice to, the Holders of any Bonds, the Company and the Trustee may amend this Indenture at any time and from time to time for any of the following purposes:

12.1.1    to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property; or

12.1.2    to evidence the succession, in compliance with the provisions of Section 6.7.4 hereof, of another person to the Company, and the assumption by any such successor of the covenants of the Company contained herein and in the Bonds; or

12.1.3    to add to the covenants of the Company or the Trustee, for the benefit of the Bondholders, or to surrender any right or power herein conferred upon the Company; or

12.1.4    to convey, transfer, assign, mortgage or pledge any property to the Trustee to constitute additional Trust Estate; or

12.1.5    to cure any ambiguity, correct or supplement any provision herein which may be defective or inconsistent with any other provisions herein or amend any other provisions with respect to matters or questions arising under this Indenture, provided that such action shall not adversely affect the interests of the Holders; or

12.1.6    to evidence and provide for the acceptance of appointment hereunder by a successor trustee or bond registrar, pursuant to the requirements of Sections 11.9 or 11.10 hereof.

The Trustee is hereby authorized to join in the execution of any such amendment and to make any further appropriate agreements and stipulations which may be therein contained or required.

12.2    **Amendments With Consent of Bondholders.** With the prior written consent of the Holders of at least a majority of the principal amount of the Bonds outstanding delivered to the Company and the Trustee, the Company and the Trustee may amend this Indenture for the purpose of adding to, changing or eliminating any of the provisions of this Indenture or of modifying the rights of Holders under this Indenture; provided, however, that no such amendment shall, without the prior written consent of the Holder of each Bond:

12.2.1    Change the stated maturity of the principal of, of any installment of interest on, any Bond, or reduce the principal amount thereof or the interest thereon or change any place of payment where, or the coin or currency in which, any Bond or the interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof, or, in the case of redemption, on or after the Redemption Date; or

12.2.2    Change the percentage of the principal amount of the Bonds outstanding which is required to authorize any amendment or waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture; or

12.2.3    Permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of a Trust Estate or terminate the lien of this Indenture on any property at any time subject hereto or deprive any Holder of the security afforded by the lien of this Indenture except as expressly otherwise permitted hereby; or

INDENTURE - 42
12/30/02

12.2.4    Modify any of the provisions of this Section, except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture cannot be modified or waived without the consent of each Bondholder affected thereby; or

12.2.5    Modify any of the provisions of this Indenture in such a manner as to affect the calculation of the amount of any distribution due on any Bond on any Interest Payment Date (including the calculation of any of the individual components of such calculation).

Prior to the execution of any amendment pursuant to this Section, the Company shall send to the Trustee and each Bondholder a copy of the proposed amendment. No consent of the Bondholders received pursuant to this Section shall be effective until the requisite percentage of Bondholders shall have consented to the proposed amendment in writing.

12.3    **Execution of Amendments.** In executing, or permitting the modifications of the trusts created by this Indenture by this Article, the Trustee and the Bondholders shall be entitled to receive, and (subject to Sections 11.1 and 11.3 hereof) shall be fully protected in relying upon, an opinion of counsel to the Company stating that the execution of such amendment is authorized or permitted by this Indenture and that all conditions precedent thereto have been complied with. The Trustee may, but shall not be obligated to, enter into any such amendment which affects the Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

12.4    **Effect of Amendment.** Upon the execution of any amendment of this Indenture pursuant to the provisions hereof, this Indenture shall be, and be deemed to be, modified and amended in accordance therewith with respect to each Bond and the respective rights, limitations, obligations, duties, liabilities and immunities under this Indenture of the Trustee, the Company and the Bondholders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such amendment shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

12.5    **Reference in Bonds to Amendments.** Bonds authenticated and delivered after the execution of any amendment of this Indenture pursuant to this Article may, and, if required by the Company shall, bear a notation in form approved by the Trustee as to any matter provided for in such amendment. If the Company shall so require, new Bonds so modified as to conform, in the opinion of the Trustee and the Company, to any such amendment may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for outstanding Bonds.

## ARTICLE XIII

## MISCELLANEOUS

13.1    **Notices, etc. to Parties.** All notices, requests or other communications desired or required to be given under this Indenture shall be in writing and shall be sent by

(a) certified or registered mail, return receipt requested, postage prepaid, (b) national prepaid overnight delivery service, (c) telecopy or other facsimile transmission (following with hard copies to be sent by mail or national prepaid overnight delivery service) or (d) personal delivery with receipt acknowledged in writing, as follows:

13.1.1   If to the Trustee:

TitleOne Corporation, 1101 River Street, Attention: Trust Department, Boise, Idaho 83702.

13.1.2   If to the Company:

DBSI Real Estate Funding Corporation, 1550 South Tech Lane, Meridian, Idaho 83642.

