Philip H. Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
**GORDON LAW OFFICES**
623 West Hays Street
Boise, ID  83702
Tel: 208-345-7100
Fax: (208) 345-0050
pgordon@gordonlawoffices.com

 Geoffrey Bestor
**The Bestor Law Firm**
4204 Maple Terrace
Chevy Chase, MD 20815
Tel: 240-463-8503
Fax: 866-626-3131
gbesq@bestorlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL FIRKINS, RENA FIRKINS, HIGHLAND SERVICES CO., INC. PROFIT SHARING PLAN, DOUGLAS R. CIRCLE AS TRUSTEE, DOUGLAS RICHARD CIRCLE AND JAN ALISON CIRCLE 1984 FAMILY TRUST,<br><br>        Plaintiffs,<br><br>v.<br><br>TITLEONE CORPORATION,<br><br>        Defendant. | Case No. 1:10-cv-00110-BLW<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS |

1

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

      A.  Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

      B.  Defendant's Motion to Dismiss Plaintiffs' Contract Claims Ignores Clear
          Provisions in the Indenture Imposing Duties on Defendant. . . . . . . . . . . . . . . . 9

      C.  Defendant Had Fiduciary Duties Under the Indenture During Any Period an
          Event of Default Had Occurred and Was Continuing . . . . . . . . . . . . . . . . . . . .11

      D.  Plaintiffs' Claims for Gross Negligence and Negligence Are Not Barred by the
          Economic Loss Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

      E.  Defendant's Class Certification Arguments Are Entirely Premature and
          Borderline Frivolous to Boot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

      F.  Defendant's Motion for Summary Judgment Should Be Stricken. . . . . . . . . . .18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

# TABLE OF AUTHORITIES

Cases

*Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 12, 632 N.Y.S.2d 520, 527 (1st Dept. 1995) ................................................................................................................12

*Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 301, 108 P.3d 996, 1001 (2005) ......................14

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ......................................8

*Dukes v. Wal-Mart Stores, Inc.*,  - F3d -, 2010 WL Cases 1644259 (9th Cir. 2010) ...................16

*Embury v. King*, 191 F.Supp.2d 1071, 1076 (N.D.Cal.2001) ........................................................8

*Idaho Ry. Supply, Inc. v. Upadhya*, 2010 WL 996477 (D. Idaho 2010).........................................8

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609 (2007) .............15, 16

*LNC Investments, Inc. v. First Fidelity Bank, NA*, 935 F. Supp. 1333 (S.D.N.Y. 1996)..............12

*Millenkamp v. Davisco Foods Int'l, Inc.* 391 F. Supp.2d 872 (D. Idaho 2005)...........................15

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986) ......................................................8

*Truckstop.net, LLC v. Sprint Communications Co.*, 537 F. Supp. 2d 1126 (D. Idaho) ...............14

*Williams v. gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)............................................8

Statutes and Rules

Fed. R. Civ. P. 23(a) ................................................................................................................16

Fed. R. Civ. P. 23(b) ................................................................................................................16

Fed. R. Civ. P. 23(b) Adv. Comm. Note................................................................................17

Other Authorities

7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) ................................................................................................15

## INTRODUCTION

This is a class action on behalf of all investors in bonds issued pursuant to an indenture dated December 24, 2002 (the "Indenture," incorporated into the Complaint as Exhibit A thereto). The 600 bondholders lost over $42 million when the issuer of bonds turned out to be part of a massive Ponzi scheme. Defendant TitleOne was the indenture trustee for the bond issue. Its duty was to make sure the issuer spent the bond proceeds in accordance with the requirements of the Indenture. Defendant did not do so; indeed, it repeatedly disbursed bond proceeds pursuant to documentation that was fraudulent on its face, and woefully deficient even without regard to its fraudulent contents. Hence this lawsuit.

The Indenture is a contract between Plaintiff bondholders, Defendant TitleOne Corporation ("Defendant" or "TitleOne"), and DBSI Real Estate Funding Corporation ("DBSI" or "REFCO").[1] The Indenture was explicitly incorporated in the bond certificates issued to Plaintiffs. Complaint ("Comp.") ¶ 1. Under the provisions of the Indenture, and as set forth in the Offering Circulars associated with the bond issue, DBSI sought to raise money for use in the commercial and residential real estate investment activities of related DBSI entities. Comp. ¶¶ 1-2. Defendant was the designated Trustee under the Indenture. Id. ¶ 1. DBSI raised over $42 million in bond proceeds under the Indenture. Id.. ¶¶ 5, 16, 19.

