UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

RUSSELL FIRKINS, RENA FIRKINS,
HIGHLAND SERVICES CO., INC.          NO. CIV. 1:10-00110-BLW
PROFIT SHARING PLAN, DOUGLAS
R. CIRCLE as trustee, DOUGLAS
RICHARD CIRCLE and JAN ALISON        ORDER RE: MOTION TO DISMISS
CIRCLE 1984 FAMILY TRUST,            AND MOTION TO STRIKE

        Plaintiffs,

    v.

TITLEONE CORPORATION,

        Defendant.
_____/

----oo0oo----

        Plaintiffs are investors in bonds that were issued

pursuant to an indenture contract.  The bond proceeds were used

to fund loans and, after the borrowers defaulted on the loans,

plaintiffs initiated this class action against the indenture

trustee, defendant TitleOne Corporation ("TitleOne").  The court

has jurisdiction over this class action pursuant to 28 U.S.C. §

1332(d)(2).

    I.   Factual and Procedural Background

        DBSI Group ("DBSI") is an Idaho corporation that was

1

comprised of several companies that invested in real estate. (Compl. ¶ 2.)  In order to fund its investments and operations, DBSI created DBSI Real Estate Funding Corporation ("REFCO") (id. ¶¶ 1, 2) and, through REFCO, provided for the issuance of five million dollars in bonds that would be used to extend loans to DBSI or entities it controlled.  (Crichlow Aff. Ex. C, at 1 ("Offering Circular").)  To facilitate this financing, REFCO executed a forty-seven-page indenture contract on December 24, 2002 with TitleOne.  (Compl. Ex. A ("Indenture").)  The Indenture was governed by Idaho law and provided for the issuance of loans with bond proceeds and repayment of the bonds.  (Indenture §§ 2.1, 13.7.)  The Indenture also transferred all rights and interests obtained as collateral for the loans to a trust of which TitleOne served as the indenture trustee for the benefit of the bondholders.  (Id. §§ 1.33, 1.34.)

As discussed in more detail below, the Indenture expressly limited TitleOne's responsibilities, duties, and potential liabilities and provided that TitleOne did not owe plaintiffs the common law fiduciary duties that trustees generally owe beneficiaries.  (Id. § 11.1.1.(i).)  In establishing TitleOne's duties, the Indenture also delineated between TitleOne's conduct prior to and after an "event of default."  (Id.)  The Indenture specifically identified twelve occurrences that could constitute an event of default, such as REFCO's failure to repay the principal or interest bond payments, default in the performance of a provision of the Indenture, or material misrepresentation in a document delivered pursuant to the Indenture.  (See id. §§ 9.1.1-9.1.12.)  While the Indenture

2

1  narrowly limited TitleOne's duties prior to an event of default,

2  it provided that TitleOne could be liable for its conduct after

3  an event of default if it failed to act as a "prudent person" and

4  its conduct amounted to gross negligence or willful misconduct.

5  (Id. § 11.1.2.)

6          To facilitate the sale of the bonds, REFCO generated an

7  offering circular dated December 23, 2003, which was then amended

8  and superceded by the "Confidential Offering Circular" dated

9  February 23, 2003 ("Offering Circular").  The terms of the

10 Indenture were expressly incorporated into the bond certificates

11 issued to plaintiffs.  (Compl. ¶ 1.)

12         In November 2008, DBSI, REFCO, and DBSI's affiliated

13 entities filed bankruptcy and, at that time, plaintiffs allegedly

14 had over forty-two million dollars in principal and accrued

15 interest invested in bonds that had been used to fund loans to

16 DBSI and its entities.  (Id. ¶ 5.)  Reports issued by the

17 examiner appointed by the bankruptcy court allegedly show that

18 DBSI was "no more than a Ponzi scheme from at least 2004, if not

19 earlier."  (Id.)  In utilizing bond proceeds for loans, DBSI and

20 its borrowing entities allegedly obtained loans secured only by

21 personal property, filed duplicate loan applications with

22 inconsistent and unsupported valuations of the property in which

23 the loan funds were invested, and fabricated the value of

24 investment properties.  (Id. ¶ 7.)

