Philip H. Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
Gordon Law Offices
623 West Hays Street
Boise, ID  83702
Tel:     (208) 345-7100
Fax:     (208) 345-0050
pgordon@gordonlawoffices.com

Steven T. Webster (to be admitted *pro hac vice*)
Webster Book LLP
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (telephone and fax)
swebster@websterbook.com

Geoffrey Bestor
4204 Maple Terrace
Chevy Chase, MD 20815
Tel:     (240) 463-8503
Fax:     (866) 626-3131

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Russell Firkins, Rena Firkins, Highland Services Co., Inc. Profit Sharing Plan, Douglas R. Circle as trustee, Douglas Richard Circle and Jan Alison Circle 1984 Family Trust, | Case No. 1:10-cv-00110-BLW |
| Plaintiffs, | AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| v. | |
| TitleOne Corporation, | |
| Defendant. | |

Plaintiffs Russell Firkins, Rena Firkins, Highland Services Co., Inc. Profit Sharing Plan, Douglas R. Circle as trustee of the Douglas Richard Circle and Jan Alison Circle 1984 Family Trust, on behalf of themselves and others similarly situated, allege as follows:

## NATURE OF THE CASE

1.      This is a class action on behalf of all investors in bonds issued pursuant to an indenture dated December 24, 2002 (the "Indenture") (attached hereto as Ex. A).  Pursuant to the Indenture and the Offering Circular associated with the bond issue (Attached hereto as Ex. B), DBSI Real Estate Funding Corporation ("REFCO") raised money for use in the commercial and residential real estate investment activities of related entities.   Defendant TitleOne Corporation ("Defendant" or "TitleOne") was the designated Trustee under the Indenture.  The Indenture is a contract between the Plaintiff bondholders, TitleOne, and REFCO and was explicitly incorporated in the bond certificates issued to Plaintiffs.

2.      REFCO, which was created specifically for the purpose of raising funds pursuant to the Indenture, was an affiliate of the DBSI Group.  The DBSI Group consisted of related companies that invested in real estate (the DBSI entities as a whole are referred to hereinafter as "DBSI" except when clarity requires more specificity).  Under the Indenture, REFCO sold bonds to investors and lent the resulting funds to various DBSI entities ostensibly for individual real estate investments pursuant to loan applications made by the DBSI entities.

3.      Pursuant to the Indenture, the bond proceeds were placed into an account created by and under the control of Defendant.  Before Defendant was permitted to disburse money for a loan to an eligible DBSI investment entity, the Indenture required DBSI to provide Defendant with a set of specified documents for each transaction.  These documents included the original promissory note; the originals of all of the documents in the loan file; insurance certificates

naming Defendant as the loss payee; a schedule calculating and summarizing the requirement that all loans, including pre-existing loans, not exceed 85 percent of the value of the underlying property; and a certification from an officer of DBSI that all right, title, and interest in the loan had been transferred to the trust for the beneficiaries and that the assignment complied with all requirements of the Indenture.

4.      The Indenture explicitly required that Defendant receive all of these documents before it disbursed any funds from the bond proceeds account.  The reason for this was that DBSI was in control of REFCO and essentially made loans to itself.  The Indenture protected the REFCO bondholders by providing that all right, title, and interest in the loans, and in the real estate or personal property acquired using bondholder funds, passed through to a trust of which the bondholders were the beneficiaries, and that DBSI fully document each transaction.

5.      Defendant repeatedly breached the Indenture by disbursing funds from the bond proceeds account without having received the required documentation, including but not limited to the following instances:

   a.      Defendant disbursed millions of dollars from the bond proceeds account on at least two occasions where the only documentation of the transaction consisted of a two-page modification of a pre-existing promissory note;

   b.      None of the loan files contained insurance policies listing Defendant as the loss payee;

   c.      Most disbursements were made without any certificate from an officer of DBSI that the total amount of all loans did not exceed 85 percent of the value of the underlying property; and,

   d.      Most of the loans were disbursed without a certificate from a DBSI officer that all right, title, and interest in and to the loan had been transferred to the trust and that the assignment complied with all requirements of the Indenture.

6.      Each time Defendant made disbursements from the bond proceeds account without having received the required documentation, Defendant breached the Indenture.  As a result of these breaches, Plaintiffs were damaged.