13.1.3   If to any Bondholder:

At the address of such Bondholder as it appears in the related Bond Register. Any change of address shown on a Bond Register shall, after the date of such change, be effective to change the address for such Bondholder hereunder.

13.1.4   Notices required under this Indenture to be sent to the Bondholders shall in addition be sent to the Company.

13.1.5   All notices shall be deemed given when actually received or refused by the party to whom the same is directed (except to the extent sent by certified or registered mail, return receipt requested, postage prepaid, in which event such notice shall be deemed given three days after the date of mailing). Each party may designate a change of address or supplemental addressee(s) by notice to the other parties, given at least 15 days before such change of address is to become effective. Any notice received from any Bondholder by any party listed in this Section shall be promptly transmitted by such party to all other parties listed in this Section.

13.2   **Notices and Information to Bondholders; Waiver.** Upon the request of any Bondholder, the Trustee shall deliver promptly to such Bondholder such information with respect to the Loan Collateral as such Bondholder shall request.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Bondholders shall be filed with the Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Bondholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Trustee shall be deemed to be a sufficient giving of such notice.

13.3    **Effect of Headings and Table of Contents.** The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

13.4    **Successors and Assigns.** All covenants and agreements in this Indenture by the Company shall bind its successors and assigns, whether so expressed or not.

13.5    **Severability.** In case any provision in this Indenture or in the Bonds shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

13.6    **Legal Holidays.** If any date on which a distribution on the Bonds is proposed to be made, or any date on which mailing of notices by the Trustee to any Person is required pursuant to any provision of this Indenture, shall not be a Business Day, then (notwithstanding any other provision of the Bonds or this Indenture) payment or mailing of such notice need not be made on such date, but may be made or mailed on the next succeeding Business Day with the same force and effect, and in the case of payments, any interest which accrues on any Bond for the period from and after the date on which such payment was due to the next succeeding Business Day shall be paid on the next Interest Payment Date.

13.7    **Governing Law.** This Indenture and each Bond shall be construed in accordance with and governed by the laws of the State of Idaho, without regard to the conflict-of-law provisions thereof.

13.8    **Counterparts.** This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

13.9    **Recording of Trust Agreement.** If this Indenture is subject to recording in any appropriate public recording office, such recording is to be effected by the Company at its expense.

13.10    **Inspection.** The Company agrees that, on reasonable prior notice, during the Company's normal business hours it will permit any representative of the Trustee or any Bondholder to examine all the books of account, records, reports and other papers of the Company, to make copies and extracts therefrom, to cause such books to be audited by Independent Accountants selected by the Trustee or any Bondholder, and to discuss the Company's affairs, finances and accounts with the Company's officers, employees and Independent accountants all at such reasonable times and as often as may be reasonably requested. The Trustee and any Bondholder shall hold, and shall cause their respective representatives to hold, in confidence all such information except to the extent disclosure may be required by law and except to the extent that the Trustee or any Bondholder, in their respective sole judgment, may determine that such disclosure is consistent with their obligations hereunder. Any expenses incident to the exercise by any Bondholder of any right under this Section shall be borne by the Bondholder.

13.11    Satisfaction and Discharge of Indenture.

This Indenture shall cease to be of further effect (except as to any surviving rights of transfer or exchange of Bonds herein expressly provided for), and the Trustee, on demand of and at the expense of the Company, shall execute the proper instrument acknowledging satisfaction and discharge of this Indenture, when

(1)    either

(A)    all Bonds theretofore authenticated and delivered, other than Bonds which have been destroyed, lost, or stolen and which have been replaced or paid as provided in Section 2.6 have been delivered to the Trustee canceled or for cancellation; or

(B)    all such Bonds not theretofore delivered to the Trustee canceled or for cancellation

(i)    have become due and payable, or

(ii)    will become due and payable at their stated maturity within one year,

and the Company, in the case of (B)(i) or (ii) above, has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount in cash or U.S. Treasury obligations sufficient to pay and discharge the entire indebtedness on such Bonds not theretofore delivered to the Trustee canceled or for cancellation, for principal and interest to the date of such deposit, in the case of Bonds which have become due and payable, or to the stated maturity as the case may be:

(2)    the Company has paid or caused to be paid all other sums payable hereunder by the Company; and

(3)    the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Company to the Trustee under Section 11.7 shall survive.

INDENTURE - 46
12/30/02

IN WITNESS WHEREOF, the Company and the Trustee have caused this
Indenture to be duly executed by their duly authorized officers all as of the day and year first
above written.

TITLEONE CORPORATION,
as Trustee

By_____

Name___Bo DAVIES_____

Title___VICE-PRESIDENT___

DBSI REAL ESTATE FUNDING CORPORATION

By_____

Douglas L. Swenson, President