The proceeds of the bond issue were deposited in an account controlled by Defendant. Ind. § 5.3.1. Bond proceeds were furnished to DBSI-related entities in the form of loans. Comp. ¶ 2. The Indenture required substantial documentation of each loan transaction. Comp. ¶ 4. Upon receipt of the documentation specified in the Indenture, Defendant was authorized to disburse bond proceeds to the DBSI real estate investment entity. Ind. § 5.3.3.

---

[1] DBSI Real Estate Funding Corporation was created for the specific purpose of raising money by issuing bonds and was one of many DBSI-related companies. DBSI Real Estate Funding Corporation is referred to as DBSI in this memorandum except when necessary to distinguish it from other DBSI entities.

Transaction documentation was critical because, under the Indenture, all of the right, title, and interest of the DBSI real estate investment entity was assigned to a trust created by the Indenture of which the bondholders were the beneficiaries and Defendant the trustee. Comp. ¶¶ 20-23. The trust estate included not only the loans, but also the security in the property obtained by the DBSI investing entity. Comp. ¶ 21. The bondholders thus had not just a promise from the issuer, but actual security in the underlying property. At least, they were supposed to.

Plaintiffs allege in this action that Defendant, as Trustee under the Indenture, failed to ensure that it received from DBSI all documentation underlying the loan transactions before disbursing bond proceeds, as it was required to do under the terms of the Indenture. Additionally, Plaintiffs allege that Defendant failed to detect patent fraud evident from the face of the documentation that it did receive. Timely detection of the fraud would have averted the hemorrhaging of millions of dollars from the pockets of the bondholders. The Complaint asserts that, in failing to satisfy its affirmative duties as trustee, Defendant breached the contractual provisions of the Indenture, breached its fiduciary duty to Plaintiff bondholders, and committed gross and ordinary negligence, resulting in a loss to Plaintiff bondholders of in excess of $42 million.

Defendant has filed the instant motion seeking dismissal of this action, summary judgment, and non-certification of the Plaintiff class, arguing that Defendant was free of any fiduciary duty to the Plaintiff bondholders; had no contractual duty to review documentation of the loan transactions; and had no responsibility for detecting patent fraud in connection with the loan documentation that it did receive. As this Memorandum demonstrates, Defendant's motions fail on multiple, independent grounds.

First, Defendant's motion to dismiss does not address the vast majority of the allegations of the Complaint, much less assume the truth thereof. Plaintiffs have alleged multiple

contractual breaches; Defendant's response is to deny, as a factual matter, that it breached the contract even where it deigns to address the allegations of the Complaint at all. Second, Defendant claims that Indenture Trustees do not have fiduciary duties as a matter of law when the most that the case law permits Defendant to argue is that sometimes they do and sometimes they do not, depending on the facts. Until the facts are elucidated, Defendant's motion is, at best, premature.

Third, Defendant's motion for summary judgment is deficient in multiple ways. As discussed in Plaintiffs' motion to strike previously filed in this case, the summary judgment motion omits any statement of undisputed material facts, violating the requirements of both Fed. R. Civ. P. 56 and Local Civil Rule 7.1. Moreover, in its memorandum, Defendant disclaims any reliance on anything outside of the Complaint and documents cited in the Complaint. Why Defendant included summary judgment in its motion papers is thus a mystery.

Fourth, Defendant asks the Court to deny class certification. There has yet to be an answer in this case, much less discovery, a procedural posture Defendant does not even acknowledge. In addition to being entirely premature, Defendant's arguments for denying class certification border on the frivolous, based as they are on Defendant's assertion that DBSI's fraud, or the supposed possibility that class members could sue their brokers in addition to Defendant, are bases for denying class certification. These arguments would be without legal merit even on a fully-developed record.

On these grounds, and as described more specifically below, the Court should deny Defendant's motions and permit the parties to develop evidence upon which the trier of fact and the Court can evaluate and rule on the merits of this case.

## STATEMENT OF FACTS

1. The Bonds Issue and the Indenture

DBSI Real Estate Funding Corporation ("DBSI") issued bonds, eventually totaling over $42 million, for the purpose of raising funds for investment in real estate projects by DBSI-related entities. Comp. ¶¶ 1, 16. DBSI made loans to the individual DBSI investment entities pursuant to loan applications. The Indenture authorized Defendant to disburse bond proceeds for the particular investment only after DBSI provided all of the extensive documentation of the transaction required by the Indenture. Comp. ¶¶ 2, 23; Ind. § 5.3.3.