25         Alleging that TitleOne's failure to carry out its

26 fiduciary and contractual duties caused plaintiffs' loss of their

27 investments, plaintiffs filed their class action Complaint on

28 February 26, 2010.  In their Complaint, plaintiffs assert state

1  law causes of action for 1) breach of fiduciary duty; 2) breach

2  of contract; and 3) negligence and gross negligence.  Pursuant to

3  Federal Rule of Civil Procedure 12(b)(6), TitleOne now moves to

4  dismiss plaintiffs' claims and class allegations or alternatively

5  seeks summary judgment on plaintiffs' state law claims pursuant

6  to Rule 56.  In response, plaintiffs move to strike TitleOne's

7  motion for summary judgment and seek an award of expenses,

8  including attorneys' fees, due to TitleOne's failure to comply

9  with Idaho Local Rule 7.1(e).

10  II.  Analysis

11     A.   Motion to Dismiss

12          On a motion to dismiss, the court must accept the

13  allegations in the complaint as true and draw all reasonable

14  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

15  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

16  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

17  (1972).  To survive a motion to dismiss, a plaintiff needs to

18  plead "only enough facts to state a claim to relief that is

19  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

20  544, 570 (2007).  This "plausibility standard," however, "asks

21  for more than a sheer possibility that a defendant has acted

22  unlawfully," and where a complaint pleads facts that are "merely

23  consistent with" a defendant's liability, it "stops short of the

24  line between possibility and plausibility."  Ashcroft v. Iqbal,

25  556 U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550

26  U.S. at 556-57).

27          When ruling on a motion to dismiss, the court generally

28  may not consider materials other than the facts alleged in the

4

1  complaint and documents that are made a part of the complaint.
2  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996); Branch v.
3  Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other
4  grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th
5  Cir. 2002).  The court may, however, consider "documents whose
6  contents are alleged in the complaint and whose authenticity no
7  party questions, but which are not physically attached to the
8  plaintiff's pleading."  Branch, 14 F.3d at 454.

9        Here, the Indenture at the heart of the this
10  controversy is repeatedly referenced in the Complaint and
11  attached to it, and thus may be considered by the court.  The
12  court will also consider the copy of the Offering Circular
13  TitleOne provided because plaintiffs refer and cite to it in
14  their Complaint and do not dispute the authenticity of the copy
15  provided to the court.  With the exception of these two
16  documents, the court will refrain from considering the remaining
17  extraneous documents TitleOne submitted.

18        1.  Breach of Fiduciary Duty

19        "In order '[t]o establish a claim for breach of
20  fiduciary duty, [a] plaintiff must establish that defendants owed
21  plaintiff a fiduciary duty and that the fiduciary duty was
22  breached.'"  Bushi v. Sage Health Care, PLLC, 146 Idaho 764, 769
23  (2009) (quoting Tolley v. THI Co., 140 Idaho 253, 261 (2004))
24  (alterations in original).  Although an indenture trustee is
25  given the title of "trustee," "the duty which is imposed under an
26  indenture of trust is not a traditional fiduciary duty."  Shawmut
27  Bank, N.A. v. Kress Assos., 33 F.3d 1477, 1491 (9th Cir. 1994).
28  Specifically, if an indenture limits the duties of the indenture

5

trustee to such duties provided for in the indenture, "the trustee's obligations are confined to the scope of the contract, and do not extend to common law fiduciary duties." Id. at 1502.

Prior to an event of a default, the Indenture in this case expressly limited TitleOne's duties to those imposed by the Indenture:

> Except during the continuance of an Event of Default:
> (i) the duties of the Trustee shall be determined solely by express provisions of this Indenture and the Trustee will perform only those duties and no others; the Trustee undertakes to perform such duties and only such duties as are specifically set forth or provided for in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee.

(Indenture § 11.1.1(i).)  The limiting clause in subsection 11.1.1(i) is precisely the type of limiting clause the Ninth Circuit has held sufficient to render traditional fiduciary duties inapplicable to an indenture trustee. See Shawmut Bank, N.A., 33 F.3d at 1502.  With TitleOne's pre-default duties limited to those provided for in the Indenture, plaintiffs' remedies for the breach of any of those duties lies in a breach of contract claim, not a breach of fiduciary duty claim. See id. at 1492 n.12, 1502.

Plaintiffs' allegations giving rise to their breach of fiduciary duty claim are not, however, limited to TitleOne's conduct prior to an event of default. (See Compl. ¶ 72(e) (alleging that "TitleOne failed to notify bondholders of Events of Default known to it"); see also id. ¶¶ 58-61.)  In the event of a default, the Indenture imposed the following heightened duties on TitleOne:

> If an event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it or provided for by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs, but the Trustee shall be liable only for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct.