7.      Defendant also breached the Indenture by disbursing bondholder proceeds based on documents that were invalid on their face, as follows:

a.      In one transaction, Defendant disbursed $1,950,000 even though the loan application provided to Defendant was for $1,461,250;

b.      DBSI loaned itself almost $900,000 secured by an interest in property worth at most $600,000 and that already secured over $1.5 million in loans, all of which was known to Defendant;

c.      Duplicate loan applications contained materially different valuations of the same property in which bondholder proceeds were to be invested; and,

d.      In every loan file for which there exists a statement of the intended use of the bond proceeds, the documents state that DBSI intended to use the loan for "business and commercial purposes."  As explained below, these were not permitted uses of the funds.

8.      Each time Defendant disbursed funds from the bond proceeds account on the basis of such facially invalid documents, Defendant breached the Indenture.

9.      In addition, when DBSI breached the provisions of the Indenture as set forth above, the Indenture required Defendant to notify all bondholders within 30 days of the event of default.  Defendant was further required to use the extensive rights and powers granted to it in those circumstances to protect the interests of the Bondholders.  These rights and powers included demanding immediate payment of all outstanding principal and interest on the bonds; proceeding without notice against the guarantor of the loans; seizing the loans and all associated security; and instituting any judicial proceedings Defendant deemed effective to protect the bondholders.

4

10.     DBSI repeatedly breached the provisions of the Indenture yet Defendant never notified the bondholders.  Nor did Defendant take any action as required to protect the interests of the bondholders.

11.     DBSI and its affiliated entities, including REFCO, filed for bankruptcy in November 2008.  At that point, bondholders had over $42 million in principal and accrued interest invested in REFCO.  TitleOne's breach of its obligations under the Indenture directly and proximately caused damage to the REFCO bondholders.

## PARTIES

12.     Plaintiffs Russell and Rena Firkins are residents of Boise, Idaho.  Mr. and Mrs. Firkins are trustees of Plaintiff Highland Services Co., Inc. Profit Sharing Plan, which is located in Boise, Idaho and shares the same mailing address. As of the date of the DBSI bankruptcy, Mr. and Mrs. Firkins owned REFCO bonds with total principal and accrued interest of $506,253 and Highland Services Co., Inc. Profit Sharing Plan owned REFCO bonds with total principal and accrued interest of $755,065.

13.     Plaintiff Douglas R. Circle is a resident of Placentia, California.  Mr. Circle is trustee of the Douglas Richard Circle and Jan Alison Circle 1984 Family Trust at the same location.  As of the date of the DBSI bankruptcy, the Douglas Richard Circle and Jan Alison Circle 1984 Family Trust owned REFCO bonds with total principal and accrued interest of $894,112.

14.     Defendant TitleOne Corporation is an Idaho corporation with its principal place of business at 1101 W. River Street, Suite 201, Boise, ID 83702.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under the Class Action Fairness Act,

28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or

value of $5,000,000, exclusive of interests and costs, and this is a class action in which less than

one-third of the proposed Plaintiff Class, on the one hand, and Defendant TitleOne, on the other,

are citizens of the state of Idaho.

16.     Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant

TitleOne's principal place of business is in this District, Plaintiffs Russell and Rena Firkins

reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred in this District.

## FACTS

### I.     The Bond Issue and the Trust

17.     DBSI Housing, Inc., was formed in 1980 as a vehicle for investment in

commercial and residential real property.  DBSI Housing or an affiliate served as the general

partner in multiple affiliated real estate investment partnerships.  At all times relevant to this

case, DBSI and all of its affiliates were controlled by Douglas Swenson.

18.     Starting in the mid-1990s, DBSI raised funds from investors through bond

offerings to finance DBSI's real estate acquisition and development activities.  DBSI Real Estate

Funding Corporation, or REFCO, was created in 2002 for one of these bond issues.  In its initial

issue, REFCO offered $5 million in 9 percent bonds due in approximately seven years.  REFCO

was authorized to increase the bond issue at its discretion and eventually sold more than $42

million of bonds to bondholders from 38 different states (figures as of the date of the DBSI

bankruptcy).