2. Control of Bond Proceeds

The bond proceeds were to be deposited in a "separate trust account under the control and supervision of the Trustee." Ind. § 5.3.1. The Indenture permitted Defendant and DBSI to "make withdrawals from [the bond proceeds account] only as provided in this Indenture and only for the purposes for which the bonds were issued." Ind. § 5.3.1. Ind. § 5.3.3 further provided:

> On each Loan Closing Date and upon the Trustee's receipt of the items identified in Section 3.1.2 and a Requisition Certificate in substantially the form attached as Exhibit 5.3.3, the Trustee shall withdraw from the Bond Proceeds/Loan Repayment Account an amount equal to the aggregate Loan Amounts of all Loans to be conveyed to the trust created by this Indenture on such Loan Closing Date and pay such amount to, or at the direction of, the Company.

3. Permitted Uses of Bond Proceeds

The bond proceeds were to be used for real estate investment purposes. This is obvious from the Indenture's documentation requirements. The Offering Circular made it explicit: "The proceeds of the Loans made to DBSI Group controlled Entities will only be used to acquire, develop and/or finance real estate properties prior to their sale, resale, financing and/or syndication." Offering Circular ("Off. Circ.") p. 24 n.3.

4.  The Trust and the Trust Estate

The Indenture created a trust, appointed Defendant as the trustee of that trust, and provided that DBSI

> "covenants and agrees to grant, bargain, sell, assign, convey, and transfer the Trust Estate, as defined herein, in trust to the Trustee, and the parties agree that the Trust Estate is to be held by the Trustee for the equal and proportionate benefit of all present and future holders of the bonds. . . .

Ind. Recitals p. 6; Comp. ¶ 20. The Trust Estate consisted of "all right, title, interest, and estate, assigned hereunder to the trustee for the benefit of the Bondholders, whether now or hereafter acquired" in the loans, the loan collateral, the exclusive right to received proceeds from the loans and the collateral, and all property of whatever kind pledged as security for the loans. Ind. § 1.33; Comp. ¶ 21. The Trust Estate also included all funds kept in any account created under this Indenture (Ind. 1.33), including the account holding the bond proceeds. See Ind. 5.3.1. The Indenture required assignment to the trust estate for each loan on the loan closing date as follows:

> [DBSI], by execution of this Indenture, agrees to and shall on each Loan Closing Date assign, transfer and otherwise convey to the trust created by the Indenture from time to time all right, title and interest in, to and under (i) all Loans and all Related Property appurtenant thereto, (ii) all monies due or to become due with respect thereto, and (iii) all proceeds of any of the foregoing.

Ind. § 3.1.1.; Comp. ¶ 22.

5.  Defendant's Duties

For each loan, Indenture § 3.1.2. required Defendant to receive the following documents:

- The original promissory notes;

- The originals of all other documents in the loan file, which included, among other things:

    i.  "the executed original Mortgage and/or Security Agreement;"

    ii.  the Nonencumbrance Agreement and Memorandum of Nonencumbrance:

      iii.  insurance certificates identifying the amounts of liability and naming the Trustee as loss payee and additional insured;

- A copy of the appraisal, if available;

- Certificates from DBSI officers that (1) the loan to value ratio of all loans did not exceed 85 percent; (2) all right, title, and interest in the loans had been transferred to the trust; (3) the assignment to the trust complied with all requirements of the indenture; and (4) the documents provided to Defendant included all documents included in the definition of the "Loan File."

Ind. § 3.1.2.; Comp. ¶ 23.  As noted above, Defendant was authorized to disburse funds from the account holding the bond proceeds only AFTER receipt of the items required in Section 3.1.2. See Ind. § 5.3.3.

DBSI was also required to provide a list of UCC-1 financing statements, or similar documents covering collateral covered by the loan, within 30 days of the loan closing date.  Ind. § 3.2; Comp. ¶ 24.  No later than 90 days after the loan closing date, DBSI "will deliver to the Trustee the receipted and stamped copy of each recorded Mortgage relating to a Loan secured by a Mortgage."  Ind. § 3.3.

5. Events of Default By DBSI

Under the provisions of the Indenture, the following events, among others, constituted an Event of Default by DBSI under the Indenture:

Any representation, warranty, or statement of the Company made in this indenture or the Bond Guarantee or any certificate, report, or other writing delivered pursuant hereto shall prove to be incorrect in any material respect as of the time when the same shall have been made.