(Indenture § 11.1.2.)  The Indenture's provision for TitleOne to exercise the same degree of care and skill as a "prudent person" in the event of a default is akin to the standard of care owed by a fiduciary under Idaho law.  <u>See</u> Idaho Code § 15-7-302 ("Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills.").  As Idaho Code section 15-7-302 permits, however, the Indenture also narrowed the "prudent person" requirement and provided that TitleOne could be liable only for its own "grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct." (Indenture § 11.1.2.)  To assert a claim against TitleOne for its post-default conduct, plaintiffs must therefore allege that TitleOne's conduct fell below that of a prudent person and amounted to gross negligence or willful misconduct.

As a threshold matter, plaintiffs' breach of fiduciary duty claim fails to allege that TitleOne's post-default conduct amounted to gross negligence or willful misconduct.  In the absence of such allegations, the Indenture forecloses TitleOne's

liability even if it failed to act as a prudent person after an event of default.

Furthermore, before an event of default could have given rise to TitleOne's potential liability, the Indenture required that TitleOne have actual knowledge of the default:

> For all purposes under this Indenture, except for Default in payment of principal and interest under Section 9.1.1 and 9.1.2, the Trustee shall not be deemed to have notice or knowledge of any Default or Event of Default or a default or event of default under any document included in the Trust Estate, unless an authorized officer of the Trustee has actual knowledge thereof or unless an authorized officer of the Trustee has received written notice thereof at the Trust Office and such notice references the Bonds generally, the Company, the Trust Estate or this Indenture.

(Indenture § 11.1.5.)  In the Complaint, plaintiffs allege that an event of default occurred when REFCO failed to pay TitleOne for nine months, starting sometime in early 2008 and prompting TitleOne to send REFCO a demand for payment on October 21, 2008. Of the alleged breaches of fiduciary duties plaintiffs allege, however, the latest occurred on January 11, 2008 (see Compl. ¶¶ 42, 47), which appears to have been before REFCO was delinquent in paying TitleOne's fees.  Plaintiffs have thus failed to sufficiently allege that TitleOne breached its post-default duties during the period REFCO was in default for failure to pay TitleOne's fees.

Plaintiffs also assert that the insufficient documentation DBSI and its entities submitted to TitleOne constituted events of default and allege that "the documents provided by TitleOne reveal on their face the existence of clear violations by DBSI of multiple provisions of the Indenture." Plaintiffs' nonetheless fail to allege that TitleOne had actual

knowledge of these alleged events of default as section 11.1.5 required.

Accordingly, because TitleOne did not owe plaintiffs any fiduciary duties prior to an event of default and plaintiffs have failed to sufficiently allege that TitleOne breached the heightened duties the Indenture imposed post-default or that TitleOne had actual knowledge of any other alleged events of default, the court will grant TitleOne's motion to dismiss plaintiffs' breach of fiduciary duty claim.[1]

### 2. Breach of Contract Claim

In their breach of contract claim, plaintiffs incorporate their factual allegations of TitleOne's alleged breaches and specifically identify five ways in which TitleOne allegedly breached the Indenture: a) failing "to ensure that DBSI used REFCO funds in a manner consistent with the indenture"; b) failing "to ensure that DBSI documented each transaction as required by the Indenture"; c) failing "to ensure that DBSI obtain[ed] security for loans from REFCO"; d) failing "to detect fraud apparent on the face of documents in TitleOne's possession"; and e) failing "to notify bondholders of Events of Defaults known to it."  (Compl. ¶ 77(a)-(e).)  The court will address whether, taken as true, each of plaintiffs' allegations could constitute a breach of the Indenture.

---

[1]     Dismissal with prejudice is appropriate only when the complaint cannot be saved by an amendment.  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Although some of the court's findings suggest that some of plaintiffs' claims cannot be saved by amendment, any grant of dismissal in this Order will be without prejudice given the factual nature of plaintiffs' claims.