19.     Defendant was permitted to disburse bond proceeds "only as provided in this Indenture and only for the purposes for which the bonds were issued."  Indenture ("Ind.") § 5.3.1. While the Indenture does not specify the purposes for which the bonds were issued, the Offering Circular did:  "The proceeds of any Loans to DBSI Group controlled Entities will only be used to acquire, develop, and/or finance real estate properties prior to their sale, resale, financing, and/or syndication."  Offering Circular, Feb. 10, 2003, at p. 10.  The Offering Circular and the Indenture were executed as part of the same transaction.  The Offering Circular as well as the Indenture constitute binding contractual obligations of Defendant.  TAs set forth below, Defendant ignored this limitation on use of the bond proceeds and therefore breached the Indenture.

## II.     Disbursement of Bond Proceeds Pursuant to the Indenture

20.     Pursuant to the Indenture,  the process for disbursing the bond proceeds was to be as follows:

- Bond proceeds were placed into an account created by and under the control of Defendant;

- A DBSI real estate investment partnership made a loan application to REFCO;

- Upon approval of the loan application by REFCO (a pure formality since DBSI controlled both borrower and lender), REFCO provided a specified list of documents to Defendant, including the original promissory note and the originals of the other documents in the loan application file, liability and property insurance certificates naming Defendant as the loss payee, and other documents;

- In addition, the Indenture required assignment of all right, title, and interest in the loan as well as all security for the loan to the trust created by the Indenture, of which Defendant was the trustee and the bondholders were the beneficiaries.  An officer of REFCO was required to certify that these assignments had been made and that the assignments were in conformity with the Indenture; and,

- On the loan closing date, and upon Defendant's receipt of all of the specified documents and officer certifications, the Indenture authorized Defendant to disburse the loan proceeds as directed by REFCO.

## III.    Defendant's Repeated Disbursement of Bond Proceeds Without the Required Documentation and Certificates

21.     Before DBSI entered bankruptcy in November 2008, Defendant, at the request of Plaintiff Doug Circle, provided to counsel for Mr. Circle what Defendant represented to counsel to be the complete documentation for loans then outstanding from REFCO to DBSI real estate investment entities, including full documentation of security interests acquired as part of the loan transactions.

22.     Defendant provided documentation for 14 loan transactions.  The documentation for every single one of the loans, without exception, breached the Indenture in one or more ways.[1]  The following paragraphs set forth examples of these breaches.

23.     On January 1, 2007, REFCO lent $1,533,000 to DBSI Legacy Hills.  On July 31, 2007, REFCO and DBSI Legacy Hills modified the promissory note to increase the amount of the loan to $4,493,000.  The only documentation of this increase was a two-page form stating that the modification was being done.  There is no other documentation of this transaction.  The Indenture does not permit modification of promissory notes "in any manner which would have a material adverse effect on the interests of the Bondholders."  Ind. § 7.7.9.  Accordingly, the Indenture required full documentation of the revised loan.  Defendant's disbursement of the funds breached the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account and section 7.7.9 prohibiting modification of promissory notes.

24.     On August 31, 2007, REFCO and DBSI Legacy Hills modified the promissory note to increase the amount of the loan to $5,693,000.  Again, the only documentation for this increase was a two-page form stating that the modification was being done.  Defendant's

---

[1]  This section of the Complaint addresses the loan files that did not contain the documentation Defendant was required to have in hand before disbursing funds from the bond proceeds account.  Defendant's disbursement of bond proceeds pursuant to facially invalid documents, and its failure to take action in response to defaults by DBSI, are set forth in later sections of the Complaint.

disbursement of the funds breached the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account and section 7.7.9 prohibiting modification of promissory notes.

25. On December 31, 2006, REFCO lent $4,440,000 to DBSI Canberra Heights Limited Partnership. On December 31, 2007, REFCO and DBSI Canberra Heights modified the promissory note to increase the amount of the loan to $7,713,502. The only documentation for this increase was a two-page form stating that the modification was being done. Defendant's disbursement of the funds breached the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account and section 7.7.9 prohibiting modification of promissory notes.

26. On December 31, 2006, REFCO lent $600,000 to DBSI Bayside Apartments. On June 30, 2008, REFCO and DBSI Bayside Apartments modified the promissory note to increase the amount of the loan to $897,000. The only documentation for this increase was a two-page form stating that the modification was being done. Defendant's disbursement of the funds breached the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account and section 7.7.9 prohibiting modification of promissory notes.