Ind. §§ 9.1and 9.1.5.  Among the representations and warranties made by DBSI were the following:

- It would not "sell, transfer, exchange or otherwise dispose of any of the Trust Estate, except as expressly set forth in this Indenture."  Ind. § 7.7.1;

- It would not "[e]xtend, amend or otherwise modify the terms of any Promissory Note, or amend, modify or waive any term or condition of any Loan Documents related thereto in

any manner which would have a material adverse effect on the interests of the Bondholders." Ind. § 7.7.9;

- "No document, certificate or report furnished or required to be furnished by the Company pursuant to this Indenture contains or will contain when furnished any untrue statement of a material fact or fails or will fail to state a material fact necessary in order to make the statements contained therein not misleading." Ind. § 7.9.8.

The Indenture required Defendant to notify the bondholders of all Events of Default within 30 days of any such event known to it. Ind. § 11.2. The Indenture required Defendant to have had actual knowledge (or written notice) of the Event of Default before being deemed to have known of the event. Ind. § 11.1.4.

6.   <u>DBSI Fraudulent and Inadequate Documentation</u>[2]

The documentation provided by DBSI to Defendant was deficient in multiple instances. For example, many loan applications had no identification of the property attached. Comp. ¶¶ 51, 57. For many transactions, the paragraph in the loan documents identifying senior loans was left blank. Comp. ¶¶ 45, 57. Documentation for many transactions did not contain documents included in the definition of "Loan File" which the indenture required to be included. Comp. ¶¶ 51, 57. Many of the loans were made for DBSI to use for "business and commercial purposes," a use not permitted by the Indenture. Comp. ¶¶ 18, 39, 54. In two instances, the amount of an existing loan was increased by a total of over $4 million with no documentation other than a statement that it was being done. Comp. ¶¶ 49-50. In fact, there is nothing in the documentation of the original loan and two increases that even identifies the property. Comp. ¶ 51.

The amount of fraudulent documentation provided by DBSI to Defendant is so extensive that only a few examples are set forth here. All of the following is apparent on the face of the documents: (1) DBSI loaned $600,000 in bond proceeds to a project that owned property appraised at $600,000 that was already encumbered by at least $1.5 million in senior loans.

---

[2] The following is a brief summary of the multiple deficient and fraudulent transactions alleged in paragraphs 31-57 of the Complaint.

Comp. ¶¶ 31-36. DBSI increased the loan two years by $297,000, stating that the fair market value was now over $1 million, at a time when the senior encumbrance had increased to over $1.7 million. Comp. ¶¶ 37-38; (2) on December 31, 2007, DBSI loaned $1,950,000 in bond proceeds to a project pursuant to a loan application for $1,461,250 dated two weeks after the date of the loan. Comp. ¶ 41-42; (3) on December 31, 2006, DBSI loaned $2,208,140 to a project pursuant to a loan application that stated (with no support) that the value of the property was $6,160,000; the Promissory Note, however, stated (again with no support) that the value of the property was $8,750,000. Both documents were signed by the same individual on behalf of DBSI. Comp. ¶ 53; (4) on December 31, 2007, DBSI loaned $1,550,000 in bond proceeds to a project pursuant to two different loan applications. Both applications were signed about two weeks after the loan date by two different officers of DBSI. One application valued the property at $4,895,000, the other at $7,000,000. Comp. ¶¶ 55-56.

## LEGAL DISCUSSION

**II.**   **Motion to Dismiss**

### A. Legal Standard

As this court held in *Idaho Ry. Supply, Inc. v. Upadhya*, 2010 WL 996477 (D. Idaho 2010).:

> "A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief." *Embury v. King*, 191 F.Supp.2d 1071, 1076 (N.D.Cal.2001) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, '[a]ll material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.' *Id.* (citing *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). *See also Williams v. gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("A motion to dismiss is not a procedure for resolving a contest between the parties about the facts or the substantive merits of plaintiff's case." (citation omitted)).

## B. Defendant's Motion to Dismiss Plaintiffs' Contract Claims Ignores Clear Provisions in the Indenture Imposing Duties on Defendant

Defendant disclaims any contractual duty to ensure that DBSI used bond proceeds only in accordance with the Indenture and only for the purposes specified therein.  Among many other defects, Defendant's argument ignores Section 5.3.3 of the Indenture, which provides:

> On each Loan Closing Date **and upon the Trustee's receipt of the items identified in Section 3.1.2** and a Requisition Certificate in substantially the form attached as Exhibit 5.3.3, the Trustee shall withdraw from the Bond Proceeds/Loan Repayment Account an amount equal to the aggregate Loan Amounts of all Loans to be conveyed to the trust created by this Indenture on such Loan Closing Date and pay such amount to, or at the direction of, the Company.