Plaintiffs first allege that TitleOne breached the Indenture because it "failed to ensure that DBSI used REFCO funds in a manner consistent with the Indenture." (<u>Id.</u> ¶ 77(a).) According to plaintiffs, "[t]he terms of the Indenture required that REFCO funds could be used only for real estate investment purposes" (<u>id.</u> ¶ 18), and the Indenture imposed a duty on TitleOne "to ensure that DBSI used REFCO funds consistently with the requirements of the Indenture." (<u>Id.</u> ¶ 25.)   To support their allegation that the Indenture required REFCO funds to be used for real estate investments, plaintiffs rely on the Offering Circular, which states, "The proceeds of any Loans to DBSI Group controlled Entities will only be used to acquire, develop, and/or finance real estate properties prior to their sale, resale, financing and/or syndication." (<u>Id.</u> ¶ 18; Offering Circular at 11.)   As an example of this alleged breach by TitleOne, plaintiffs identify a loan taken in connection with DBSI's Bayside Apartments in Seward, Alaska, in which a loan for "business and commercial purposes" was funded with bond proceeds. (Compl. ¶¶ 31, 39(c); <u>see also</u> <u>id.</u> ¶ 54 (alleging that Kastera Homes, a DBSI-wholly owned entity, also obtained a loan funded with bond proceeds for "business and commercial purposes").)

Although the Offering Circular represents that the loans will be used only in connection with real estate investments, plaintiffs do not allege that the Indenture incorporates the representations made in the Offering Circular or that TitleOne was bound by the Offering Circular.   The Indenture, moreover, does not include similar limiting language and the provision pertaining to the "Use of Bond Proceeds" states only

1  that the borrower "will use the proceeds of the Bonds only in

2  accordance with the provisions of this Indenture.  All Bond

3  proceeds shall be used only to make Loans."  (Indenture § 7.12.)

4  It then defines "Loan" as "each loan evidenced by the Promissory

5  Note therefor and secured by the Loan Collateral to be assigned

6  to the Trustee hereunder."  (Id. § 1.15.)  Under "Loan

7  Requirements," the Indenture states only that "the aggregate Loan

8  to Value Ratio of the Loans and all underlying senior loans must

9  not exceed 85%."  (Id. § 1.20; see also id. § 1.21 ("Loan to

10  Value Ratio means the sum of the amount of a Loan and any senior

11  debt divided by the appraised value or, absent an appraisal, the

12  Company's estimated value of the assets and/or ownership

13  interests of a Borrower.").)  In the absence of any limitation in

14  the Indenture, plaintiffs' allegations that loans issued with

15  bond proceeds were limited to real estate investments fail.

16      Nonetheless, even assuming the Indenture limited the

17  use of the loan proceeds to real estate investments, it does not

18  impose a duty on behalf of TitleOne to ensure that DBSI or its

19  entities complied with the limitation.  To the contrary, the

20  Indenture expressly limits TitleOne's liability for the

21  borrowers' use of the loan proceeds:

22      The trustee shall not be responsible for and makes no
        representation as to the validity or sufficiency of this
23      Indenture, the Bonds or the Trust Estate.  The Trustee
        shall not be accountable for the Company's issue of the
24      Bonds or application of the proceeds thereof or for any
        money paid to the Company or upon the Company's direction
25      under any of the provisions of this Indenture.

26  (Id. § 11.4.)

27      Accordingly, because the Indenture neither limited the

28  use of loan proceeds to real estate investment purposes nor

11

required TitleOne to ensure that DBSI or its entities properly used loan proceeds, the court will grant TitleOne's motion to dismiss plaintiffs' breach of contract claim as alleged in paragraph 77(a).

Plaintiffs' second ground for breach of contract alleges that TitleOne "failed to ensure that DBSI documented each transaction as required by the Indenture." (Compl. ¶ 77(b).) Section 3.1.2 of the Indenture itemized the documents TitleOne was required to receive at the closing of each loan:

> On each Loan Closing Date, the Trustee shall receive (i) the original Promissory Notes, (ii) each of the other original documents contained in the Loan File relating to each Loan, (iii) a list identifying the documents contained in such Loan File, (iv) if available, a copy of an appraisal summary for the assets related to the Loan, (v) a certificate signed by an authorized officer of the Company stating that the aggregate Loan to Value Ratio of the Loans and all underlying senior loans do not exceed 85%, (vi) a certificate of an authorized officer of the Company dated as of the Loan Closing Date certifying that all right, title, and interest in each Loan has been assigned, transferred or otherwise conveyed to the trust created by this Indenture, and such assignment complies with all requirements of this Indenture.