27. Pursuant to a Term Loan Agreement dated January 11, 2008, REFCO lent $1,550,000 to Kastera Homes LLC in connection with the Palazzo House property in Eagle, Idaho. The loan file did not include the loan application and did not include a REFCO officer certification stating that (a) as of the loan closing date, all right, title, and interest in the loan had been assigned to the trust, (b) the assignment conformed to all requirements of the Indenture, and (c) the loan file contained all of the documents required to be included under the definition of

"Loan File" as required by sections 5.3.3 and 3.1.2 of the Indenture.  Defendant's disbursement of the funds without the loan application and the required certifications breached the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account.

28.     Documentation for loan transactions with DBSI Shadow Hills and DBSI Broadway Plaza did not include any REFCO officer certificates at all.  Defendant's disbursement of the funds without having first received the required officers' certificates violated the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account.

29.     Documentation for the following loan transactions did not include an officer certificate stating that (a) as of the loan closing date, all right, title, and interest in the loan had been assigned to the trust, (b) the assignment conformed to all requirements of the Indenture, and (c) the loan file contained all of the documents required to be included under the definition of "Loan File" as required by sections 5.3.3 and 3.1.2 of the Indenture:

- DBSI Legacy Hills;

- DBSI Valley View;

- DBSI Plantation;

- DBSI Peacock;

- Kastera Pavilion Commons LLC;

- DBSI Bayside Apartments (2006 transaction);

- Kastera Homes LLC (1357 S. Heron Point Lane property);

- DBSI Blackcat.

30.     Defendant's disbursement of the funds for these transactions without having first received the required officers' certificates violated the requirement of section 5.3.3 of the Indenture that Defendant receive all of the specified documents before disbursing any funds from the bond proceeds account.

31.     Each instance of Defendant disbursing funds from the bond proceeds account before receiving all of the required documents, as set forth in the preceding paragraphs, constituted a separate and independent violation of the Indenture.

32.     Among the documents the Indenture required to be provided with each loan transaction were "insurance certificates identifying the amounts of liability and property insurance and naming the Trustee as loss payee and additional insured; and [REFCO] as mortgagee, loss payee, and additional insured."  Ind. § 1.19.

33.     Most of the loan files contain no insurance certificate of any kind.  Each instance where Defendant disbursed funds from the bond proceeds account without having first received the required insurance certificates constituted a separate and independent breach of the Indenture.

**IV.     Defendant's Disbursement of An Amount In Excess of the Approved Loan Amount**

34.     On information and belief, pursuant to a promissory note dated December 31, 2007, between REFCO and DBSI Broadway Plaza Limited Partnership, Defendant disbursed $1,950,000 from the bond proceeds account.  However, the amount in the loan application for this transaction (which was dated January 11, 2008) was $1,461,250, not $1,950,000.  Defendant had actual knowledge of these facts and the disbursement of $1,950,000 pursuant to a loan application for a lesser amount was a breach of the Indenture.

V.   **Defendant's Disbursement of Funds From the Bond Proceeds Account in the Face of Facially Inconsistent and Invalid Documents**

35.     As set forth above, Defendant breached the Indenture with respect to every transaction for which Defendant provided documentation because, in each instance, Defendant disbursed funds from the bond proceeds account without having first received all of the documentation required by the Indenture.  In addition to these breaches, Defendant repeatedly breached the Indenture by disbursing funds from the bond proceeds account on the basis of documents that were invalid or fraudulent on their face.  Each instance set forth below is a separate and independent breach of the Indenture.

36.     **Spur Ranch.**  On December 31, 2006, REFCO lent DBSI Spur Ranch funds in connection with property intended for a housing development called the Spur Ranch Subdivision.  The loan application valued Spur Ranch at $6,160,000 "based on the expected net operating income of the improved property."  However, Exhibit B to the Promissory Note and Security Agreement valued Spur Ranch at "$8,750,000 based on the sales price of the property."  Both documents are dated December 31, 2006, and both were signed by Douglas Swenson.  Nothing in TitleOne's documents explains the discrepancy or supplies any support for either value.

37.     **Broadway Plaza Term Loan Agreement.**  On December 31, 2007, REFCO made a loan to DBSI Broadway Plaza Limited Partnership.  According to Exhibit D of the application, the value of the property is $9 million "based on the sales price of the property."  However, included among TitleOne's documents is an appraisal dated January 26, 2007, valuing the property at $5,950,000.  TitleOne had actual knowledge of this discrepancy and did nothing.