Ind. § 5.3.3(i) (emphasis added).  Under the clear language of this provision, any disbursement of bond proceeds without prior receipt of all of the voluminous documentation required by Section 3.1.2 is a breach **by Defendant** of the Indenture.  Not a breach by DBSI, but by Defendant.  The Complaint alleges that Defendant over and over again did just what the Indenture said it could not – authorize disbursement of bond proceeds without the required documentation.  Putting aside for the moment self-evident fraud in the documents that DBSI did provide to Defendant (see the discussion below), the Complaint repeatedly identifies loans that Defendant disbursed without required documentation, each instance constituting a breach of the Indenture by Defendant.

Section 5.3.3(i) also refutes Defendant's argument that Defendant had no obligation to ensure that DBSI used bond proceeds in accordance with the requirements of the Indenture.  In order to fulfill its obligations under section 5.3.3(i), Defendant was required, at the very least, to read the documents DBSI provided to Defendant.  Defendant accordingly had "actual knowledge" of DBSI's repeated violations of the Indenture, each of which constituted an Event of Default.  The Indenture required, for each Event of Default, that Defendant notify the bondholders about the event within 30 days of Defendant's knowledge of the default.  Ind. §

9

11.2. Defendant breached its contractual obligations each time it failed to provide the requisite notice. The Complaint clearly identifies repeated Events of Default, and, in moving to dismiss, Defendant does not even purport to claim that it provided the requisite notice for these events.[3]

In its motion, Defendant might have argued that its contractual obligation was limited to ensuring that the documentation taken at face value showed that DBSI was not violating the Indenture. Defendant does not and could not make this argument - the documentation provided by DBSI on its face demonstrated time and again that DBSI was in breach. In the end, the only reasonable interpretation of the Indenture, given its provisions concerning Section 5.3.3(i), documentation, representations and warranties by DBSI, and Events of Default, means precisely what the Offering Circular says it means:

> The Trustee [Defendant] has the responsibility of assuring that [DBSI's] covenants, agreements and obligations are performed by [DBSI].

Comp. ¶ 26.

Plaintiffs further note that Defendant clearly breached the "prudent man" standard applicable under the Indenture once Defendant had knowledge of an Event of Default. Defendant makes its argument about the prudent man standard in the section of its memorandum devoted to Plaintiffs' fiduciary duty claim (not surprisingly – the prudent man standard is how fiduciary duties are measured), but the Indenture itself imposes this standard on Defendant. Therefore, failure to meet the standard is a breach of contract, not just a breach of fiduciary duty. Plaintiffs more fully discuss the "prudent man" standard in the following section concerning

---

[3] Defendant's contention that the Complaint identifies only one Event of Default is both patently inaccurate and more than a little disingenuous. In 2008 DBSI did not pay Defendant its trustee's fee. Defendant acknowledges that this failure constituted an Event of Default. However, without citation to the Indenture, Defendant measures the 30 days within which it was required to provide notice to the bondholders from the date Defendant sent a letter to DBSI complaining about not being paid and threatening to resign as trustee. The Event of Default occurred when DBSI did not pay Defendant (see Ind. § 10.1.1), not when Defendant got around to complaining about it. At the very least, there is a factual issue about when the default occurred precluding dismissal.

fiduciary duty, but it is worth emphasizing that Defendant breached the contract each time it failed to live up to that standard no matter how the Court resolves Defendant's motion with respect to Plaintiffs' separate fiduciary duty cause of action.

### C. Defendant Had Fiduciary Duties Under the Indenture During Any Period an Event of Default Had Occurred and Was Continuing

Defendant attempts to avoid the normal fiduciary obligations of trustees by arguing that indenture trustees do not, as a matter of law, have such duties. This is not the law. Even if Defendant had no fiduciary duties prior to an event of default (this issue is discussed below), both the terms of the Indenture and case law provide that Defendant did have such duties post-default. As is set forth in the Statement of Facts above, both Defendant and DBSI repeatedly violated the terms of the Indenture. At all times that a default had occurred and was continuing, Defendant had fiduciary duties to plaintiffs. Defendant's motion to dismiss Plaintiff's breach of fiduciary duty claim should therefore be denied.