(Indenture § 3.1.2.)  The Indenture further defined the documents making up a "Loan File" as:

> (i) the executed original of the Promissory Notes plus amendments thereto duly endorsed and assigned by the Company to the Trustee;
> (ii) if applicable, the executed original Mortgage and/or Security Agreement;
> (iii) if applicable, the executed original Nonencumbrance Agreement and the executed original Memorandum of Nonencumbrance;
> (iv) insurance certificates identifying the amounts of liability and property insurance and naming the Trustee as loss payee and additional insured; and the Company as mortgagee, loss payee, and additional insured;
> (v) if applicable, an assignment of the Mortgage and/or Security Agreement to the Trustee;
> (vi) a schedule calculating and summarizing the satisfaction of the Loan Requirements; and
> (vii) appraisal summary of Mortgaged Property, if

1    available.

2   (Id. § 1.19.)

3           Although plaintiffs allege that one or more of the Loan

4   Files were missing a mortgage providing a security interest in a

5   borrower's real estate, neither section 3.1.2 nor section 1.19

6   required that a mortgage be included in a file.  To the contrary,

7   inclusion of a mortgage in a loan file was required only "if

8   applicable" and, as discussed in more detail below, the Indenture

9   did not require that every loan be secured with a mortgage.  (See

10  id. §§ 1.17, 1.30.)  Plaintiffs also allege that loan files for

11  certain properties included valuations of properties without

12  appraisals or information supporting the stated values of the

13  properties.  (Compl. ¶ 57(c).)  Similar to mortgage interests,

14  however, the Indenture expressly contemplated the issuance of

15  loans without appraisals or supporting documentation.  (See

16  Indenture §§ 1.20, 1.21 (requiring that the "Loan to Value Ratio"

17  cannot exceed 85% and defining the "Loan to Value Ratio" as "the

18  sum of the amount of a Loan and any senior debt divided by the

19  appraised value or, absent an appraisal, the Company's estimated

20  value of the assets and/or ownership interests of a Borrower")

21  (emphasis added).)

22          With respect to the remaining documents, it does not

23  appear that plaintiffs allege TitleOne did not receive a

24  document as sections 3.1.2 or 1.19 required; instead, plaintiffs

25  appear to allege that the documents contained false information

26  or data that suggested DBSI was engaged in fraud.  (See, e.g.,

27  Compl. ¶¶ 36, 38, 39, 57(b), (d).)  The Indenture, however,

28  expressly protected TitleOne from liability based on DBSI's or

13

its entities' representations in the documents it submitted:

> [I]n the absence of bad faith on its part, the Trustee may conclusively rely upon certificates or opinions furnished to the Trustee provided such opinions and certificates conform to the requirements of this Indenture, including investment instructions received pursuant to Section 5.6 hereof, as to the truth of the statements and the correctness of the opinions expressed therein. . . .

> [I]n the absence of bad faith the Trustee conclusively may rely on and shall be protected in acting or refraining from acting when doing so, in each case in accordance with any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, note or other paper or document conforming to the requirements of this Indenture believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties, <u>and the Trustee need not investigate any facts stated therein</u> . . . .

(Indenture §§ 11.1.1(ii), 11.3.1 (emphasis added).)

Additionally, many of the documents plaintiffs allege contained false or inconsistent information were loan applications. (<u>E.g.</u>, Compl. ¶¶ 53, 55). The Indenture, however, did not require that applications be included in a "Loan File" (<u>see</u> Indenture §§ 1.19, 3.1.2), and plaintiffs fail to allege that the Indenture required TitleOne to maintain or review those documents.

Accordingly, because the Indenture required only that TitleOne receive certain documentation and plaintiffs do not allege that TitleOne lacked any of the requisite documents, the court will grant TitleOne's motion to dismiss plaintiffs' breach of contract claim as alleged in paragraph 77(b).

Plaintiffs' third ground for their breach of contract claim alleges that TitleOne "failed to ensure that DBSI obtain[ed] security for loans from REFCO." (Compl. ¶ 77(c).) Specifically, plaintiffs allege that TitleOne breached the Indenture because DBSI and its entities obtained loans funded

with bond proceeds that were secured only by borrowers' personal property interests, not mortgage interests in real property. (See id. ¶¶ 33, 35, 44, 52, 56.)

Although the Indenture contemplates that a loan could be secured by a mortgage, it neither requires a mortgage as security nor limits security interests to real property.  The Indenture contemplates that a Loan File could include "an assignment of the Mortgage and/or Security Agreement to the Trustee" (Indenture § 1.19(v) (emphasis added)) and defines "Loan Collateral" as "all of the Borrower's right, title, and interest in, to, and under the Loans and Security Agreements and all related security interests the Company receives in connection with the Loans."  (Id. § 1.17.)  It then defines "Security Agreement" as "the security agreement with respect to a Loan between the related Borrower and the Company providing for the grant by such Borrower of a security interest in personal property to secure such loan."  (Id. § 1.30 (emphasis added).)