38.     **Bayside Apartments Loans.**  Bayside Apartments is a subsidized housing complex in Seward, Alaska.  On August 1, 1999, DBSI sold Bayside (the complex and the land)

12

to Northwest Real Estate Capital Corporation, taking back an interest-only note for $1,509,278.43 at an interest rate of 6.67 percent.  The entire principal amount of the loan was due on June 1, 2003.

39.     At the time of the sale to Northwest, DBSI owed Keycorp Real Estate Capital Markets, Inc. $358,000.00, which was secured by Bayside.  The note from Northwest Real Estate Capital in favor of DBSI described above was subordinated to the lien of Keycorp Real Estate Capital Markets.

40.     On December 31, 2006, DBSI borrowed $600,000 from REFCO, using DBSI's "personal property" related to Bayside as security.  The note from Northwest Real Estate Capital was still outstanding at that point at the original 1999 amount of approximately $1.5 million, as too apparently was the Keycorp loan.

41.     The $600,000 loan from REFCO to DBSI was interest-only and was "secured" by "[a]ll of "Borrower's personal property of every kind and nature, whether now owned or hereafter acquired or arising, that is located on, appurtenant to, used in connection with, arising from, or related to" Bayside.

42.     This supposed security in DBSI's personal property interest in Bayside was subordinated to the note from Northwest Real Estate Capital, which in turn was subordinated to the security interest of Keycorp Real Estate Capital Markets.

43.     Included in TitleOne's documents is an appraisal of Bayside done in connection with the 2006 loan from REFCO to DBSI.  The appraisal concluded that the property, including the housing complex, had a fair market value of $600,000.  The Indenture limited loans to no more than 85 percent of the fair market value of the underlying property.  *See* Ind. § 1.20.

Defendant breached the Indenture by disbursing funds from the bond proceeds account in violation of section 1.20.

44.     Further, the loan file contains a REFCO officer certificate stating that the loan to value ratio of the loan did not exceed 85 percent.  Yet other documents in the loan file show this certification to be false.  No investigation was necessary to discover this fraud.  Defendant had actual knowledge of the falsity of the certification and breached the Indenture by disbursing funds from the bond proceeds account pursuant to documentation that was fraudulent on its face.

45.     On June 30, 2008, DBSI increased the size of its loan from REFCO from $600,000 to $897,000.  The stated purpose of the increased amount was to pay off the Keycorp note that was secured by Bayside.

46.     In DBSI's 2008 request to the loan committee for this increase, the fair market value of Bayside was listed as $1,060,000, which was "based on a 2006 appraisal's conclusion of a value of $1,000,000 plus an assumption of 3% annual inflation."  Since the referenced appraisal was in the loan file and stated that the value of the property was $600,000, the claimed $1 million plus value asserted in 2008 was self-evidently false.  Defendant breached the Indenture by disbursing funds from the bond proceeds account pursuant to facially fraudulent documentation.  Moreover, just as the $600,000 loan in 2006 breached section 1.20's requirement of 85 percent loan-to-value ratio, the loan increase and disbursement in 2008 was likewise a breach.

47.     At the time of the $600,000 loan in 2006, Bayside Apartments served as security for a loan of $1.5 million due to DBSI (the payment of which was years overdue), and as security for a loan from Keycorp senior to DBSI's loan.  Given the appraisal of $600,000, the combined loan-to-value ratio, prior to the loan being made, was approximately 300%.  By disbursing funds

from the bond proceeds account on the basis of documents that showed that the alleged security, prior to disbursement, was already encumbered greatly in excess of its value, Defendant breached the Indenture.

48.     In June 2008, when DBSI took another $297,000 out of REFCO using Bayside as "security," another $200,000 in unpaid interest had accrued on the Northwest Real Estate Capital Note, making Bayside even more unsuitable as security.  By disbursing funds from the bond proceeds account on the basis of documents that showed that the alleged security was already encumbered greatly in excess of its value, Defendant violated the Indenture.