Defendant's argument is (1) it had no fiduciary duties prior to an Event of Default, and (2) it met its "prudent person" duties following what it claims was the only Event of Default in this case – DBSI's failure to pay Defendant's trustee fee in 2008. The second part of Defendant's argument simply ignores the multiple defaults identified in the Complaint. These defaults are set out in the Statement of Facts above and are discussed in detail in the preceding section concerning Defendant's motion to dismiss Plaintiffs' contract claims; there is no need to rehearse them here. Suffice it to say that there was an Event of Default every time DBSI provided inadequate documentation for a loan, every time DBSI provided fraudulent documentation of a loan, every time DBSI used bond proceeds for a purpose not permitted under the Indenture, every time Defendant did nothing in response to receiving inadequate and/or fraudulent documentation, and every time Defendant disbursed bond proceeds without having received proper documentation. Plaintiffs possess documents from TitleOne going back only to

mid-2006 (see Comp. ¶¶ 6, 27), but there was not a single moment from that time forward that there were not multiple, continuing Events of Default in existence.

In claiming that indenture trustees do not have fiduciary duties, Defendant relies on cases that apply, if at all (see discussion below), only pre-default. After default, indenture trustees do have fiduciary obligations.[4] In *LNC Investments, Inc. v. First Fidelity Bank, NA*, 935 F. Supp. 1333 (S.D.N.Y. 1996), Judge (later Attorney General) Mukasey applied New York law to an indenture. The court found that, under New York Law, the fiduciary duties of a pre-default indenture trustees are limited to situations in which the trustee's own interests conflict with that of the investors or in situations where the trustee can be held liable in tort for failure to perform basic non-discretionary ministerial tasks. 935 F. Supp. at 1347. However, post-default, "'it is clear that the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture.'" *Id.* (*quoting Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 12, 632 N.Y.S.2d 520, 527 (1st Dept. 1995). Following a default, while the trustee has no duty to take actions specifically prohibited by the indenture, the trustee must take any authorized action necessary to protect the investors. Accordingly, there exists a post-default common law fiduciary duty upon which an aggrieved party may bring a claim. 935 F. Supp. at 1348.

Defendant acknowledge that, post default, it was required to exercise the rights and powers vested in it by the Indenture, and to use them with the same skill and care a prudent person would exercise in the conduct of the person's own affairs. Ind. 11.1.2. Assuming for the moment that this contractual obligation is coextensive with common law fiduciary duties, as Defendant appears to do, Defendant's argument that it met the prudent person standard in its

---

[4] Because there appear to be no Idaho cases on point, Plaintiffs rely on cases discussing New York law, as courts in other jurisdictions have done because new York law is especially well-developed.

post-default conduct is a *factual* argument which affords no basis for granting a motion to dismiss. As noted above, Defendant's argument ignores both the repeated Events of Default set forth in the Complaint and Defendant's utter lack of response to any of them. In addition, in order to argue that it fulfilled its contractual obligation to notify bondholders within 30 days of DBSI's default in failing to pay Defendant, Defendant baldly states that the default occurred not when DBSI failed to pay, but only when Defendant got around to complaining about it. See Defendant's Memorandum at p. 12. The Indenture required Defendant to notify the bondholders within 30 days of Defendant's actual knowledge of an Event of Default, see Ind. §§ 10.1.1 and11.2, not when Defendant got around to complaining about the default.

As noted above, it is not necessary for the Court to rule on Defendant's argument that indenture trustees, at least pre-default, have no fiduciary duties. There are good reasons for the Court to refrain from ruling on this issue at this stage in the absence of any controlling Idaho precedent. As noted above, under New York indenture trustees do have limited fiduciary duties pre-default, and an indenture trustee's liability for failure to perform non-discretionary ministerial duties, one of those duties, could well apply to Defendant. This is a factual question that cannot be resolved on a motion to dismiss.

In addition, the Indenture here is quite unlike the indentures in the cases upon which Defendant relies. In Defendant's cases, the bond transaction was a simple loan transaction with the indenture trustee serving as little more than a pass-through. In the present case, however, the Indenture created a trust with a *res* and made Defendant the trustee of that trust. Defendant was thus not just the indenture trustee, but also the trustee of an actual trust that contained actual assets (at least, it was supposed to). The trust estate consisted not only of the loans themselves, but of all of the right, title, and interest of the DBSI entities that received loans had in the underlying property in which the DBSI entities invested. Given the clear intent of the parties to

13

protect bondholders with security and other interests beyond merely DBSI's promise to repay,

Plaintiffs respectfully suggest that it would not be appropriate to rule on a motion to rule that no

pre-default fiduciary duties arose as a result of the arrangements of the parties.