The Indenture also repeatedly contemplates that a loan could be funded with bond proceeds without a mortgage.  (See id. § 1.19(ii), (v) (indicating that a loan file will include a mortgage, "if applicable"), §§ 3.4.5, 3.4.6 (referring to the borrower's representations regarding a mortgage, "if any").)  The absence of a requirement in the Indenture that all loans be secured with mortgage interests in real property is also consistent with the Offering Circular, which provides that "SOME OR ALL LOANS MAY BE UNSECURED."  (Offering Circular at 17.)

While the Indenture thus contemplated that a loan could be secured by a mortgage interest in real property, it neither

15

required such security nor precluded security in a borrower's personal property.  The court will therefore grant TitleOne's motion to dismiss plaintiffs' breach of contract claim as alleged in paragraph 77(c).

In their fourth ground underlying their breach of contract claim, plaintiffs allege that TitleOne "failed to detect fraud apparent on the face of documents in TitleOne's possession." (Compl. ¶ 77(d).)  As a threshold matter, most of plaintiffs' allegations of fraud by DBSI or its entities rely on conduct that the Indenture expressly permitted for the reasons previously discussed, such as obtaining loans without mortgages or appraisals.  To the extent that plaintiffs sufficiently allege fraudulent conduct by DBSI or its entities that breached the Indenture, plaintiffs' allegations are insufficient to constitute a breach of the Indenture by TitleOne.

The Indenture does not impose a general duty on TitleOne to "detect fraud" by REFCO or DBSI or its borrowing entities.  To the contrary, and as identified above, the Indenture expressly provides that, absent bad faith by TitleOne, TitleOne may conclusively rely on the borrower's representations that the information provided to TitleOne was "true and correct in all material respects" and need not investigate the facts stated by the borrower.  (See Indenture §§ 3.4.1, 11.1.1(ii), 11.3.1.)  As plaintiffs have not alleged bad faith on behalf of TitleOne, their allegation that, "[i]f TitleOne had merely read the documents in its possession, DBSI's fraud would have been clear and apparent" (Compl. ¶ 39) fails to state a cognizable breach of contract claim.

1    Furthermore, while the Indenture imposes heightened
2  duties on TitleOne in the event of a default that could arguably
3  give rise to a duty to investigate or detect fraud, plaintiffs
4  have failed to sufficiently allege that representations DBSI or
5  its entities made in their loan documents gave rise to TitleOne's
6  post-default duties.  Among the various events of default
7  identified in the Indenture, section 9.1.5 indicates that a
8  default occurs if "[a]ny representation, warranty, or statement
9  of the Company made in . . . any certificate, report, or other
10 writing delivered pursuant hereto shall prove to be incorrect in
11 any material respect as of the time when the same shall have been
12 made." (Indenture § 9.1.5.)  As previously discussed, however,
13 plaintiffs' failure to allege that TitleOne had knowledge of any
14 of these potential defaults by DBSI or its entities precludes
15 application of the heightened post-default standard.  (See id. §
16 11.1.5 (requiring actual knowledge on behalf of TitleOne for the
17 heightened standard to apply).)

18    Accordingly, because the Indenture did not impose a
19 "duty to investigate" on TitleOne and because plaintiffs fail to
20 allege that an event of default gave rise to the heightened post-
21 default duties, the court will grant TitleOne's motion to dismiss
22 plaintiffs' breach of contract claim as alleged in paragraph
23 77(d).

24    Plaintiffs' fifth and final ground for their breach of
25 contract claim alleges that TitleOne "failed to notify
26 bondholders of Events of Defaults known to it." (Compl. ¶
27 77(e).)  As the court has previously discussed, plaintiffs do not
28 sufficiently allege that the documentation DBSI or its entities

17

submitted to TitleOne constituted events of default because the
submissions or lack thereof were either consistent with the
Indenture or plaintiffs failed to allege that TitleOne had actual
knowledge of any inaccurate information.  Aside from alleged
defaults based on the documentation DBSI or its entities provided
to TitleOne for each loan, the only other conduct plaintiffs
allege constituted an event of default was REFCO's failure to pay
TitleOne for its services for a nine-month period beginning in
early 2008.  (Id. ¶ 58.)  As plaintiffs allege that TitleOne had
actual knowledge of this event of default (id.), section 11.2 may
have required TitleOne to give plaintiffs written notice of the
event of default within thirty days.  (Indenture § 11.2.)