49.     Finally, with respect to the 2008 transaction, there were no REFCO officer certifications, and, with respect to the 2006 transaction, there was no officer certification that, as of the loan closing date, all right, title, and interest in the loan had been assigned to the trust, and that the assignment conformed to all requirements of the Indenture.  Defendant breached the Indenture by disbursing bond proceeds without these required certifications.

## VI.     Defendant's Failure to Take Action in Response to DBSI Defaults

50.     The Indenture defines default as "any occurrence which is, or with notice or the lapse of time or both would become, an Event of Default."  Ind. § 1.9.

51.     Article IX of the Indenture identifies the following occurrences (among others) as Events of Default:

- "Any representation, warranty, or statement of [REFCO] made in this Indenture or the Bond Guarantee or any certificate, report, or other writing delivered pursuant hereto shall prove to be incorrect in any material respect as of the time when the same shall have been made . . ."  Ind. §9.1.5; and
- "[REFCO] or the Guarantor shall default in the due performance and observance of any provision of this Indenture or the Bond Guarantee and such default shall have continued for a period of 10 days after [REFCO or the Guarantor] has obtained knowledge of, or has been notified by the Trustee or any Bondholder of, such default."  Ind. § 9.1.4.

52.     REFCO had knowledge of its own defaults without the necessity of notice thereof.  Further, Defendant had actual knowledge of the contents of all documents in its possession as well as actual knowledge of the absence of all documents that were required to be submitted to it but under the terms of the Indenture but were not.  Moreover, Defendant had the power and the obligation, which it failed to discharge, to demand all of the Servicer's records that were necessary for the performance of Defendant's duties under the Indenture.  Ind. § 4.3.3. Therefore, Defendant had actual knowledge of each and every default by REFCO.

53.     In the case of an Event of Default, the Indenture imposes mandatory obligations on Defendant.  Section 11.1.2 provides:

> 54.     If an Event of Default has occurred and is continuing, the Trustee **shall** exercise such of the rights and powers vested in it or provided for by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs, but the Trustee shall be liable only for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct.

Emphasis added.

55.     The Indenture provided Defendant with unfettered powers in the case of an Event of Default by REFCO.  Defendant was empowered to:

- Declare all outstanding principal and interest then due on the bonds to be immediately due and payable.  Ind. § 10.2.1(2);
- Institute any judicial proceedings Defendant deemed most effective to protect the rights of the bondholders.  Ind. § 10.2.3;
- Demand immediate payment of all loans due to REFCO by the DBSI real estate investment entities.  Ind. § 10.2.4;
- Proceed immediately, without notice, against the Guarantor to collect the entire amount then due.  Ind. § 10.2.4;
- Exercise all of the rights and remedies of REFCO under the Loan Documents, including proceeding against security if any loan is in default.  Ind. § 10.2.5.

56.     Defendant had actual knowledge of each of the Events of Default set forth above and in the following paragraphs.

57.     Pursuant to section 11.3.1, in the absence of bad faith, Defendant was entitled to conclusively rely on any documents "**conforming to the requirements of this Indenture** believed by the Trustee to be genuine . . ."  Ind. § 11.3.1 (emphasis added).

58.     Defendant was not entitled to rely on documents that did not conform to the requirements of the Indenture and was required to read all such documents in order to make that determination.

59.     Further, Defendant was required to read all documents submitted to it in order to harbor any belief that such documents were or were not genuine.

60.     The reliance by the Defendant on the documents identified in this Amended Complaint was a breach of the Indenture.

61.     Furthermore, section 11.1.3 provides in part:

No provision of this Indenture . . . shall be construed to relieve the Trustee from liability for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct, except that:

(i)  the Trustee shall not be liable for any error of judgment made in good faith by an Authorized Officer of the Trustee, **unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts**.

Emphasis added.

62.     As set forth above, Defendant was negligent in ascertaining pertinent facts (and therefore in disbursing funds) and was grossly negligent and engaged in willful misconduct in acting and failing to act as described herein.

63.     From the documents in its own possession, Defendant had actual knowledge of every occasion on which REFCO submitted documents that were invalid, false, or fraudulent on their face.

64.     Each of the loan transactions described above constituted Events of Default of which Defendant had actual knowledge.