### D. Plaintiffs' Claims for Gross Negligence and Negligence Are Not Barred by the Economic Loss Rule

Defendant argues that Plaintiffs' gross negligence and negligence claims are barred, as a

matter of law, by the economic loss rule. The only issue on this motion to dismiss is whether,

taking all well-plead facts to be true, the Court can conclude as a matter of law that the "special

relationship" exception to the economic loss rule does not apply. The Court could do so only by

taking the implied, unsupported factual assertions in Defendant's memorandum as true.

The economic loss rule does not apply when a "special relationship" between the plaintiff

and the defendant exists. *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 301, 108 P.3d 996,

1001 (2005). A special relationship may exist where "a professional or quasi-professional

performs personal services for a lay person, or when an entity holds itself out as having expertise

in a specialized function and, by so doing, knowingly induce[s a plaintiff] to rely on that

expertise." *Truckstop.net, LLC v. Sprint Communications Co.*, 537 F. Supp. 2d 1126, 1139 (D.

Idaho) (*citing Blahd, supra*). The question of the existence of a special relationship is

quintessentially factual. Defendant is a title insurance company and, as noted in the Complaint,

could be expected to be especially familiar with real estate security interests and the

documentation the Indenture required. Comp. ¶ 28. Defendant's role as indenture trustee was

touted in the Offering Circular. Whether Defendant was a professional or quasi-professional

providing services to a lay person, or held itself out as having expertise in a specialized function,

are questions of fact requiring development of a record. After all, the court in *Blahd* said that

real estate developers could arguably be considered quasi-professional, 108 P.3d at 301, and a

fair inference from the Complaint is that Defendant held itself out as having expertise in a

14

specialized function. All three cases on which Defendant relies – *Blahd*, *Truckstop.net*, and *Millenkamp v. Davisco Foods Int'l, Inc.* 391 F. Supp.2d 872 (D. Idaho 2005), were decided on summary judgment, not on motions to dismiss. Assuming that, after full development of the record that there remain no disputed issues of material fact on these issues, summary judgment is where Defendant's motion should be decided; otherwise, these issues will be for the jury to decide. There is no legal basis for resolving them on a motion to dismiss.

### E. Defendant's Class Certification Arguments Are Entirely Premature and Borderline Frivolous to Boot

It is difficult to know what to make of Defendant's class certification argument. The Defendant has yet to answer the Complaint; much less have the parties engaged in discovery. While conceivably a defendant could move to dismiss one or more class allegations of a complaint under the standard for a motion to dismiss – taking all the allegations as true and drawing all reasonable inferences in favor of the plaintiff – Defendant does not even purport to do this. Instead, Defendant provides arguments that one would expect to see after extensive discovery, arguments bereft of any meaningful citation of cases and ones that would be without merit even if made at the proper time.

> While class action allegations conceivably could be dismissed on the pleadings,
>
> the granting of motions to dismiss class allegations before discovery has commenced is rare. Indeed, while there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that "dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because "the shape and form of a class action evolves only through the process of discovery."

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609 (2007) (citations omitted). *See also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) (the practice employed in the overwhelming

majority of class actions is to resolve class certification only after an appropriate period of discovery).

Under Fed. R. Civ. P. 23(a), the court may certify a class if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Dukes v. Wal-Mart Stores, Inc.*, - F3d -, 2010 WL Cases 1644259 (9th Cir. 2010). Plaintiffs allege that the class consists of at least 600 members, the Complaint lists multiple common questions of fact and law, the Complaint alleges that the claims and defenses of all class members are the same, and therefore that the claims and defenses of the named Plaintiffs are typical, that the named Plaintiffs will fairly represent and adequately the class, and that class counsel are able and experienced. Since the Complaint alleges that the claims and the defendants of all members of the class are the same, perforce Rule 23(b)'s requirement that common issues predominate over individual ones is satisfied. From all this it follows that a class action is superior to the alternatives.

Despite the fact that Defendant makes no reference to cases like *In re Wal-Mart*, nor to the standard that applies on motions to dismiss, Plaintiffs will briefly respond to Defendant's arguments. Defendant makes the following arguments: (1) notwithstanding the claims asserted in the complaint, this is really a fraud case and classes in fraud cases cannot be certified; (2) class members individually relied on Defendant to protect them from DBSI's fraud and so there are individual issues of reliance precluding class certification; (3) bondholders who purchased after the initial offering have no claim because the documents in Defendant's possession after mid-2006 showed fraud on their face; therefore there is no commonality of claims; (4) named Plaintiffs claims' are not typical because they may have claims against third parties and other

class members do not; and (5) individual class member claims are large enough to justify

individual actions.  Plaintiffs address these arguments in turn.