        The parties do not dispute that TitleOne provided the
bondholders with written notice of REFCO's failure to pay
TitleOne's fees on November 24, 2008.  TitleOne argues that such
notice complied with section 11.2 because REFCO's failure to pay
TitleOne's fees did not become an event of default until ten days
after TitleOne sent REFCO notice of its failure to pay the fees
on October 21, 2008.  TitleOne specifically relies on section
9.1.4, which provides that an event of default occurs if REFCO
defaults "in the due performance and observance of any provision
of this Indenture or the Bond Guarantee and such default shall
have continued for a period of 10 days after it has obtained
knowledge of, or has been notified by the Trustee or any
Bondholder of, such default."  (Id. § 9.1.4 (emphasis added).)[2]

_____

        [2]     The parties appear to agree that REFCO's failure to pay
TitleOne's fees comes within the event of default enumerated in
section 9.1.4.  The court notes, however, that such conduct could
potentially come within other definitions of events of default

When TitleOne sent REFCO notice of its default on October 21, 2008, however, TitleOne indicated that REFCO had not made a payment in over nine months. (Compl. ¶ 58.)  Taking all inferences in favor of plaintiffs, it is reasonable to infer that, even absent notification from TitleOne, REFCO had knowledge of its failure to pay TitleOne as early as the first month it failed to pay TitleOne's fees, thereby constituting an event of default under section 9.1.4 ten days after the first date of its late payment, or approximately nine months before October 2008. Similarly, it is reasonable to infer that TitleOne had actual knowledge of REFCO's failure to pay its fees as of the first month REFCO did not submit a payment.

Nonetheless, even if REFCO's failure to pay TitleOne's fees constituted an event of default ten days after REFCO's first delinquent payment, plaintiffs have failed to allege that TitleOne breached the Indenture when it did not give them notice of the event of default within thirty days.  Specifically, while section 11.2 requires TitleOne to give plaintiffs notice of an event of default within thirty days, it vests TitleOne with the discretion to determine whether to give plaintiffs notice of certain defaults:

> Notwithstanding the foregoing provisions of this section, for Events of Default other than a default in the payment of principal or interest on any Bond, the Trustee may withhold notice to the Bondholders if the Trustee in good faith determines that the withholding of such notice is in the interests of the Bondholders.

---

that do not include a similar knowledge or notice requirement on behalf of REFCO.  (See Indenture §§ 9.1.3, 9.1.6 (defining "Events of Default" to include the failure "to remit payments in respect of the Loans to Trustee" or to pay "its debts as such debts become due").)

Because REFCO failed only to pay TitleOne's fees while apparently making timely principal and interest bond payments, TitleOne has the right to determine, in good faith, that withholding notice of REFCO's default was in the interests of plaintiffs.  Plaintiffs' failure to allege that TitleOne did not make such a good faith determination is therefore fatal to their breach of contract claim based on TitleOne's failure to notify them of REFCO's delinquent payments of its fees.[3]

Accordingly, the court will grant TitleOne's motion to dismiss plaintiffs' breach of contract claim as alleged in paragraph 77(e).

### 3. Negligence and Gross Negligence Claim

Under Idaho law, tort actions are not cognizable "where the sole allegation is that the defendant prevented the plaintiff from gaining a purely economic advantage." Aardema v. U.S. Dairy Sys., Inc., 147 Idaho 785, 790 (2009).  Known as the "economic loss rule," the bar, absent an exception, "prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., L.P., 537 F. Supp. 2d 1126, 1139 (D. Idaho 2008).  "There are two exceptions to the economic loss rule: the existence of a special relationship between the parties and unique circumstances requiring a reallocation of the risk."

---

[3]     As all the loans issued with bond proceeds appear to have been issued before REFCO was in arrears on its payment of TitleOne's fees, it is also questionable whether plaintiffs will be able to sufficiently allege that TitleOne's delinquent notice of REFCO's failure to pay its fees caused plaintiffs' alleged harm.  See generally Shawmut Bank, N.A., 33 F.3d at 1495-97.

Millenkamp v. Davisco Foods Int'l, Inc., 391 F. Supp. 2d 872 (D. Idaho 2005).