65.     Section 3.2 of the Indenture required that REFCO, within 30 days of a loan closing date, provide Defendant with a list of all UCC financing statements, or similar documents reflecting security for the loan, filed with respect to the loans.  There are no UCC financing statements, no lists thereof, nor any other documents reflecting filed security interests for any of the loans anywhere in Defendant's documents.  Defendant necessarily had actual knowledge of REFCO's failure to comply with section 3.2, and each such failure constituted an Event of Default.

66.     Upon an Event of Default, the Indenture required Defendant to take such action that a prudent person would, with same degree of skill and care as such person would exercise with respect to his or her own affairs.  Ind. § 11.1.2.  Defendant's failures to act violated the prudent person standard.  They were also grossly negligent and constituted willful misconduct.

67.     Under Article X of the Indenture, upon an Event of Default, the Indenture gave Defendant the power to accelerate all indebtedness such that all principal and interest would be immediately due and payable; to demand immediate repayment of the full amount of all outstanding principal and interest; to seize everything in the trust, including the loans and all collateral associated therewith; to demand full payment from the Guarantor; to institute judicial proceedings; to demand "payment  and delivery of all money and other property payable to or

receivable by [REFCO]"; and to terminate and assume all rights and powers of the Servicer in order to administer the loans for the benefit of the bondholders.

68.     By failing to exercise these powers, Defendant breached its obligations under the Indenture, failed to act prudently, was both negligent and grossly negligent, and engaged in willful misconduct.

**VII.    Defendant's Failure to Notify Bondholders of the Events of Default**

69.     Section 11.2 of the Indenture provides as follows:

**Notice of Events of Default.** Within 30 days after the occurrence of any Default or Event of Default known to the Trustee, the Trustee shall transmit by mail to all Bondholders notice of such Event of Default known to the Trustee. Notwithstanding the foregoing provision of this Section, . . . the Trustee may withhold notice to the Bondholders if the Trustee in good faith determines that the withholding of such notice is in the interests of the Bondholders.

70.     Defendant provided no such notice with respect to any of the Events of Default set forth in this Complaint.

71.     Moreover, Defendant did not in good faith determine that it was in the interests of the bondholders not to inform them of repeated Events of Default.  Indeed, given the facts set forth herein, it could not have made such a determination.

72.     Defendant also failed to provide notice of DBSI's failure to pay the trustee.  DBSI paid Defendant's fee for serving as trustee monthly.  Beginning in January 2008, DBSI stopped paying Defendant.  DBSI's failure to pay the Defendant was an Event of Default under section 9.1.4 of the Indenture.  Defendant did not timely notify the bondholders of these Events of Default and each failure to do so constituted a breach of the Indenture by Defendant.

**VIII.   Defendant's Negligence, Gross Negligence, and Willful Misconduct**

73.     As set forth above, each disbursement of funds from the bond proceeds account by Defendant without having first received all required documentation constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

74.     Each disbursement of funds from the bond proceeds account by Defendant in the face of documentation that was invalid or fraudulent on its face constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

75.     Each disbursement of funds from the bond proceeds account by Defendant in excess of the approved loan amount constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

76.     Each failure of Defendant to take action in response to an Event of Default constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

77.     Each failure of Defendant to notify the bondholders of an event of default constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

78.     Each failure of Defendant to insure that funds were used by DBSI "only for the purposes for which the bonds were issued" constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

79.     Each disbursement of bond proceeds by Defendant for "business and commercial purposes," as opposed to real estate acquisition, development, and sale, was inconsistent with "the purposes for which the bonds were issued" and constituted negligence, gross negligence, and willful misconduct on the part of Defendant.

CLASS ACTION ALLEGATIONS

80.    Plaintiffs seek to bring this case as a nationwide class action on behalf of themselves and all others similarly situated in the United States as members of the proposed Class, defined as follows:

> All persons and entities who are current bondholders of DBSI Real Estate Funding Corporation under an indenture between DBSI Real Estate Funding Corporation and TitleOne Corporation dated December 24, 2002.

81.    DBSI and all affiliated entities, as well as their officers, directors, shareholders, members, managers, employees, and family members thereof, are excluded from the class.

82.    At the time of DBSI's bankruptcy in November 2008, the Firkins plaintiffs owned bonds with accumulated, unpaid interest equal to $1,261,318, the largest amount of any bondholder.  The Circle plaintiffs owned bonds with accumulated, unpaid interest equal to $894,112, among the 10 largest investments.