1.      <u>This is really a fraud case.</u>  No, this is really a contract, fiduciary duty, and gross

and ordinary negligence case.  DBSI committed fraud, but DBSI is not a defendant.  There are no

fraud claims in this case and therefore Defendant's argument, even if legally supportable,[5] is

beside the point.

2.      <u>Class members individually relied on Defendant to protect them from DBSI's</u>

<u>fraud.</u>  To repeat, there are no fraud claims in this case.  The claims in this case are breach of

contract, breach of fiduciary duty, and gross and ordinary negligence.  Reliance is not an element

of any of these claims.  There are no individual issues of proof other than the amount of

damages.

3.      <u>Class member claims are dissimilar because later investors have no claim because</u>

<u>they knew, or should have known, about DBSI's fraud.</u>  There is nothing in the record – nothing

– to suggest that prospective bondholders had access to the documents in Defendant's possession

at any time.  The Offering Circular informed prospective bondholders that they could obtain

additional documentation from DBSI (not Defendant), and listed the following as documents

prospective bondholders might want to review: Articles of Incorporation and Bylaws of DBSI

Real Estate Investment Corporation, sample loan documents, financial statements, and the

Indenture.  Off. Circ. p.30.  In the very unlikely event Defendant's argument will ever have any

merit, it certainly does not have any now, being completely without any factual support.

<u>Named Plaintiffs' claims are not typical because they or other class members may have</u>

<u>third party claims.</u>  Not surprisingly, Defendant cites no case law for the proposition that the

---

[5] *Cf.* the Advisory Committee Note to Rule 23(b) in the 1966 revisions to Fed. R. Civ. Pro. 23: "a
fraud perpetrated on numerous persons by the use of similar misrepresentations may be an
appealing situation for a class action, and it may remain so despite the need, if liability is found,
for separate determination of the damages suffered by individuals within the class."

possibility that some class members may have third-party claims is even relevant to class certification. In any event, there is nothing in the record that supports Defendant's assertion that any potential class member does have such a claim.

<u>Individual class member claims are large.</u> There is nothing in the record to support this assertion.

### F. Defendant's Motion for Summary Judgment Should Be Stricken

Plaintiffs previously moved this Court to strike Defendant's motion for summary judgment from the motion to dismiss. Defendant did not submit a statement of undisputed facts as required by Local Civil Rule 7.1 and nowhere in its motion or memorandum does Defendant purport to identify any undisputed facts. Nor does Defendant ask the Court to consider any materials other than the Complaint and the documents attached thereto or cited therein. In fact, in its memorandum Defendant explicitly disclaim any reliance on anything that would be the basis for converting its motion to dismiss into a motion for summary judgment. See Memorandum of Defendant at p.19, n.8. There accordingly is no motion for summary judgment to which Plaintiffs can respond. If Plaintiffs' response to Defendant's motion does nothing else, it demonstrates that there are many factual issues that require full development of the record before any resolution thereof can be contemplated. Defendant's motion for summary judgment is obviously a throw-away and should be treated as such.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss, deny or strike Defendant's motion for summary judgment, and deny Defendant's request for non-certification of the class.

DATED:  May 18, 2010

Respectfully submitted,


By:      _____

Philip H. Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
**Gordon Law Offices**
623 West Hays Street
Boise, ID  83702
Tel: 208-345-7100
Fax: (208) 345-0050
**pgordon@gordonlawoffices.com**


Geoffrey Bestor
**The Bestor Law Firm**
4204 Maple Terrace
Chevy Chase, MD 20815
Tel: 240-463-8503
Fax: 866-626-3131
gbesq@bestorlaw.com


Attorneys for Plaintiffs

19

**Certificate of Service**

I hereby certify that on the 18th day of May, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which is designed to send a Notice of Electronic Filing to persons including the following:

Mark B Perry rnbp@perrylawpc.com

Maurice 0 Ellsworth moe@perrylawpc.com

Trevor L Hart tlh@perrylawpc.com, info@perrylawpc.com, rnbp@perrylawpc.com, moe@perrylawpc.com, tay@perrylawpc.com

_____/s/_____
Philip Gordon