"A special relationship may be established when a professional or quasi-professional performs personal services for a lay person, or when an entity holds itself out as having expertise in a specialized function and, by so doing, knowingly induced [the plaintiff] to rely on that expertise." Truckstop.Net, L.L.C., 537 F. Supp. 2d at 1139. The Idaho Supreme Court has emphasized that the special relationship exception applies in "an extremely limited group of cases where the law of negligence extends its protections to a party's economic interest" because "the relationship between the parties is such that it would be equitable to impose such a duty." Blahd v. Richard B. Smith, Inc., 141 Idaho 296, 301 (2005) (internal quotation marks omitted).

The parties do not dispute that plaintiffs are seeking purely economic damages in their third cause of action for negligence and gross negligence. Absent application of one of the exceptions, plaintiffs are thus unable to allege a cognizable claim for negligence or gross negligence. Although plaintiffs allege that TitleOne owed them a fiduciary duty, the court has previously determined that the Indenture limited TitleOne's duties to exclude those of a fiduciary. Moreover, even if REFCO's failure to pay TitleOne's fees resulted in the heightened standard governing TitleOne's post-default conduct, allegations of a fiduciary duty, without more, are insufficient to come within one of the "extremely limited" special relationship exceptions. Not only do plaintiffs fail to allege that a special

relationship existed between themselves and TitleOne, they do not allege facts sufficient to give rise to the inference that TitleOne was a professional or quasi-professional that performed services for plaintiffs as lay persons or that TitleOne held itself out as having expertise in a specialized function, thereby inducing plaintiffs to rely on its expertise.

With respect to the "unique circumstances" exception, the Idaho Supreme Court has yet to apply the exception in a case, Blahd, 141 Idaho at 302, and plaintiffs do not sufficiently allege "unique circumstances" meriting application of the exception for the first time.

Accordingly, because plaintiffs fail to sufficiently allege that their negligence and gross negligence claim comes within one of the limited exceptions to the economic loss rule, the court will grant TitleOne's motion to dismiss that claim.

B.   Plaintiffs' Motion to Strike

In response to TitleOne seeking summary judgment as an alternative to its motion dismiss, plaintiffs filed a motion to strike TitleOne's motions for summary judgment and for an award of expenses, including attorneys fees, for having to respond to TitleOne's motion for summary judgment. Plaintiffs' motion is based on TitleOne's failure to comply with Local Rule 7.1(b)(1), which requires a party moving for summary judgment to "file a separate statement of all material facts, not to exceed ten (10) pages, upon which the moving party contends are not in dispute." Pursuant to Local Rule 7.1(e), failure to comply with Rule 7.1(b)(1) "may be deemed a waiver by the moving party of the pleading or motion," and "the Court, upon motion or its own

initiative, may impose sanctions in the form of reasonable expenses incurred, including attorney fees, upon the adverse party and/or counsel for failure to comply with this rule."

In this case, however, the court addressed TitleOne's motion as one to dismiss and neither converted the motion into one for summary judgment under Federal Rule of Civil Procedure 12(d) nor resolved the motion for summary judgment as an alternative grounds for relief.  As TitleOne's motion was only made in the alternative and the court has resolved TitleOne's motion as one to dismiss, the court need not deny or strike TitleOne's alternative ground for relief.  The court also finds that awarding plaintiffs expense for TitleOne's failure to file a statement of undisputed facts is not merited because, in light of TitleOne's failure to file such a statement, plaintiffs chose not to respond to the motion for summary judgment and therefore incurred little or no expenses as a result of TitleOne's inclusion of summary judgment as an alternative ground for its relief.

IT IS THEREFORE ORDERED that TitleOne's motion to dismiss plaintiffs' Complaint be, and the same hereby is, GRANTED;[4]

AND IT IS FURTHER ORDERED that plaintiffs' motion to strike and for an award of expenses be, and the same hereby is, DENIED.

---

[4]      Because defendant's motion to dismiss is granted with respect to every claim in the Complaint, there is no remaining claim upon which a class could be certified.  Accordingly, unless and until plaintiffs should amend their Complaint to state a viable claim, TitleOne's motion to dismiss plaintiffs' class action allegations is moot.

1    Plaintiffs have thirty days from the date of this Order

2 to file an amended complaint, if they can do so consistent with

3 this Order.

4 DATED:  July 13, 2010

6                                                  _____

7                          WILLIAM B. SHUBB
                           UNITED STATES DISTRICT JUDGE

24