83.    **Numerosity**.  The Class is so numerous that joinder of all of its members is impractical.  A spreadsheet of bondholders as of the November 2008 bankruptcy filing of DBSI has 1,613 entries and approximately 600 separate bonds.

84.    **Common Questions of Law and Fact**.  Common questions of law and fact exist as to all Class members including, but not limited to, the following:

> a.  the nature of Defendant's duties and obligations under the Indenture;
>
> b.  the documentation provided by DBSI to Defendant, and what Defendant did to remedy any shortcomings in that documentation;
>
> c.  whether Defendant breached its contractual obligations under the Indenture;

d.  whether Defendant was negligent or grossly negligent in performing its duties, and whether Defendant actions and failures to act constituted willful misconduct; and,

e.  what, if anything, Defendant did to ensure that DBSI used REFCO funds consistently with the limitations of the Indenture.

85.    **Typicality**.  Plaintiffs' claims are typical of the claims of the Class in all respects.

86.    **Adequacy of Representation**.  Plaintiffs and their counsel can and will fairly and adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of the Class.

87.    **Superiority**.  A class action is superior to any other available method for the fair and efficient adjudication of this controversy.  As demonstrated above, common questions of law and fact overwhelmingly predominate over any individual questions that may arise.  Moreover, with over 600 or more potential claimants, claimant-by-claimant litigation would be extremely burdensome on the courts and the parties.  Defendant has acted or failed to act on grounds generally applicable to all members of the Class, thereby making appropriate any final judgment with respect to the Class as a whole.

## COUNT 1:  BREACH OF CONTRACT

88.    Plaintiffs incorporate each of the foregoing paragraphs.

89.    The Indenture is a valid and enforceable contract between TitleOne and Plaintiffs and Class members.

90.    Defendant TitleOne breached its contract with Plaintiffs and the Class members in the ways set forth in the preceding paragraphs of this Complaint.

91.    As a result of TitleOne's breaches of the Indenture, Plaintiffs and the Class members were damaged.

92.     As a direct and proximate result of these breaches, Plaintiffs and the Class members have suffered aggregate damages in an amount exceeding $42 million.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an order or judgment against TitleOne as follows:

a.      Certifying the proposed Class and ordering notice thereto to be paid by TitleOne;

b.      Adjudging and decreeing that TitleOne has engaged in the conduct alleged herein;

c.      Awarding compensatory and general damages according to proof on the various causes of action;

d.      Awarding both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

e.      Awarding punitive damages;

f.      Awarding costs of the proceedings herein;

g.      Awarding reasonable attorneys fees as allowed under law and the Indenture; and,

h.      Any and all such other and further relief that this Court may deem just and proper.

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

DATED:  August 12, 2010                    Respectfully submitted,


By:    _____/s/_____

Philip H. Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
Gordon Law Offices
623 West Hays Street
Boise, ID  83702
Tel:    (208) 345-7100
Fax:    (208) 345-0050

Steven T. Webster (to be admitted *pro hac vice*)
Webster Book LLP
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (telephone and fax)
swebster@websterbook.com

Geoffrey Bestor
4204 Maple Terrace
Chevy Chase, MD 20815
Tel:    (240) 463-8503
Fax:    (866) 626-3131

*Attorneys for Plaintiffs*


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which is designed to send a Notice of Electronic Filing (NEF) to the following counsel for Defendant and Plaintiff:

Andrew C Smith  andrew.smith@pillsburylaw.com

Craig A Barbarosh  craig.barbarosh@pillsburylaw.com

David A Crichlow  david.crichlow@pillsburylaw.com

Geoffrey Bestor  gbesq@bestorlaw.com

John David Jenkins  jjenkins@levjen.com

Karen B Dine  karen.dine@pillsburylaw.com

Mark B Perry  mbp@perrylawpc.com

Maurice O Ellsworth moe@perrylawpc.com

Michael Paul Lewis  mlewis@levjen.com

Philip Howard Gordon &nbsp &nbsp pgordon@gordonlawoffices.com,
bbistline@gordonlawoffices.com

Trevor L Hart &nbsp &nbsp tlh@perrylawpc.com, info@perrylawpc.com,
mbp@perrylawpc.com, moe@perrylawpc.com, tay@perrylawpc.com

    /s/
Geoffrey Bestor
